**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-CR-167-LO** |
| | ) | **Sentencing Date: April 8, 2022** |
| **JASON STEUART HIHN,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

Pursuant to Title 18 U.S.C. § 3553(a), Jason Hihn, through counsel, hereby notifies the Court that he has received and reviewed the Presentence Investigation Report ("PSR"), and has no corrections or objections to the Report. Mr. Hihn appears before the Court having pled guilty to one count of attempted enticement of a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

For the reasons set forth herein, Mr. Hihn submits that the mandatory-minimum sentence of ten years required by of 18 U.S.C. § 2422(b), together with mandatory sex-offender registration, a term of supervised release, forfeiture of the electronic device used in connection with the offense, and a $200 special assessment pursuant to 18 U.S.C. § 3013, is fully sufficient to accomplish the purposes of sentencing in this case.

Mr. Hihn has no prior record and has accepted responsibility for his conduct. Moreover, a review of similar cases prosecuted in this District reveals that other, similarly situated defendants implicated in nearly identical "sting" operations were not charged with mandatory-minimum sentences and have in a number of cases been sentenced well below the ten-year mandatory sentence requested here. Accordingly, a sentence of ten years is both

sufficient to accomplish the purposes of sentencing and necessary to avoid unwarranted sentencing disparities.

In addition, with respect to the possession count, the U.S. Sentencing Commission notes that courts routinely impose below-guidelines sentences in non-production child pornography cases as the enhancements that were only intended to apply to the most serious child pornography offenses are routinely applied to most non-production child pornography offenders due to advancements in technology.

Accordingly, the guidelines sentence requested by the United States is too severe and would lead to unwarranted disparity with similar cases. It would lead to a more severe sentence for less culpable conduct. The imposition of a 10 year sentence is fair and is "sufficient but not greater than necessary" to meet the objectives of the sentencing factors in 18 U.S.C. § 3553.

## I. Legal Standard

Determining the proper sentence in a federal criminal case is within the discretion of the District Court. The Court's discretion is to be exercised upon consideration of the purposes of sentencing in light of the particular case and defendant before it. The Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth in 18 U.S.C. §3553(a). *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009). The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing that the Sentencing Guidelines are simply an advisory tool to be considered alongside the other § 3553(a) statutory considerations.

“Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable,” the Court held in *Nelson*. 555 U.S. at 352. “The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.” *Id.* (emphasis in original).

Upon consideration of the seven co-equal factors set forth in § 3553(a), a sentencing court may find that the case falls outside the “heartland” contemplated by the guidelines, or that “the guidelines sentence itself fails properly to reflect the § 3553(a) considerations,” or that “the case warrants a different sentence regardless.” *Rita v. United States*, 551 U.S. 338, 351 (2007). While the sentencing court begins its analysis by calculating the advisory sentencing range, the court is then free in light of the other statutory sentencing factors to impose an entirely different sentence. This is because, under *Rita,* a district court is free simply to disagree, based on the §3553(a) sentencing factors, with the Sentencing Guidelines’ “rough approximation” of the appropriate sentence for any given case. *Id.*

## II. Sentencing Factors under 18 U.S.C. § 3553(a)

### A. Nature and Circumstances of the Offense and the History and Characteristics of Mr. Hihn

On June 24, 2021, after two months of messaging with a woman who claimed to be sexually abusing a nine year old girl and infant female, Mr. Hihn was arrested in Arlington when he arrived at a location to meet the woman, who turned out to be a FBI undercover agent. Mr. Hihn’s cell phones were seized at that time. A forensic examination of one of the phones yielded two months of chats with the undercover and approximately 40 images (with multiple thumbnail copies totaling 143 images) and 2 videos depicting minors engaged in sexually explicit conduct.

Mr. Hihn is deeply remorseful, accepted responsibility early in the process, and regrets the suffering he has caused his family and friends. He notes how his actions have had economic and health consequences for his mother and father and created the likelihood that he may not see his grandparents, who are both in their nineties, before they die. “I have done damage that I can never make up for. I have also disgraced my family name. I am also aware of future suffering that is yet to come … I am so sorry for all of it.” Hihn Letter, Exhibit 1.

Mr. Hihn has a close relationship with his family, who have been supportive and submitted letters to the Court. Exhibit 1. Mr. Hihn’s describes his childhood as like a “Norman Rockwell painting.” He was involved in soccer and lacrosse throughout his childhood and became an Eagle Scout at the age of 18. His father was an Assistant Scout Master and Scout Master during his time in the Boy Scouts.

When he was 16 years old Jason Hihn experienced significant physical and emotional trauma when he served as a camp counselor. The trauma from that event was never addressed and likely still impacts Mr. Hihn to this day. PSR ¶ 85 and Berlin Report, Exhibit 2, page 6.

Letters submitted show Jason Hihn to be kind, loving, caring, and giving. Just as importantly, they also demonstrate the support Mr. Hihn will receive upon his eventual release to help him reintegrate into the community and aid with his rehabilitation.

### B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Provide the Defendant with Needed Medical Care or Other Treatment

A sentence of 120 months reflects the seriousness of the offense and promotes respect for the law. The conduct in this case is undoubtedly serious, but is less aggravated than conduct of other defendants who engage in direct child sexual abuse, solicitation of children

for sexual acts, production of child pornography, possession of significant collections of material saved and meticulously catalogued over many years, or who are recidivist offenders.

Dr. Fred Berlin, M.D., Ph.D. (the "Berlin Report") supports the conclusion that Mr. Hihn is unlikely to commit similar offenses and is not a future danger to any child.

> In my professional opinion, but for the Internet, the patient would likely never have become involved in illegal sexual activities. The combination of loneliness aggravated by Covid-19 isolation, a pre-existing fascination with atypical sexual lifestyles, the easy availability of sex-related Internet sites, and the posted advertisement by the undercover investigator had created a "perfect storm" of circumstances that had affected the patient. That should not be seen as an excuse. However, in my judgment those factors had contributed in a very significant way to the patient's actions.
>
> In my professional opinion, the patient's future prognosis is very good. He is a first-time criminal offender, and not a recidivist. He has learned an extremely painful lesson, and he appears to be highly motivated not to repeat his behavior. He fully understands if he were to recidivate, he would likely die an old man in prison. He has excellent family support, and he has not failed prior therapeutic interventions. He is not antisocial in his makeup, and he does not have a recurrent pattern of seeking out sex with children. No child has ever accused him of sexual misconduct. He does not have any comorbid conditions, such as drug addiction or alcoholism, that would compromise his future prognosis. For all of these reasons if given an opportunity to reenter society, it is my belief that he will be able to do so as a safe and productive citizen.

Berlin Report, pp. 13-14. Exhibit 2. Dr. Berlin also recommends specific therapeutic actions which may assist the Court in setting conditions of supervised release. *Id.* At p.14.

### C. The Sentence Range Established For the Applicable Category of Offense As Set Forth In the Guidelines Issued by the Sentencing Commission

The advisory Guidelines sentencing range results from conviction of two offenses. Application of the Specific Offense Characteristics significantly increases the Adjusted Offense Levels, 10 levels for Attempted Enticement and 11 levels for Possession of Child Pornography.

**Count One – Attempted Enticement of a Minor**
**18 U.S.C. § 2422(b)**

| Guideline | Description | Offense Level |
|---|---|---|
| 2G1.3(a)(3) | base offense level | 28 |
| 2G1.3(b)(3) | offense involved use of a computer or interactive computer service persuade, induce, entice, coerce, orfacilitate the travel of, the minor to engage in prohibited sexual conduct or to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor | +2 |
| 2G1.3(b)(5) | offense involved a minor who had not attained theage of 12 years | +8 |

**Count Two – Possession of Child Pornography**
**18 U.S.C. § 2252(a)(4)(B)**

| Guideline | Description | Offense Level |
|---|---|---|
| 2G2.2(a)(1) | base offense level | 18 |
| 2G2.2(b)(2) | material involved a prepubescent minor or a minorwho had not attained the age of 12 years | +2 |
| 2G2.2(b)(3)(F) | defendant knowingly engaged in distribution | +2 |
| 2G2.2(b)(4) | offense involved material that portrays sadistic or masochistic conduct or other depictions of violence;or sexual abuse or exploitation of an infant or toddler | +4 |
| 2G2.2(b)(6) | offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material,or for accessing with intent to view the material | +2 |
| 2G2.2(b)(7)(D) | offense involved at least 150 but fewer than 300 images[1] | +3 |

In June 2021, the United States Sentencing Commission released a report to Congress, *Federal Sentencing of Child Pornography Non-Production Offenses* (the *"2021 Report"*)[2], which updated and expanded upon the Commission's 2012 *Child Pornography Report to the Congress: Federal Child Pornography Offenses* (the *"2012 Report"*).

[1] The device seized from Mr. Hihn at his arrest contained 2 videos (totaling 93 seconds), which according to 2G2.2, Application note 6(B)(ii), represents 150 images.

The device also contained 40 original images, and multiple copies of those 40 images, mostly hidden thumbnail copies in the cache, totaling 143 images.

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

1. Unwarranted Use of Specific Offense Characteristics

While the *2021 Report* dealt specifically with child pornography guidelines, similar use of the "specific offense characteristics" enhancements are also applicable to attempted enticement cases. Due to advancements in technology, enhancements that were only intended to apply to the most serious child pornography offenses are routinely applied to most non-production child pornography offenders. *2021 Report*, p. 2.

The Commission concluded that the nonproduction child pornography sentencing scheme should be revised to account for technological changes in offense conduct, emerging social science research about offender behavior, and variations in offender culpability and sexual dangerousness. *Id.* The report's conclusions support a variance in this case because the identical specific offense characteristics addressed by the Commission have been used.

Non-production child pornography offenses are unique because of the number of specific offense characteristics that apply to the vast majority of offenders sentenced under 2G2.2. The incidence of the underlying conduct and circumstances triggering sentencing enhancements has grown, particularly due to the evolution and prevalence of technology used to commit child pornography offenses. *Id.*at 18.

The Commission notes that the *2012 Report* explained that by fiscal year 2010, four of the six enhancements in 2G2.2(b)—together accounting for 13 offense levels—applied to the typical non-production child pornography offender and thus failed to meaningfully distinguish between more culpable and less culpable offenders. *Id.* at 19.

In fiscal year 2019, these enhancements each continued to apply in the vast majority of non-production child pornography cases. Notably, over <u>95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the</u>

victim (images depicting victims under the age of 12). The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases. Id. at 19. (Emphasis added).

The application of these enhancements is consistent between the non-production child pornography offense types. The enhancements are intended to increase the offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate.

> For example, distribution and possession offenders received the 2-level enhancement for the age of the victim at nearly identical rates (96.8% and 96.3%, respectively). All three groups of non-production child pornography offenders received the 2-level enhancement for use of a computer over 93 percent of the time. And although distribution offenders received the sadistic or masochistic conduct or abuse of an infant or toddler enhancement at a slightly higher rate (89.6%), there is little variation in the rate between receipt and possession offenders (80.8% and 78.6%, respectively). Likewise, although receipt offenders received an increase for the number of images at a slightly lower rate (87.7%), there is little difference between the application rates for distribution and possession offenders (97.0% and 95.4%, respectively)."

*2021 Report*, p.19. (Emphasis added).

As a result of the regular application of the specific offenses characteristics to all offenses, courts increasingly apply downward variances in response to the high guideline ranges that now apply to the typical non-production child pornography offender. *Id.* at 23.

Congress has not implemented the Commission's statutory or guideline recommendations. As such, § 2G2.2 remains largely unchanged, with the guideline enhancements for non-production child pornography offenders at issue in the *2012 Report* still in effect. As a result, judges sentence most non-production child pornography offenders

below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. §3553(a). *Id*. at 3.

Less than one-third (30.0%) of non-production child pornography offenders received a sentence within the guideline range in fiscal year 2019. Among the individual offense types, receipt offenders were sentenced within the guideline range at the highest rate (41.8%), followed by possession (32.2%) and distribution (25.3%) offenders. *Id*.

Between 2005 and 2019, offenders convicted of Possession of Child Pornography received a downward variance below the guideline range in 55.0% of all cases. *Id*. at 24. Figure 10 in the Report shows “Trend in Sentences Relative to the Guideline Range for All § 2G2.2 Offenses”.

Figure 10.
Trend in Sentences Relative to the Guideline Range for All §2G2.2 Offenses



The rate of downward variances increased from fiscal year 2005 to its peak at 63.0 percent in fiscal year 2017. Since the peak in fiscal year 2017, the rate of variances below the guideline range decreased slightly to 59.0 percent. The rate of substantial assistance departures, downward departures, and upward departures or variances has remained relatively steady over time. *Id.*

2. Recidivism

Non-production child pornography offenders released or placed on probation have several characteristics that are associated with lower recidivism rates, such as lengthy sentences, their age at sentencing and release, and minimal criminal history. *Id.* at 64. The sexual recidivism rate for all non-production child pornography offenders in only 4.3%. An additional 7.3 percent of offenders were arrested or had their term of supervised release revoked for failing to register as a sex offender. *Id.* at 65.

When initially sentenced, the average age of non-production child pornography offenders released in 2015 was 41 years. When released from prison, their average age was 45 years. *Id.* at 64. The median term of supervised release imposed on non-production offenders in 2015 was 120 months. *Id.*

D. **The Sentence Should Avoid Unwarranted Sentencing Disparities**

Title 18 U.S.C. 3553(a)(6) directs that the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" be considered when imposing sentence.

The Sentencing Commission maintains a computerized data collection system of federal sentencing information, including for each district: (1) judgment and commitment orders; (2) the statements of reasons (including the reasons for any departures or variances); (3) plea agreements; (4) the indictments or other charging document; and (5) presentence

reports. From this information, the Commission releases annually a database of sentencing information for individual defendants sentenced during that fiscal year.

To this end, MCM Data Consulting ("MCM") prepared the attached report of data analysis to determine comparative sentences imposed on defendants most similar to Mr. Hihn. The data files included contain all cases received by the Commission that were sentenced between October 1, 1998 and September 30, 2020. MCM Report, Exhibit 3.

The search revealed 109 similar cases nationally using the following criteria which are present in this case: (1) Criminal History I; (2) Plea Agreement; (3) No 5K1.1 Substantial Assistance Motion; and (4) Total Offense Level of 35.

| FINDINGS – TABLE A<br>GUILTY-PLEADING, CRIMINAL HISTORY CATEGORY I DEFENDANTS<br>SCORED ACCORDING TO USSG §2G1.3<br>TOTAL OFFENSE LEVEL 35<br>(EXCLUDES USSG §5K1.1 DEFENDANTS)<br>NATIONAL – FY 2008 - FY 2020 |
|---|
| • Of the 109 defendants sentenced nationally who were Total Offense Level 35 (168-210 months of imprisonment), the average sentence imposed was 154.8 months of imprisonment.<br>➢ Of these 109 defendants who were Total Offense Level 35, 15 defendants were sentenced in the **Fourth Circuit**. The average sentence imposed on these 15 defendants was 148.3 months of imprisonment.<br>➢ Of the 15 defendants sentenced in the Fourth Circuit who were Total Offense Level 35, 3 defendants were sentenced in the **Eastern District of Virginia**. All 3 defendants were sentenced to 120.0 months of imprisonment.<br>• Of the 109 defendants sentenced nationally who were Total Offense Level 35, 100 defendants were subject to a statutory mandatory minimum. Of these 100 defendants, 30 defendants (30.0%) were sentenced to their statutory mandatory minimum sentence. |

For the 109 defendants sentenced nationally who were Total Offense Level 35, MCM determined 52.3% received sentences below the guideline range of 168-210 months of imprisonment. Courts imposed within-guidelines range sentences 46.8% and above-guidelines sentences in 0.9% in the remaining cases.

MCM narrowed the search from 109 defendants to 81 defendants by eliminating cases where the defendant was not scored precisely the same as the scoring contained in Mr. Hihn's PSR. <u>The following table illustrates that EDVA courts imposed 120 months in all three cases scored identical to Mr. Hihn.</u>

**FINDINGS – TABLE C**
**GUILTY-PLEADING, CRIMINAL HISTORY CATEGORY I DEFENDANTS**
**SCORED ACCORDING TO USSG §2G1.3**
**TOTAL OFFENSE LEVEL 35**
**SCORED PRECISELY THE SAME AS MR. HIHN'S PSR SCORING**
**(EXCLUDES USSG §5K1.1 DEFENDANTS)**
**NATIONAL – FY 2008 - FY 2020**

- Of the 81 defendants sentenced nationally who were scored precisely the same as the scoring contained in Mr. Hihn's PSR, the average sentence imposed was 150.9 months of imprisonment. All 81 defendants were subject to a 120-month statutory mandatory minimum sentence. Of these 81 defendants, 27 defendants (33.3%) were sentenced to their statutory mandatory minimum of 120 months of imprisonment.
    - Of the 81 defendants sentenced nationally who were scored precisely the same as the scoring contained in Mr. Hihn's PSR, 13 defendants were sentenced in the **Fourth Circuit**. The average sentence imposed on these 13 defendants was 145.8 months of imprisonment. Of these 13 defendants, 4 defendants (30.8%) were sentenced to their statutory mandatory minimum of 120 months of imprisonment.
    - Of the 13 defendants sentenced in the Fourth Circuit who were scored precisely the same as the scoring contained in Mr. Hihn's PSR, 3 defendants were sentenced in the **Eastern District of Virginia**. The average sentence imposed on these 3 defendants was 120.0 months of imprisonment. All 3 defendants (100.0%) were sentenced to their statutory mandatory minimum of 120 months of imprisonment.

Counsel has located other cases which may assist the Court in comparing criminal conduct and sentencing outcomes in this District. Hihn Chart, Exhibit 4. Although every case is different, the information contained therein supports Hihn's position that a sentence of 120 months insures parity with other sentencing outcomes.

## III. Bureau of Prisons Recommendations

Mr. Hihn respectfully requests that the Court recommend to the U.S. Bureau of Prisons that he be designated to serve his sentence at FCI Cumberland and that he participate in the RDAP (Residential Drug Abuse Program).

## IV. Conclusion

Mr. Hihn requests the Court vary downward by three offense levels. The total offense level as listed in the PSR is 35. After a three-level reduction, the total offense level will be 32, with a criminal history category I provides a sentencing guidelines range of 121 to 151 months. A sentence of 120 months in prison, mandatory sex-offender registration, and a term of supervised release is sufficient, but not greater than necessary to meet the objectives of 18 U.S.C. § 3553(a).

Respectfully submitted,

JASON STEUART HIHN
By Counsel

/s/ Pleasant S. Brodnax, III
Pleasant S. Brodnax, III
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006
(202) 462-1100
pleasant.brodnax@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April 2022, the foregoing pleading was filed using the CM/ECF system, which will send notification of such electronic filing (NEF) to all counsel of record.

/s/ Pleasant S. Brodnax, III
Pleasant S. Brodnax, III