UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA . Criminal No. 1:21cr167
.
vs. . Alexandria, Virginia
. December 17, 2021
JASON STEUART HIHN, . 9:02 a.m.
.
Defendant. .
.
. . . . . . . . . . .

TRANSCRIPT OF PRE-INDICTMENT PLEA
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: SETH SCHLESSINGER, AUSA
WHITNEY KRAMER, SAUSA
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

FOR THE DEFENDANT: PLEASANT S. BRODNAX, III, ESQ.
Law Office of Pleasant S.
Brodnax, III
1701 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006

OFFICIAL COURT REPORTER: ANNELIESE J. THOMSON, RDR, CRR
(703)629-3845

(Pages 1 - 38)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

P R O C E E D I N G S

(Defendant present.)

THE CLERK: Criminal Case 21-167, United States of America v. Jason Steuart Hihn. Would counsel please note their appearances for the record.

MR. SCHLESSINGER: Good morning, Your Honor. Seth Schlessinger and Whitney Kramer for the United States.

THE COURT: Good morning.

MR. BRODNAX: Good morning, Your Honor. Pleasant Brodnax on behalf of Mr. Hihn.

THE COURT: All right. Mr. Hihn, come up to the lectern.

Mr. Hihn, are you fully vaccinated?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you had the booster shot yet?

THE DEFENDANT: No.

THE COURT: All right. What vaccination did you get?

THE DEFENDANT: Johnson & Johnson.

THE COURT: And when did you get it?

THE DEFENDANT: May.

THE COURT: All right. I'm going to ask you to keep your mask on then. I think that's not sufficient. If we can't hear you, you'll take it off; and then, Mr. Brodnax, I'll ask you to keep some distance from your client, all right?

MR. BRODNAX: Yes, Your Honor. Yes.

THE COURT: All right. The clerk will give you an affirmation at this time.

JASON STEUART HIHN, DEFENDANT, AFFIRMED

THE COURT: All right. Mr. Hihn, you have just taken a promise to tell the truth in answering all the Court's questions, and that means that if you should lie in answering any question, the government could prosecute you for a new and separate crime called perjury.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: For the record, what is your full name?

THE DEFENDANT: Jason Steuart Hihn.

THE COURT: How old are you?

THE DEFENDANT: Forty-five.

THE COURT: How many years of schooling have you completed?

THE DEFENDANT: A bachelor's degree.

THE COURT: All right. Do you have any problem reading, writing, understanding, or speaking English?

THE DEFENDANT: No.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Are you currently on probation, parole, or supervised release from any other criminal case?

THE DEFENDANT: No.

THE COURT: Mr. Brodnax, is that correct?

MR. BRODNAX: Yes, Your Honor.

THE COURT: Are you at this time under the care of a doctor for any physical or mental condition?

THE DEFENDANT: No.

THE COURT: Within the last 24 hours, have you taken any kind of medication, either by prescription or over the counter like an aspirin or an Advil?

THE DEFENDANT: No.

THE COURT: Are you at this time under the influence of any alcohol or drugs?

THE DEFENDANT: No.

THE COURT: Mr. Hihn, we have several documents we need to go over this morning in connection with your plea, and the first document has the title "Waiver of Indictment," and I see what appears to be your signature as well as that of your counsel on the document.

And I just as I look at the papers here, I want to make sure, so the superseding criminal information, the copy I have, I just want to make sure because it's not a stamped copy, it has two counts plus a forfeiture notice. Is that correct?

MR. SCHLESSINGER: Yes, it is, Your Honor.

THE COURT: All right, that's fine.

Now, did you, in fact, sign this waiver that's in court today?

THE DEFENDANT: Yes.

THE COURT: And you signed it on today's date; is that correct?

THE DEFENDANT: Yes.

THE COURT: Before today, had you discussed with Mr. Brodnax waiving indictment?

THE DEFENDANT: Yes.

THE COURT: And had -- did he explain the following to you before you signed this waiver: Do you understand that you have a right under the laws and Constitution of the United States to insist that the federal prosecutors go before a group of people called a federal grand jury with the evidence they've developed concerning your attempting to entice a minor as well as your possession of child pornography, two separate felony offenses?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, a federal grand jury is made up of anywhere from 16 to 23 ordinary citizens who are brought together essentially on a random basis, and the job of a grand jury is to review potential federal felony-level criminal prosecutions, and what happens in the grand jury process, which is a secret process, is a prosecutor goes into the room, advises the grand jurors that he or she believes that the person has committed one or multiple federal felony-level

crimes, and then presents evidence to the grand jurors supporting that position. Now, the evidence could be the testimony of witnesses, photographs, bank records, phone records, etc.

Then the prosecutor leaves the room after the prosecutor believes that he or she has presented enough evidence to the grand jurors, and it's left alone then to the grand jurors to decide whether there has been sufficient evidence presented, and if at least 12 members of the grand jury are satisfied that the evidence establishes probable cause that the person has committed the crime or crimes the government wants to charge, the grand jury will issue a document called an indictment, and that is normally how a felony level begins in federal court.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So the grand jury process is considered to be a way of protecting a person's rights because it exists to ensure that a person is not publicly charged with serious criminal activity without there being a genuine factual basis to support the charge or charges. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, a person can give up his right to that grand jury review process, and that would be done by signing a waiver of indictment such as the one you have signed.

The word "waiver" in the law basically means to give something up, so by waiving indictment, you're giving up your right to that grand jury review process, and instead, you're authorizing the prosecutors to come to court today and file these two charges against you using a document called a criminal information, which will not have been tested by a grand jury.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, other than the plea agreement you've entered with the United States, do you believe that anybody has promised or suggested to you that by waiving indictment, you would somehow get a lighter sentence or more favorable treatment by the Court?

THE DEFENDANT: I'm sorry, can you repeat the question?

THE COURT: Sure. Other than the plea agreement that you've reached that we'll talk about in a few minutes, do you believe that anybody has promised or suggested to you that by waiving indictment, you would get a lighter sentence or more favorable treatment by the Court?

THE DEFENDANT: No.

THE COURT: Has anyone put any force or pressure on you to waive indictment today?

THE DEFENDANT: No.

THE COURT: Is there anything about the presence of

COVID in the environment and the potential that it may start infecting prisons again that may have affected your decision to waive indictment?

THE DEFENDANT: No.

THE COURT: All right. And, Mr. Brodnax, have you had enough time to go over this waiver with your client?

MR. BRODNAX: Yes, Your Honor.

THE COURT: Does the waiver accord with your understanding of what your client wants to do in this case?

MR. BRODNAX: Yes, Your Honor.

THE COURT: And are you satisfied he's entered the waiver in a knowing and voluntary fashion?

MR. BRODNAX: Yes, Your Honor.

THE COURT: All right. Then based on these answers, Mr. Hihn, I'm satisfied you've entered your waiver with the full advice of counsel and that you've entered it in a knowing and voluntary fashion, so the waiver is accepted, and that allows the United States to file a superseding criminal information, and I assume you've seen a copy of that information?

THE DEFENDANT: Yes.

THE COURT: All right. I'm going to go over it with you in any case. In Count 1, which is attempted enticement of a minor, it's alleged that from in or about April 21 of 2021 through June 24 of 2021, within this district and elsewhere,

that you, using a facility and means of interstate or foreign commerce, did attempt to knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense.

Do you understand the nature of that charge?

THE DEFENDANT: Yes.

THE COURT: How do you want to plead to it? How do you want to plead?

THE DEFENDANT: Guilty, guilty.

THE COURT: All right. The second charge -- second count, which alleges possession of child pornography, alleges that on or about June 24 of 2021, in this district, that you knowingly possessed a matter, that is, a Samsung cell phone, containing a visual depiction which had been shipped and transported in interstate commerce, and using a means and facility of interstate or foreign commerce, and which visual depiction was produced using materials which had been shipped and transported in interstate or foreign commerce, and the producing of such visual depiction involved the use of a minor engaged in sexually explicit conduct, and the visual depiction was of such conduct.

It is further alleged that a visual depiction involved in the offense involved a prepubescent minor and a minor who had not attained 12 years of age.

Do you understand the nature of that charge?

THE DEFENDANT: Yes.

THE COURT: And how do you want to plead to that charge?

THE DEFENDANT: Guilty.

THE COURT: Now, before the Court -- and just for the record, you note that there's also a forfeiture notice that you may be required to forfeit any and all materials that you used to conduct the offenses or from which you benefited from the offenses; in other words, this doesn't involve money in that respect, but most likely any of the -- the phone and any of computer equipment may be forfeited.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. So to these two charges, how do you want to plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And do you understand that before the Court accepts these guilty pleas, I'm going to go over a series of questions with you about your plea agreement with the government and the statement of facts? At any point this morning, if you should change your mind and decide you don't want to plead guilty to either one or both of these charges, you may change your plea to not guilty.

And I understand this case is set for trial on, I

guess, an indictment, correct?

MR. SCHLESSINGER: Yes, Your Honor.

THE COURT: All right. Set for trial on January 4.

And before we go any further, I should also make sure, as you know, this case is assigned to Judge O'Grady. He is unable to take this plea today and did ask me to take it, but he would be the judge who would impose the sentence.

Is there any objection to proceeding that way?

MR. BRODNAX: No, Your Honor.

THE COURT: Mr. Hihn, do you have any objection?

THE DEFENDANT: No, Your Honor.

THE COURT: And, Mr. Brodnax, do you have any objection?

MR. BRODNAX: No, Your Honor.

THE COURT: All right. And I know the government doesn't take a position on these things.

MR. SCHLESSINGER: (Nodding head.)

THE COURT: All right.

All right. Let's turn to your plea agreement, and I hope you have a copy of it with you. If you will take a look at the last page, which is page 14, I see on that page what appears to be your signature and today's date. Did you, in fact, sign the plea agreement?

THE DEFENDANT: Yes.

THE COURT: And did you sign it today?

THE DEFENDANT: Yes.

THE COURT: Now, before you signed the agreement, did you read it over for yourself word for word?

THE DEFENDANT: Yes.

THE COURT: Have you discussed it thoroughly with Mr. Brodnax?

THE DEFENDANT: Yes.

THE COURT: Approximately how long ago did you see a copy of this plea agreement?

THE DEFENDANT: The original plea agreement came in in the beginning of November.

THE COURT: All right. And today is December 17, so you've had several weeks to be considering it?

THE DEFENDANT: Yes.

THE COURT: And I assume there have been some changes made to it?

THE DEFENDANT: Yes.

THE COURT: But the version that's in court today, which is the final plea agreement, this one you have also read completely?

THE DEFENDANT: Yes.

THE COURT: Now, have you asked Mr. Brodnax all the questions that you have about this plea agreement?

THE DEFENDANT: Yes.

THE COURT: Has he answered all of your questions to

your satisfaction?

THE DEFENDANT: Yes.

THE COURT: Do you understand that -- do you have any questions you want to ask me at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: But do you understand you have a right to stop and ask Mr. Brodnax or me if you do have any questions while we're discussing this case this morning? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now, I want you to look at page 14, at the two sentences right above your signature. They go: "I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it."

Do you see that?

THE DEFENDANT: Yes.

THE COURT: Are those two sentences completely true?

THE DEFENDANT: Yes.

THE COURT: Now, by telling the Court that you have read the entire agreement and discussed it thoroughly with counsel and you understand it and you are voluntarily agreeing to it, that means you will be bound by everything that's written in this 14-page document even if I don't go over every paragraph or page of the agreement with you in court today.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And the reason for that result is that this plea agreement is really a written contract between you and the U.S. attorney for this district, and when a person signs a written contract after he's carefully reviewed it with his attorney and he understands it when he signs it and he signs it voluntarily, then it's a binding legal document, and you can't just come back to court a few weeks in the future and say: You know, I thought more about it. I don't like what's on page 4. I want to change it.

That's too late. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, other than this written plea agreement, do you believe you have any side deals or side understandings with any prosecutor, investigator, or anybody else concerning this case?

THE DEFENDANT: No, Your Honor.

THE COURT: And is that correct, Mr. Brodnax?

MR. BRODNAX: That is correct.

THE COURT: So this is the complete understanding of the parties; is that correct?

MR. BRODNAX: Yes, Your Honor.

THE COURT: All right. Let's turn then to page 1, paragraph 1, and there it says you've agreed to waive

indictment, which you have just done, and that you've agreed to plead guilty to the two counts in the superseding criminal information.

Now, Count 1, which charges you with attempted enticement of a minor to engage in criminal sexual activity, is a felony offense which exposes you to a mandatory minimum term of ten years of imprisonment and carries the possibility of a term of life imprisonment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition, you could be required to pay a fine of up to $250,000, restitution to any victims that might be involved in the case, the forfeiture of any assets that may be appropriate. You will be required to pay a special assessment, depending upon the facts of the case. That can be $100 up to I believe it's $5,000, correct, for this offense?

MR. SCHLESSINGER: It would potentially be an additional $5,000 if Mr. Hihn --

THE COURT: All right. So it would be a total of $5,100 of special assessments? It's 100 plus 5,000?

MR. SCHLESSINGER: Yes.

THE COURT: All right. Do you understand that, Mr. Hihn?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. The special assessment is not

a fine. It's a separate monetary penalty. That money goes specifically into a victims compensation fund.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. So that's in addition to the potential for the $250,000. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. And then lastly, as part of the penalty you face with Count 1, you're looking at a minimum term of five years of supervised release, and that could be actually as long as a maximum term of life supervision.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now, as to Count 2, which is the charge of possession of child pornography, which includes sexually explicit depictions of minors under the age of 12, the maximum penalty there is 20 years of imprisonment; a fine of up to $250,000; again, restitution; and in that case, if any of the depictions in the child pornography charge are real children, you may be required to pay compensation to them.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Again, potential for forfeiture as to that offense, a minimum term here again of five years of supervised release, with a possibility of a

maximum of supervised release, and a separate special assessment that would have to be imposed of $100.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. Now, in the federal system, parole does not exist any longer. That means whatever term of imprisonment is imposed must be fully served.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: When the prison portion of the sentence has been satisfied, that's when the supervised release portion goes into effect. Now, when a person is on supervised release, he's under the control of a federal probation officer, and there may be requirements to do certain things as well as requirements not to do certain things. A requirement that will be guaranteed in this case is that you'll be required to register as a sex offender, and we'll get into that a bit more, but that will be a definite condition of supervision.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: There may be also requirements to attend to mental health programs. I can't give you all the conditions of supervision at this point, but what you need to understand is that if you violate any condition of supervised release, you can be brought back to court, and if the violation is

established, you can be sent back to prison, and that could be for as long as the period of supervision that was imposed on you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, when it comes time for sentencing, the Court is going to be looking at three sources of law: first, the statutes of conviction, because Count 1 has that mandatory minimum term of ten years; secondly, we're going to look at the sentencing guidelines; and third, we're going to look at the 3553(a) factors.

And some of these issues are discussed in paragraph 5 of your plea agreement, starting on page 3. In terms of the -- what's in paragraph 5, I want to make sure you understand that paragraph 5 is only going to be binding on the prosecution team and on you and your attorney but doesn't restrict the Probation Office in any respect in the preparation of the presentence report or in any respect restrict the Court in determining what sentence is appropriate.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. But in paragraph 5, the government and you have agreed that the procedure for determining the offense level on Counts 1 and 2 will be governed by the Sentencing Guidelines, Chapter 3, Part D, and

that the government and you have agreed that if you continue to cooperate with the government and fully accept responsibility and if the offense level is 16 or greater, the government will ask the Court to give you a one-level reduction to your guidelines.

Is that something you understand?

THE DEFENDANT: Yes.

THE COURT: All right. And in terms of the guidelines, remember what the Court has to do before the guidelines can be calculated is we first have to determine your criminal history. Criminal histories are divided into six categories. Each gets a number. So a Category I history goes to someone who's never been in trouble with the law or has a very minor record. As convictions, probation violations, and other problems occur, the score goes up, with a level VI going to the most serious offenders.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And then we have to determine the offense level. So as I said, what you-all have agreed to, although the Probation Office may do something different, but you've agreed to the way in which you think the offense level should be calculated.

But in any case, I can tell you in these types of cases, the number of images that are involved in Count 2, for

example, can affect the guidelines. The age of the victims can affect the guidelines. If there's any acts of bestiality, sadomasochism, those types of more aggravated issues can increase the guidelines.

At the same time, factors that can decrease the, I'm sorry, the offense level would be full acceptance of responsibility. In that case, two levels can be reduced, and the government in this agreement has agreed that if you get the two-level decrease, they will file the motion for a third-level decrease.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And the last paragraph of paragraph 5 indicates that there have been no other agreements, so that both sides are free to argue, the government can argue to increase your guidelines and Mr. Brodnax can argue factors that might mitigate or lower the guidelines.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: But at the end of the day, the Court will decide what your criminal history should be and what the offense level should be, and then those two numbers are put on a one-page chart called the Sentencing Guideline Table. Now, that will establish an advisory guideline range which the Court must consider but is not required to sentence within.

And obviously, if the guideline range is below the mandatory minimum of ten years as to Count 1, we can't even consider the guideline range because the mandatory minimum is required by law. On the other hand, if the guideline range is above the ten-year mandatory minimum, then the Court can look at the guideline range, sentence in it or sentence below it but not below the mandatory minimum, or sentence above it, but obviously, the Court cannot sentence above the statutory maximum, which is life imprisonment for both of these counts.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: All right. In addition to the guidelines, the Court will also look at the 3553(a) factors, so we're going to look, obviously, at your entire background, your work history, your family history, any medical issues, any pattern of similar conduct that has to be addressed.

We also have to look at other types of sentences that have been imposed in these types of cases. So there are multiple factors that go into the sentencing decision.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, I'm going to assume that you've spent a fair amount of time talking with Mr. Brodnax about the sentence you might get in this case. Have you had such discussions?

THE DEFENDANT: Yes.

THE COURT: All right. And you may have had them with the prosecutors as well or the investigators; I don't know; but the point is I'm going to assume that people have given you some estimates as to what type of sentence they think you might get. Has that happened?

THE DEFENDANT: Yes.

THE COURT: You need to understand that no matter what Mr. Brodnax may have told you he thinks your sentence will be or if the prosecutors have said what type of sentence they think you might get, none of those discussions are binding on the Court, and so if at the sentencing hearing you receive a sentence that is different from what you might be expecting or hoping for, that does not constitute a violation of your plea agreement, and it will not give you a basis to withdraw your guilty pleas.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Defendants normally have the right to appeal the sentence imposed on them, but if you look at paragraph 6 of your plea agreement, this is on page 4, the second sentence of that paragraph, which begins with the word "nonetheless," as a condition of this plea agreement, you are knowingly waiving, that same word, "waive," which means giving up first of all your right to appeal your conviction for

these two counts and your right to appeal any sentence as long as the sentence is not greater than the statutory maximum on any grounds whatsoever except for a claim that you received ineffective assistance of counsel.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So that means as long as you're not sentenced to more than life imprisonment on either of these two counts and not more than a life term of supervised release and the fine is not higher than $250,000 and the special assessment does not exceed the limits, then you have absolutely no legal basis upon which you can appeal those sentences other than a claim that Mr. Brodnax did not provide you with effective assistance.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. In exchange for your guilty plea today -- I don't see in here an agreement about dismissal of the remaining charges. I mean, there is still a pending indictment, is there not?

MR. SCHLESSINGER: That's right, Your Honor.

THE COURT: Is it part of the plea agreement that that charge is going to be dismissed?

MR. SCHLESSINGER: Yes, Your Honor. Should the Court accept Mr. Hihn's plea, the government would seek to dismiss

the underlying indictment.

THE COURT: Is there any reason why that wasn't included in this -- in the plea agreement?

MR. SCHLESSINGER: No, Your Honor.

THE COURT: All right. That's standard, so I want to make sure. So that's something in addition to the written plea agreement that you-all had agreed to; is that correct?

MR. SCHLESSINGER: That is correct.

MR. BRODNAX: Yes, Your Honor.

THE COURT: Mr. Brodnax?

MR. BRODNAX: Yes.

THE COURT: All right. So I want to make sure you understand that one of the things you -- one of the benefits you will get from pleading guilty is that the indictment that was filed will be dismissed.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, this is a superseding criminal information, so at some point, had you filed a criminal information formally with the Court?

MR. SCHLESSINGER: We did file it, Your Honor. We filed it formally yesterday, I believe.

THE COURT: What -- no. This document has the title "Superseding Criminal Information." Is it superseding a previous criminal information, or it's superseding the indictment?

MR. SCHLESSINGER: It's superseding the indictment.

THE COURT: All right. I don't normally see it done that way. Normally, your office just files a criminal information, but the word "superseding" suggests to me it's replacing something of its own generic sort.

MR. SCHLESSINGER: I understand, Your Honor. I apologize. This is meant to supersede the previous charging document.

THE COURT: All right. Okay. I just want to be clear about that.

So one of the benefits you're going to get then is that the pending indictment is going to be dismissed. All right.

I want to make sure you're clear about paragraph 13 of the plea agreement, which is the Sex Offender Registration Notification Act. Do you understand that being convicted of either of these two offenses is going to require that you will have to register as a sex offender in any state in which you are residing or in which you are conducting any kind of employment or acting as a student? And you have to do that within three business days.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: So if you move from -- you live in Maryland now?

THE DEFENDANT: (Nodding head.)

THE COURT: If you, you know, if you move out of Maryland -- you'll have to register in Maryland when you're released from custody. If you were to move to Texas, you'd have to within three days register with the appropriate Texas registration.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Have you had enough time to explain everything you know about this case to Mr. Brodnax?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has he explained to you the nature of these two charges and any ways in which you could possibly defend yourself against the charges if you continued with your not guilty pleas and you went to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, Mr. Brodnax, did you get full discovery in this case?

MR. BRODNAX: Yes, Your Honor.

THE COURT: And were you able to share the discovery with your client?

MR. BRODNAX: Yes, Your Honor.

THE COURT: All right. And, Mr. Hihn, do you agree that you had a chance to look at the government's -- or at least consider the government's evidence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Are you fully satisfied with the way in which Mr. Brodnax has negotiated these two guilty pleas for you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did he keep you fully informed as to how he was negotiating on your behalf?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And are you fully satisfied with the way in which he has represented you in this proceeding?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand you still at this time have a right to change your mind and enter a plea of not guilty to either one or both of these charges? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if you were to plead not guilty, then the burden at trial would be on the government to prove your guilt, and that burden is a burden of proof beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So in order for the government to convict you as to Count 1, they have to prove each and every one of the following facts beyond a reasonable doubt: They first of all have to prove that during the time frame alleged, which is

January -- I'm sorry, April 21 of 2021 through June 24 of 2021, that you used a facility and means of interstate and foreign commerce. And in this case, as I recall, it would be you were communicating over the internet, and that's involving interstate or foreign commerce.

And that in those communications, you attempted, which means you tried, to knowingly persuade, induce, entice, and coerce a person who was under the age of 18 to engage in sexual activity which could be charged as a criminal offense.

So they have to prove that you, in fact, did attempt, that means try, to entice a minor to engage in the kind of sexual activity that could be resulting in a criminal charge. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And they have to prove that what you did was knowing, and that means not by an accident or mistake or some other innocent reason. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And in Count 2, they'd have to prove beyond a reasonable doubt that on June 24, 2021, within this district, that you knowingly -- and again, that means not by an accident or mistake or other innocent reason -- possessed, which means had within your control, specifically, within a Samsung cell phone that you owned, visual depictions, they'd have to be able to prove that those visual depictions

had somehow been transported or shipped in interstate commerce, and they have to be able to prove beyond a reasonable doubt that the pictures included individuals under the age of 18, in fact, in this case under the age of 12, engaged in sexual conduct.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Now, if you pled not guilty and went to trial, there are various protections a person has at trial that are essentially given up by pleading guilty. First, you could see all the government's witnesses and evidence and have it tested through the questions of your lawyer.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You could ask the Court for help in getting witnesses and/or physical evidence brought to the courthouse by having the Court issue subpoenas. Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: You could testify as a witness at trial. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You would also have a right under the Fifth Amendment to the Constitution to remain silent during

your trial. In fact, in a criminal trial, the defendant has no burden to put on any evidence whatsoever because you are presumed innocent. All the burden is on the government to prove guilt. So if you chose not to testify, that could not be used as any evidence of your guilt.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You would, of course, have the right to the help of a lawyer at all stages of your trial, and if you could not afford to pay for a lawyer yourself, we would make sure you had an attorney appointed for you at taxpayers' expense. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, there are two ways in which a case can be tried, and when you were arraigned, you chose to have a jury trial, which means 12 ordinary citizens would be brought together to decide the case. Your other option would have been a bench trial, that it would be a case tried solely to a judge, but in either type of trial, the burden is the same on the prosecution, and that is, you could not be found guilty unless the government proved your guilt beyond a reasonable doubt.

And you are charged in this case with two charges. The fact that you might be found guilty as to one charge doesn't necessarily mean you'd be found guilty as to the second. So each individual charge would get its own individual

evaluation.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And in the case of a jury trial, in order for a jury to convict, all 12 jurors have to agree with the decision. So if just one juror had a reasonable doubt about your guilt, that jury could not convict as to that particular count, and we would have to declare a mistrial as to that count, and you might or might not have a new trial with a new jury. It depends on the decision of the prosecution.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, if you continued with not guilty pleas, Mr. Brodnax could try to attack the prosecution's case. Obviously, with Count 1, as we know, there were no real children involved because that was a situation where an FBI undercover agent was purporting to be somebody who had access to these children. So he might try to argue that there was not, you know, an offense there, although the law would not support that position. But there might be other issues, whether the government could prove beyond a reasonable doubt the age of the children of the pictures, because that does have an effect on the outcome of the case.

I have no idea what, if any, defenses you might have, but you need to understand that when you plead guilty, you give

up any and all attacks on the prosecution's case except for an attack on the jurisdiction of the Court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And lastly, if you pled not guilty and you went to trial and you were found guilty on either or both of these charges, you could appeal those findings of guilt to a higher-level court.

Now, as I said earlier as we went through the plea agreement, the way the law is structured as well as under your plea agreement itself, by pleading guilty, you're giving up your right to appeal those convictions. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Other than the written plea agreement that's in court today plus the oral addition that the government is going to dismiss the pending indictment as a part of this plea agreement, do you believe that anybody has promised or suggested to you that by pleading guilty rather than going to trial, you would get a lighter sentence or more favorable treatment by the Court?

THE DEFENDANT: No.

THE COURT: Has anyone or anything put any force or pressure on you to plead guilty today?

THE DEFENDANT: No.

THE COURT: All right. The last document we need to go over is the written statement of facts. Now, this is a five-page document, and it is incorporated and it is part of your plea agreement.

Do you understand that, Mr. Hihn?

THE DEFENDANT: Yes.

THE COURT: And I see on page 5 what appears to be your signature. Did you sign this statement of facts?

THE DEFENDANT: Yes.

THE COURT: And when did you sign it?

THE DEFENDANT: Today.

THE COURT: All right. But before today, had you read over the statement of facts carefully yourself?

THE DEFENDANT: Yes.

THE COURT: All right. And again, have these facts changed over time? In other words, have you and Mr. Brodnax had different versions of the statement of facts?

THE DEFENDANT: I don't believe they have changed.

THE COURT: All right. So this -- all right.

Now, the 12 numbered paragraphs that are above your signature, do you understand first of all that by signing the statement of facts, you are admitting to everything in those 12 paragraphs?

THE DEFENDANT: Yes.

THE COURT: And you're also admitting that if the

case had gone to trial, the government could prove all of those facts beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. I don't need to go into the details of this, but essentially then you do agree, as I understand it, in paragraph 1 that you did, in fact, knowingly try to entice minors to engage in sexual activity that could be charged as a criminal offense. Do you agree with that?

THE DEFENDANT: Yes.

THE COURT: And that that did involve interstate activity, among which was the fact that you traveled from Maryland to Virginia in order to hopefully on your part meet these kids. Is that correct?

THE DEFENDANT: Yeah.

THE COURT: All right. And on Count 2, as I understand it, you do agree that on June 24, 2021, again in the Eastern District of Virginia, you had within your possession a cell phone which you had carried from Maryland into Virginia that included depictions of minors engaged in sexual activity. Is that correct?

THE DEFENDANT: Yes.

THE COURT: All right. I'm not going to go through the various other recitations here, but basically, you were dealing, as I understand it, with an FBI undercover person who was purporting to be a child care provider for two minor

children. Is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree that you were aware that the two children involved, one was described as an infant and the other as a nine-year-old?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree that you were engaging in various texts and other kind of internet communications with the undercover person in which you were explaining various types of sexual activity that you hoped to engage in with those two children?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And do you also agree that you had the various types of images on your cell phone that included images of minors under the age of 12 engaged in sexually explicit activity?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And you understand that if the Court accepts your guilty pleas today, there'll be no further trial of the issues, and you will be found guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As to Count 1 then, which is the attempt to entice a child to engage in sexual conduct that would be in violation of criminal law, how do you want to plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And as to Count 2, the possession of child pornography, how do you want to plead?

THE DEFENDANT: Guilty.

THE COURT: And do you make a claim in any respect that you are innocent of either of these charges?

THE DEFENDANT: No.

THE COURT: All right. Mr. Brodnax, have you had enough time to go over both pleas with your client?

MR. BRODNAX: Yes, Your Honor.

THE COURT: Do the pleas fully accord with your understanding of the facts and circumstances?

MR. BRODNAX: Yes, Your Honor.

THE COURT: And are you satisfied that Mr. Hihn has entered both pleas in a knowing and voluntary fashion?

MR. BRODNAX: Yes, Your Honor.

THE COURT: And in your dealing with Mr. Hihn, has he ever expressed to you any concerns about the virus situation in prisons that's affecting his decision to plead?

MR. BRODNAX: No, Your Honor.

THE COURT: Also, is it your understanding your client has never had any mental health treatment?

MR. BRODNAX: That is correct, Your Honor.

THE COURT: All right. Based on all these questions, I'm satisfied, Mr. Hihn, that you've entered both guilty pleas

with the full advice of competent counsel, that you have entered both pleas in a knowing and voluntary fashion, and that the written statement of facts as well as your oral admissions in court today are more than enough evidence upon which to find you guilty of both Counts 1 and 2 of the superseding criminal information. So you're found guilty of the offenses.

I will ask the government to -- the new practice, as I understand it, is you're filing your motion to dismiss at the sentencing hearing, so make sure you don't -- that you bring that with you when it comes to Judge O'Grady for sentencing, all right?

MR. SCHLESSINGER: (Nodding head.)

THE COURT: We're going to go ahead and set this case for a sentencing hearing on Judge O'Grady's calendar. Mr. Brodnax, the dates that I've been given are March 25 or April 8. Do you have a preference?

MR. BRODNAX: April 8, Your Honor.

THE COURT: All right. This will be set for April 8.

And I believe, I think Judge O'Grady is doing his sentencings at -- is he doing them at nine or ten? Does anybody know?

THE CLERK: I think nine.

THE COURT: Nine? I'm going to put it for nine o'clock. If his chambers wants to change that, they'll let you know, all right?

Mr. Hihn, you will be getting credit for the time you're now serving against the final sentence. You'll also be visited while you're in custody by a federal probation officer who will conduct the background investigation. Your full cooperation with the officer is to your advantage.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Brodnax, anything further for this case?

MR. BRODNAX: No, Your Honor. Thank you.

THE COURT: All right. Anything further from the United States?

MR. SCHLESSINGER: No, Your Honor.

THE COURT: All right. The defendant is remanded at this time, and we'll call the next case.

(Which were all the proceedings had at this time.)

CERTIFICATE OF THE REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/

Anneliese J. Thomson