FILED
MAILROOM
DEC 19 2023
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JASON STEUART HIHN,
Petitioner Pro Se,
v.
UNITED STATES
Respondent

No. 1:21-CR-167

Hon. Rossie D. Alston, Jr

# MEMORANDUM IN SUPPORT OF PETITIONER'S 18 USC 2255 CLAIMS: INEFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS VIOLATIONS AND REQUEST FOR RELIEF

## I. Ineffective Assistance Of Counsel

### Introduction

The American Bar Association (ABA) publishes the Model Code of Professional Responsibility and Code of Judicial Conduct (ISBN:0-89707-276-6, 1986) (Hereafter "Model Code"). It seperates the code into Canons, Ethical Considerations (EC), and Disciplinary Rules (DR).

> "The Model Code is designed to be adopted by appropriate agencies both as a basis for disciplinary action when the conduct of a lawyer falls below the required minimum standards stated in the Disciplinary Rules... The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principal upon which the lawyer can reply for guidance in many specific situtations... The Disciplinary Rules unlike Ethical Considerations are mandatory in character. The Disciplinary Rules state the **minimum level of conduct below which no lawyer can fall without disciplinary action.**" (Model Code, p. 2, emphasis added)

### Disciplinary Rule Violations

DR 1-102 Misconduct (p. 6)
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule

DR 6-101 Failing to Act Competently (p. 62)
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him

Claims under DR 6-101 (A) (3):

1.1 Counsel failed to have the forensic report completed in time prior to pleading and failed to have it completed before sentencing

1.2 Counsel failed to request a continuation to ensure the report would be filed timely

3.1 Counsel was unprepared by the lack of forensic report at sentencing, he cited no cases when defendant required at least 7:

1. United States v. Myers 540 Fed Appx 184, 2014 US. App. Lexis 4404 No. 13-4035 - For the purpose of establishing Dobbs and Flyer as current Fourth Circuit case law reguarding the "knowingly" scienter pertaining to cache files.

2. United States v. Flyer 633 F.3d 911, 919 (9th circuit, 2011)

3. United States v. Dobbs 629 F.3d 1199, 1201 (10th circuit, 2011)

4. United States v. Hillie 14 F.4th 677; 454 Us App. D.C. 294, 2021 US. App. Lexis 288000; 116 Fed.R.Ediv.Serv. (Callaghan) 1142 No. 193027 - For the most recent standard of "lascivious"

5. New York v. Ferber 485 US 747, 73 LEd 2d 1113, 102 SCT 3348 (1982) and

6. Ashcroft v. Free Speech Coalition 535 US 243, 152 LEd 2d 403, 122 SCT 1389 (2002) - For the purpose of excluding "virtual" images which were included in the image count of the offense by the prosecution.

7. Rehaif v. United States 588, 139 SCT _, 204 LED 2d 594, 2019 US Lexis 4199 - For the proper construction of the "knowing" scienter requirement for 18 USC §2252.

Given the complicated statutory construction and case law that is required to resolve the number of images that were in violation of 18 USC §2252, a sentencing hearing was not an appropriate venue to resolve the count as the images were not available for comparison with Hillie, Ashcroft, and Ferber (supra). Defendant pleaded with counsel to have this resolved before entering the plea deal, but he refused insisting that sentencing was an appropriate venue.

3.2 Counsel allowed the image count and enhancements to become embodied in the PSR

3.3 Counsel failed to object to "500 pages" metric at sentencing

8.1 Counsel failed to invisticate current entrapment jurisprudence and to evaluate the evidence for "plus factors" and resuctance, the signs of entrapment

DR 701 Representing a client Zealously (p. 72)
(A) A lawyer shall not intentionally:
(1) Fail to seek the lawful objectives of his client through reasonable available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 (A) (3)

Claims under DR 7-101 (A) (1):

2.1 Counsel did not know the real file counts

2.2 Defendant requested that counsel have the chats challenged as an illegal wiretap and for them to be un-redacted, but counsel refused to do so.

2.3 Defendant requested that counsel requested exculpatory and impeaching evidence but refused to do so. This applies to both the doll images and the alleged illicit file metadata (full paths and permissions).

3.1 As per previous 3.1, but adding the fact that in refusing to request the image metadata from the government, counsel added additional time and cost to the "on-site" work. This should have been supplied by the government.

3.2 As previous 3.1, above.

3.3 Counsel failed to object to the "500 pages" metric at sentencing.

DR 2-110 Withdrawl from Employment (p. 27)
(A) In general:
(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to the rights of his client, including allowing transfer of employment to ther counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

Claims under DR 2-110 (A) (2):

4.1 Counsel violated this DR when he signed out of the case the day of sentencing though he had promised to review the sentence, especially since he did win a modification at sentencing. The modification does not seem to have been made. Counsel stated the sentence would be available in "10 to 14 days". Counsel never made good on his promise and exhausted the defendant's notice of appeal period.

Counsel's Overall Conduct

The character of counsel's service to his client takes in a number of aspects that are difficult to express. Petitioner relied on counsel and his advice, and only after arriving in prison did he find out how much he was misled by counsel. Petitioner had written several motions which were to be perfected by his counsel and filed with the court. Counsel always found a reason to not file a single one. Counsel refused to obtain exculpatory evidence from the government as required under Brady v Maryland 373 US 83, 83 SCT 1194 (1963), insisting that he rely on a contractor that did find significant exculpatory evidence, but only after pleading, and that evidence failed to make it into the record.

Counsel materially misadvised his client as per current federal entrapment jurisprudence and never discussed entrapment sentencing mitigation.

Another example of evidence being denied to petitioner by his own counsel is the handling of his psychological evaluation. After being denied bond at his bond hearing, a psychological evaluation would have been new information to justify a new bond hearing. Instead counsel waited until November to attempt to schedule the evaluation only to find out the first available date was January 14, ten days after the scheduled start of the trial. Defendant wanted the results before deciding to take the plea deal, but because of counsel's incompetence he was denied this evidence as well. With some effort counsel arranged a special weekend evaluation and was promised the results "after the weekend" but the plea deadline which had already been extended was about to expire. Petitioner was forced to take the plea without the benefit of his evaluation results.

Counsel was the gatekeeper to evidence in his favor, exculpatory evidence, but none of that was available before accepting the plea agreement. In this way counsel "railroaded" petitioner into the plea agreement. Counsel used deadlines to manipulate his client. There is not a single act of an adversarial process by counsel, when the Constitution guarentees one. Counsel, if representing his client diligently and with zeal, and in the pursuit of lawful objectives, would have had the psychological evaluation done early in the process, the exculpatory evidence in hand, all before the plea deadline. By withholding this information he engaged in brinkmanship of his own client - a mountain of unassailed government evidence and not a single fact gathered by his own counsel this forcing a choice between taking a plea and no evidence. That is not a choice. As we now know he did not even do the bare minimum - the forensic report was never submitted to the court and he withdrew the same day as sentencing.

It is for these reasons that the petitioner is entitled to a ruling of ineffective assistance of counsel.

II. Due Process Violations

Brady v. Maryland (supra) makes it a Consitutional Due Process violation for the government to not disclose exculpatory and impeaching evidence. On June 29, 2021, Magistrate Judge John Anderson issued a Brady order about the government's requirement to supply Brady material with the consequences of "vacating a conviction or disciplinary action against the prosecution" for failing to do so. The United States Attorneys Manual (USAM) §9-500.1 goes even further by requiring over-compliance for anything that is potentially esculpatory, as well as requiting the prosecutor to know the local jurisprudence and rules. The prosecutor assured compliance. He did not comply.

The First Brady Violation

In the Fourth Circuit as per Myers (supra) the locaton of files on a device is exculpatory when they are in a cache, or are otherwise not accessible to the defendant. The prosecution never provided the full paths and permissions for the files identified by the prosecution as being unlawfully possessed. When the files were inspected by the defendant they were in a folder structure of the government's own design and not as they were on the device thus obscuring their real location. They provided no supplemental file or permission listing with this information. If provided, it would have shown that he did **not** have access to the vast majority of the files alleged. To obtain these files the government attached a forensic tool which bypassed the permissions to which defendant is subject to in normal operation of the device. They were therefore able to access files that the defendant did not have "the exercise of dominion over", a requirement of "possession". Nor did he have the requisite knowledge of these files.

files for the scienter degree of "knowing" as required by statute.

> "Because [the statute] does not criminalize inadvertant receipt or possession of illicit materials, the Government must show proof of at least circumstantial evidence of the requisite knowledge. [internal citations omitted] Thus the courts have reasoned that the mere presence of illicit materials in a computer's temporary internet cache, standing alone, is insufficient to establish knowing receipt, given that the files could have been saved there without the user's knowledge." Myers, supra, going on to cite Dobbs and Flyer, supra.

> "If for example, the evidence shows only that the images were saved to the computer's cache or temporary internet files directory and that the defendant made no effort to remove them, or that the images were otherwise saved to locations inaccessible to a computer user, there may be some reason to believe that the defendant did not 'knowingly' receive the images," Myers, supra

This Fourth Circuit case then makes the location on the filesystem exculpatory in the Fourth Circuit since 2014. The prosecution did not provide this exculpatory information with material impact to the result. This is a Brady violation. It then goes to refusing to obtain this information from the prosecution is ineffective assistance of counsel.

The Second Brady Violation

Although the prosecution provided the chats to the defense, they provided a redacted version with all the images redacted except those of the defendant and one of the agent's hand. Since the agent sent images of dolls and not of actual "individuals" as defined by 1 USC §8, these images are exculpatory. The agent never sent an illicit image, so these images must be provided to the defense. To fail to do so is a violation of Brady. These images informed the defendant of the genetic mismatch between the alleged familial relationship which triggered his heightened scrutiny. Since these images prove to the defendant that she was in possession of dolls, they eliminate the mens rea required to find the defendant guilty of 18 USC 2422, and are therefore esculpatory. It then goes to show that refusing to attempt to have the chat unredacted is ineffective assistance of counsel.

The Third Brady Violation

The chats were carried out using a mobile phone application named Wickr. Wickr has Terms of Service (TOS) which is being provided as Exhibit 3. In relevant parts, the TOS states:

> "IF YOU DO NOT AGREE TO THIS TERMS OF SERVICE, PLEASE CEASE USING THE Wickr SERVICES IMMEDIATELY" (Emphasis in original)
>
> "1. LICENSE GRANT
> ... Subject to the terms of this agreement, Wickr grants you a personal, non-exclusive, non-transfurable and non-sublicenseable license to use the Wickr Services solely for your personal or internal business purposes."
>
> "3. RESTRICTIONS
> You acknowledge and agree that you will not ... (c) attempt to circumvent dor disable the Wickr Software or any technology, features, or measures in the Wickr Software by any means or in any manner..."
>
> "8. USAGE RULES; PROHIBITED CONDUCT & USES
> YOU MAY NOT USE, FACILITATE, OR ALLOW OTHERS TO USE THE Wickr Services:
> * to violate the rights of others;
> * to impersonate others in a manner that does or is intended to mislead, confuse or deceive others;
> * to remove, circumvent, disable, damage or otherwise interfere with security features of the Wickr Services, including any technical measures we may use to prevent or restrict unauthorized access to the Wickr Services, features that prevent or restrict use or copying of any content accessible through the Wickr Services or features that enforce limitations on the use of the Wickr Services;"
>
> "10. GOVERNMENT END USERS
> If this software is being acquired on behalf of the United States Government, then the following provision applies. Use, duplication, or disclosure of the Wickr Software by the U.S. Government is subject to the restrictions set forth in this Agreement and as provided as DFARS 227.7201-1(a) and 227.7202-3(a), DFARS 252.227-7013(c)(1)(ii)(OCT 1988), FAR 12.212(a)(1995), FAR 52.227-19, or FAR 52.227-14(ALT III), as applicable."

The agent used the software illegally by violating the multiple restrictions of the TOS and therefore did not have permission to use the Wickr Software or Services.

First, the software was used by the government agent not for "personal" or "internal business purposes", but to conduct governmental operations on citizens without a warrant.

Second, the agent violated the restriction on circumvention of "features or measures in the Wickr Software by any means or in any manner" when she aimed a camera at the phone screen and recorded the conversation. The Wickr Software has several technical features to control the privacy of the application:

1. Sender-controlled message expiration timer that removes the message from the screen and chat history after a specified time.
2. The Software refuses to function if it detects screen-recording software active on the device
3. The Software disables the screenshot ability of devices while it is running.

Recording the chats by way of aiming a camera at the screen is "circumvention of ... features by any means or in any manner" and a violation of the TOS.

Third, the agent violated the restriction on impersonation by representing herself as an aunt engaging in criminal acts and not as herself, a government agent.

Fourth, the government needs to show that it complied with the restrictions set forth in the agreement pertaining to end users.

Fifth, the agent violated the restriction on circumventing "features that prevent or restrict use or copying of any content accessible through Wickr Services"

As a result of the above **five** violations of the TOS the agent was using the software in violation of the TOS and did nothave a valid agreement in place, and so did not have permission to use the software. The chats are therefore inadmissible.

The Fourth Amendment turns on a "reasonable expectation of privacy" one "that society is willing to recognize" Katz v. United States 369 US 347, 360 19 LEd 2d 576, 88 SCT 507 (1967). In the instant case the defendant had a

reasonable expectation of privacy because of the numerous technical features in the Wickr Software and Services and restrictions in the TOS that afforded him and enhanced expectation of privacy both from the government ("personal or internal business purposes") and that the content of the conversations is not able to be propigated or retained ("circumvention of features or measures"). These technical features and license terms erected virtual walls and a roof around the user, creating an enhanced privacy expectation zone. Just as "the Fourth Amendment nonetheless protected Katz from the warrantless eaves-dropping because he 'justifiably relied' upon the privacy of the telephone booth" (Kyllo v. United States 533 US 27, 150 LEd 2d 94, 121 SCT 2038 (2001) defendant relied on the technical features and the TOS of the Wickr Software. "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo, supra. The prolifer-ation of secure messaging apps - Wickr, Telegram, Signal, to name a few, shows that society values these encrypted, privacy-protecting apps. As in Kyllo where the police used a camera to circumvent the privacy afforded by walls, the agent used a camera to circumvent the privacy-protecting features (listed above).

Additionally the messages stored on a phone are worthy of Fourth Amendment protection as ruled in Riley v. California 189 LEd 2d 430, 1345 SCT 2473 (2014) holding that a search of a cellphone requires a warrant incedent to arrest. But unlike in Kyllo where the question confronted upon the "power of technology to shrink the realm of guarenteed privacy" the technology in the instant case is being used to enlarge the realm of guarenteed privacy. Ironically enough, forum where the agent posted her contact information was a forum entitled in part "TAKING OUR PRIVACY BACK" (emphasis in orginal) (To the best of defendant's memory, it was "TAKING OUR PRIVACY BACK - Encrypted Messengers" in the thread "Wicker Chat".) It was the agent who chose to use Wickr Chat by placing her

contact information in that thread. Then she went about circumventing features and violating the TOS.

The issue of the Fourth Amendment violation is also a Due Process violation because the prosecution did not disclose the agent's TOS violations which are impeaching.

Petitioner asked his counsel to have the chats suppressed on any possible grounds. Petitioner even wrote his own motion which counsel did not file. He assured the defendant that were was no misconduct on the part of the government in recording the chats. But petitioner has shown that both his Fourth Amendment right and Due Process right was violated. This further demonstrates ineffective assistance of counsel.

As the chats are the root from which this case stems, and they were unlawfully acquired, the criminal case should be dismissed.

III. Request for Relief

The trifecta of Due Process violations should shock the conscience of the court. The prosecution failed to provide relevant exculpatory evidence, covered for the agent by redacting exculpatory images in the chats, failed to provide impeaching information about the agent's conduct, all required under Brady. The petitioner asks the court to exercise its power under the June 29 Order by vacating the convictions and dismissing the criminal case with prejudice, or any relief the court finds is appropriate.

IV. Supporting Papers

This memorandum is based on petitioner's original §2255 pleading as amended through claim 8.1.

Respectfully submitted this 13 day of December, 2023.

By: ______________________

Jason Steuart Hihn ID: 52188-509
Coleman FCC Low
POBOX 1031
Coleman, FL 33521-1031

Exhibit 3

*Last Modified Date: August 17, 2022*

**AGREEMENT TO THESE TERMS OF SERVICE**

This document and these terms ("Agreement") represent a legal contract between you and Wickr ("Wickr", "we", "our"), governing your use of **Wickr Messenger**, a mobile or web services or mobile or web software ("Wickr Software") owned, controlled or offered by Wickr (collectively, the "Wickr Services"). PLEASE READ CAREFULLY THE FOLLOWING TERMS AND CONDITIONS OF SERVICE. BY USING THE Wickr SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THE TERMS OF THIS TERMS OF SERVICE. IF YOU DO NOT AGREE TO THIS TERMS OF SERVICE, PLEASE CEASE USING THE Wickr SERVICES IMMEDIATELY.

You acknowledge and agree that this contract is only between you and Wickr and not any of Wickr's partners, distributors, promoters or service providers (collectively, "Distributors"). Should you have any issue or claim with respect to the Wickr Services, Wickr, and not its Distributors, will be solely responsible for addressing the issue or claim. If you have obtained the Wickr Services from one of Wickr's Distributors, you agree that any such Distributor will have no obligation or responsibility to provide you any warranty, maintenance and support services with respect to the Wickr Services.

**1. LICENSE GRANT**

All Wickr Services are licensed to you and not sold. Subject to the terms of this agreement, Wickr grants you a personal, non- exclusive, non-transferable and non-sublicensable license to use the Wickr Services solely for your personal or internal business purposes. You may use the Wickr Software for one Wickr Services subscription account on up to ten mobile devices legally under your control, for your personal or internal business use. When you submit User Data to Wickr, you hereby grant to Wickr, a non- exclusive, royalty-free, worldwide license to distribute your User Data through the Wickr Service on your behalf solely for the purpose of providing the secure messaging service. With respect to any open source or third-party code that may be incorporated in the Wickr Software, such open source code is covered by the applicable open source or third-party end user license agreement, if any, authorizing use of such code. [Wickr DOES NOT USE, COPY OR MODIFY USER DATA. IT'S IMPOSSIBLE FOR US TO DO THIS AS DATA IS ENCRYPTED AND WE CAN'T READ IT]

**2. RESERVATION OF RIGHTS**

The Wickr Services and all content, visual interfaces, information, graphics, design, compilation, computer code, products, software, trademarks, service marks, trade names and services are the property of Wickr or its subsidiaries or affiliated companies and/or third- party licensors. Except for the express license granted to you, no right, title,

interest or license to the Wickr Services is granted to you, whether by implication, or otherwise.

**3. RESTRICTIONS**

You acknowledge and agree that you will not: (a) reproduce or attempt to reproduce the Wickr Software; (b) modify, adapt, translate or create any derivative works of the Wickr Software or attempt to do the foregoing; (c) attempt to circumvent or disable the Wickr Software or any technology, features or measures in the Wickr Software by any means or in any manner; (d) attempt to decompile, disassemble, reverse engineer, or otherwise attempt to derive the source code for the Wickr Software; (e) distribute, encumber, sell, rent, lease, sublicense, or otherwise transfer, publish or disclose the Wickr Software to any third party; (f) use for a service bureau or otherwise commercialize or attempt to commercialize use of the Wickr Software; or (g) remove or alter any trademark, logo, copyright or other proprietary notices, legends, symbols or labels in or on the Wickr Software or used in connection with the Wickr Software.

**4. USER DATA**

The Wickr Services may allow the submission of content and materials by you (" User Data "), and the hosting, storing of such User Data. You shall be solely responsible for your own User Data and the consequences of storing or transmitting them. Wickr assumes no responsibility whatsoever in connection with or arising from User Data. Wickr does not endorse and has no control over the content of User Data submitted by other Users. Wickr reserves the right to prevent you from submitting User Data and to restrict or remove User Data for any reason at any time.

**5. PRIVACY POLICY; COPPA Compliance; GUIDELINES TO INDIVIDUAL FEATURES AND SERVICES**

Wickr's Privacy Policy is hereby incorporated into this Agreement by reference. Please read this Privacy Policy carefully for disclosures relating to the collection, use, and disclosure of your personal information. By using this service, you consent to Wickr's collection and use of User Data as described in the policy in place at the time when data is collected.

When using Wickr, you will be subject to any additional posted guidelines or rules applicable to certain features, which may be posted from time to time (the "Guidelines"), which are also hereby incorporated by reference into this Agreement.

**6. MODIFICATION OF THIS AGREEMENT**

Wickr may modify this Terms of Service from time to time. Any and all changes to this Agreement will be posted on the Wickr.com site, and you agree to be bound by any changes to the Terms of Service when you continue to use the Wickr Services after those changes are posted.

## 7. ACCOUNT INFORMATION

Wickr will not be liable for any damages or liability resulting from your account information. You agree not to sell or transfer or allow another person to access your account password or Wickr Services account.

## 8. USAGE RULES; PROHIBITED CONDUCT & USES

Wickr was founded upon the belief that private communications are a universal human right, and our Services are designed to enable secure end-to-end communication. While we don't have the technical capability to monitor Wickr Services accounts or our users' messages, we reserve the right to suspend or terminate accounts if we learn they violate the following terms.

YOU MAY NOT USE, OR FACILITATE, OR ALLOW OTHERS TO USE THE WICKR SERVICES:

- for any illegal or fraudulent activity;
- to violate the rights of others;
- to engage in the targeted harassment of others;
- to threaten, incite, promote, or actively encourage violence, terrorism, or other serious harm;
- for any content or activity that promotes child sexual exploitation or abuse;
- to send or disseminate other people's private and confidential information, such as credit card numbers or Social Security/National Identity numbers, without their express authorization and permission;
- in any manner that infringes patents, trademarks, trade secrets, copyrights, or any other proprietary or intellectual property rights;
- to distribute, publish, send, or facilitate the sending of unsolicited mass email or other messages, promotions, advertising, or solicitations (or "spam");
- to impersonate others in a manner that does or is intended to mislead, confuse, or deceive others;
- to remove, circumvent, disable, damage or otherwise interfere with security features of the Wickr Services, including any technical measures we may use to prevent or restrict unauthorized access to the Wickr Services, features that prevent or restrict use or copying of any content accessible through the Wickr Services, or features that enforce limitations on use of the Wickr Services;
- to intentionally interfere with or damage operation of the Wickr Services or any user's enjoyment of them, including by uploading or disseminating viruses, worms, or other malicious code;
- to violate the security, integrity, or availability of any user, network, computer or communications system, software application, or network or computing device;
- to use any robot, spider, scraper or other automated means to access the Wickr Services without our express written permission;
- to modify the Wickr Services in any manner or form; or

- to sell, transfer or allow another person to access your account password or Wickr Services account.

**9. THIRD-PARTY SITES, PRODUCTS AND SERVICES; LINKS**

The Wickr Services may include links to other web sites or services solely as a convenience to Users. Wickr does not endorse or make any representations regarding any such linked sites or the any information or materials accessible through other linked sites. Wickr disclaims all liability relating to your use of such linked sites.

**10. GOVERNMENT END USERS.**

If this Wickr Software is being acquired on behalf of the United States Government, then the following provision applies. Use, duplication, or disclosure of the Wickr Software by the U.S. Government is subject to restrictions set forth in this Agreement and as provided in DFARS 227.7202-1(a) and 227.7202-3(a) (1995), DFARS 252.227-7013(c)(1)(ii) (OCT 1988), FAR 12.212(a) (1995), FAR 52.227-19, or FAR 52.227-14 (ALT III), as applicable.

**11. EXPORT CONTROL.**

The Wickr Software originates in the United States, and is subject to United States export laws and regulations. The Wickr Software may not be exported or re-exported to certain countries or those persons or entities prohibited from receiving exports from the United States. In addition, the Wickr Software may be subject to the import and export laws of other countries. You agree to comply with all United States and foreign laws related to use of the Wickr Software and the Wickr Services.

**12. VIOLATIONS; TERMINATION**

You agree that Wickr may terminate or suspend your access to the Wickr Services without prior notice and without liability if such termination or suspension is based on (a) Wickr's good faith belief you have violated any of the terms and conditions of this Agreement, (b) Wickr's determination that you repeatedly infringe or have infringed the copyrights of others, (c) extended periods of inactivity with respect to any of the Wickr Services. These remedies are in addition to any other remedies Wickr may have at law or in equity. Wickr reserves the right to terminate Free Accounts and free access to Wickr Services at any time, with or without notice without any liability of any kind.

Wickr reserves the right to terminate any account considered as squatting on a username, or accounts that are deemed as spammers, or violate any laws of the U.S. Wickr may terminate or suspend its services at any time, and for any reason without any liability.

**13. CONSUMER RIGHTS**

You may have the benefit of consumer guarantees and warranties given under statute ("Mandatory Terms"). Where any statute applies to this Agreement to give you the benefit of Mandatory Terms, and that statute does not permit Wickr to exclude or limit the application of those Mandatory Terms (or would render void any attempt to do so), then those Mandatory Terms apply to this Agreement for your benefit, and nothing in this Agreement excludes or limits those Mandatory Terms or liability for breach of them. This applies to all of the terms of this Agreement, including any terms in relation to DISCLAIMERS: NO WARRANTIES, INDEMNIFICATION: HOLD HARMLESS, AND LIMITATION OF LIABILITY AND DAMAGES.

**14. DISCLAIMERS; NO WARRANTIES**

THE Wickr SERVICES AND ANY THIRD-PARTY SOFTWARE, SERVICES, OR APPLICATIONS MADE AVAILABLE IN CONNECTION WITH THE Wickr SERVICES ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, Wickr, AND ITS SUPPLIERS AND PARTNERS, DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON- INFRINGEMENT OF PROPRIETARY RIGHTS. Wickr AND ITS SUPPLIERS AND PARTNERS DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE Wickr SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, THAT DEFECTS WILL BE CORRECTED, THAT THE Wickr SERVICES OR THE SERVER THAT MAKES THEM AVAILABLE ARE FREE OF HARMFUL COMPONENTS OR THAT THE Wickr SERVICES WILL MEET YOUR REQUIREMENTS. YOU ARE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR EQUIPMENT OR DEVICE, LOSS OF USE, OR LOSS OF DATA.

**15. INDEMNIFICATION; HOLD HARMLESS**

You agree to indemnify, defend, and hold harmless Wickr, its affiliated companies, and its suppliers and partners from any and all claims, suits, actions, losses, costs, damages, and any other liabilities, including attorneys' fees, arising out of or related to (a) your use or misuse of the Wickr Services, (b) any violation of the rights of any other person or entity by you, or (c) any breach or violation by you of this Agreement. Wickr reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify us, and you agree to cooperate with our defense of these claims.

**16. LIMITATION OF LIABILITY AND DAMAGES**

TO THE EXTENT PERMITTED BY APPLICABLE LAW, Wickr OR ITS AFFILIATES, CONTRACTORS, EMPLOYEES, AGENTS, OR THIRD-PARTY PARTNERS OR SUPPLIERS WILL NOT BE LIABLE TO YOU FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, RELIANCE, CONSEQUENTIAL, OR EXEMPLARY DAMAGES RELATING TO YOUR USE OF THE Wickr SERVICES, EVEN IF Wickr HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**17. MISCELLANEOUS**

This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior or contemporaneous oral or written understandings. This Agreement may be amended only by a writing signed by both parties.

This Agreement will be governed by the laws of the State of Delaware, without regard to conflicts of law provisions, and you consent to the exclusive jurisdiction of the state and federal courts sitting in Wilmington, Delaware, U.S. This Agreement will not be governed by the United Nations Convention on Contracts for the International Sale of Goods. Either Wickr or you may demand that any dispute or claim between Wickr and you about or involving the Wickr Services must be settled by arbitration utilizing the dispute resolution procedures of the American Arbitration Association (" AAA ") in San Francisco, California, USA and, if so demanded by Wickr or you, both parties hereby acknowledge and agree to submit exclusively to the jurisdiction of the AAA in San Francisco, CA to resolve the applicable dispute or claim; provided that the foregoing shall not prevent Wickr from seeking injunctive relief in a court of competent jurisdiction. If any provision of this Agreement should be held invalid or unenforceable by a court of competent jurisdiction, such provision will be modified to the extent necessary to render it enforceable without losing its intent or severed from this Agreement if no such modification is possible, and other provisions of this Agreement will remain in full force and effect. A waiver by either party of any term or condition of this Agreement or any breach thereof, in any one instance, will not waive such term or condition or any subsequent breach thereof. This Agreement and related Guidelines, and any rights and licenses granted hereunder, may not be transferred or assigned by you, but may be assigned or transferred by Wickr without restriction. The provisions of this Agreement that require or contemplate performance after the termination of this Agreement and all provisions relating to limitation of liability, disclaimers, and indemnification will be enforceable notwithstanding such termination. Neither party will be in default or be liable for any delay, failure in performance, or interruption of service resulting directly or indirectly from any cause beyond its reasonable control. If any dispute arises under this Agreement, the prevailing party will be reimbursed by the other party for any and all legal fees and costs associated therewith.

**18. REPORTING ABUSE**

To report violations of these Terms, contact us via email at wickr-abuse@amazon.com.

## CERTIFICATE OF SERVICE

I, Jason Steuart Hihn, sui juris, proceeding pro se, certify that the foregoing is true and correct, and made with my firsthand knowledge pursuant to the penalty of perjury, pursuant to 28 U.S.C. §1746(1), that on the date affixed below, I did forward to the prison authorities for mailing,[1] my

Memorandum in Support of Petitioner's Claims: Ineffective assistance of Counsel & Due Process Violations

for forwarding to the Albert V. Bryan U.S. Courthouse 401 Courthouse Square, 2nd Floor, in Alexandria, VA 22314-5704. Said mailing was properly addressed and did contain the proper amount of pre-paid postage affixed thereto.

It appears that the parties to this action are registered with the CM/ECF Electronic Docketing System, therefore as I am proceeding Pro Se, I ask for service by that means also.

Respectfully submitted this 13 day of December, 2023.

9589 0710 5270 0476 7241 31
Certified Mail Receipt

By: [signature]

Jason Steuart Hihn, Pro Se
Fed. Reg. No. 52188-509
Federal Correctional Complex - LOW
P.O. Box 1031
Coleman, Florida 33521-1031

1 Under the Prison Mailbox Rule, a pro se petitioner's pro se filing is deemed filed when it is delivered to the prison authorities for forwarding to the Clerk of the Court. Huston v. Lack, 487 U.S. 266, 268 101 S. Ct. 2379, 101 L.Ed.2d 245 (1988).