FILED
MAILROOM
JAN 10 2024
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner, pro se
v.
United States
Respondent

Honorable Rossie D. Alston, Jr.

No. 1:21-CR-167

MEMORANDUM IN SUPPORT OF PETITIONER'S 28 USC §2255 CLAIMS:
ENTRAPMENT AND INEFFECTIVE ASSISTANCE OF COUNSEL
AND REQUEST FOR RELIEF

## I. Entrapment

### Introduction

This case is fundamentally an instance of entrapment. The defendant asked for an entrapment defense but his counsel materially misadvised him as to entrapment jurisprudence. It is only because of the ineffective assistance of counsel that petitioner plead guilty to the charge. This memorandum supports petitioner's claim 8.1 of his amended filing.

The petitioner mainly relies on Supreme Court precedent (cites to follow) but due to the striking similarity to a 9th Circuit Appeals court case he makes frequent use of United States v. Poehlman 217 F.3d 692; 2000 US App. LEXIS 14628 (9th Circuit, 2000). Although this is not yet cited as case law in the 4th Circuit, it is cited in the majority of circuits:

United States v. Saemisch 18 F.4th 50; 2021 US App. LEXIS 34121 (1st, 2021)
United States v. Russo 166 Fed Appx 654; 2006 US App. LEXIS 3731(3rd, 2006)
United States v. Unrein 688 Fed Appx 602; 2017 US App. LEXIS 7713(11th, 2017)
United States v. Hood 811 Fed Appx 291; 2020 US App. LEXIS 13283 (6th, 2020)
United States v. McGill 754 F.3d 452; 2014 US App. LEXIS 11804 (7th, 2014)
United States v. Myers 575 F,3d 801; 2014 US App. LEXIS 17722 (8th, 2014)
United States v. Poehlman 217 F.3d 692; 2000 US App. LEXIS 14628 (9th, 2000)
United States v. Okelberry 112 Fed Supp 2d 1246; 2000 US Dist LEXIS 14442 (10th, 2000)

Poehlman was found to be entrapment as a matter of law, overriding the jury's findings.

### Entrapment Jurisprudence

As described by counsel to the defendant the standard for entrapment is that "You have to show she overcame your will." and that the sexually explicit content of the chats can be used in assessing his predisposition to commit the crime. Neither one of those is true. "... a valid entrapment defense has two related elements: government inducement of a crime and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States 485 US 58, 99 L.Ed. 2d 54,108 S. Ct. 583.

On the matter of "overcoming [his] will", the Poehlman court observed: "Quite obviously, by the time a defendant actually commits the crime he will have become disposed to do so. However the relevant time frame for assessing a defendant's disposition comes **before** he has **any contact** with the government agent which is doubtless why it is called predisposition. See United States v. Jacobson 583 US 540, 118 L.Ed. 2d 174, 112, S.Ct. at 549." (emphasis added,) In the instant case the defendant was influenced when he saw the agent's contact information and interest list on the adults-only website Fetlife.com. Special Agent Danielle K. Schnur of the Federal Bureau of Investigation's Child Exploitation and Human Trafficking Task Force concedes in her "Affidavit in Support of a Criminal Complaint" footnote 1, page 2, "... the web forum is also used for legitimate, legal purposes." The first message recorded by the agent, sent by the defendant, was received April 24, 2021 3:00am. Therefore the time to assess predisposition is prior to that moment. That message and all subsequent message are after "any contact" and are eliminated from consideration by the Jacobson court for predisposition analysis.

Analysis of Inducement

"Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit the offense, including persuasion, fraudulent representations, threats, coersive tactics, harrassment, promises

of reward or pleas based on need, sympathy or friendship." United States v. Davis 36 F.3d 1424, 1430 (9th Circuit, 1994) The defendant argues that he was induced by government agents who used a variety of techniques to "beguile[] him into committing crimes which he would not have attempted." Sherman v. United States 356 US 369,376 2L.Ed. 2d 84878 S.Ct. 819 (1958) "The government induces a crime when it creates a special incentive for the defendant to commit the crime. This incentive can consist of anything that meterially alters the balance of risks and rewards bearing on the defendant's decision whether to commit the offense so as to inclrease the likelihood that he will engage in the particular criminal conduct." Poehlman. "To raise entrapment, a defendant need only point to evidence from which a rational jury could find that he was induced to commit the crime but was not otherwise predisposed to do so. See United States v. Stoufer 38 F.3d 1103, 1108 (9th Circuit, 1994)" Poehlman.

The statute of 18 USC §2422(b) provides in pertinent part:

> Whoever ... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so...

"To support conviction under the attempt portion of this statute, the government must show that the defendant attempted to (1) use a facility of interstate commerce, (2) to knowing persuade, induce, entice, or coerce (3) an individual under the age of 18 (4) to engage in illegal sexual activity." United States v. Berk 652 F.3d 132, 138 (1st Circuit, 2011) (Quoting United States v. Gravenhorst, 190 F.Appx 1,3 (1st Circuit, 2006) (per curiam) But see Berk 652 F.3d at 40-41 (noting that "explicit sexual talk alone does not constitute a substantial step towards a §2422(b) offense (citing United States v. Gladish 536 F.3d 646, 647 (7th Circuit, 2008)))

[Note: Because this is being produced on a typewriter I have adopted the following format for readability and because every letter typed consumes ribbon and every character corrected consumes correction ribbon. All dates are in 2021. All quotes follow the same format. The "S" column is the sender where A=Agent and D=Defendant. Blanks can be carried down from above, except for the time column which is assumed to be the same or later.]

| DATE | TIME | S | MESSAGE |
|---|---|---|---|
| 4/29 | 8:26p | A | "She wanted to know if your bringing her anything |
| | 8:34p | A | "She said if you are nice anf bring her a goft (gift emoji) |
| | | D | "But how does she explain it to her parents? |
| | 8:51p | A | "I buy her gifts all the time |
| | | A | "And if you want to bring a gift for me I wouldn't say no... |
| | 8:59p | A | "You can think about gifts for us tonight |
| | | D | "I already am |

Here we have the exact moment and words the agent used to "implant the criminal disposition so that agents may prosecute" just 5 days into their relationship. No gifts had beed discussed prior to 4/29 8:26pm, and it was the agent who dropped it into the conversation, out of the blue.

5/12 4:33p A "And she asked if you picked out her present (gift emoji)? Lol

5/19 9:30a A "Gift for Ali is super important (gift emoji)
A "What did you decide to get her?
D "I understand the gift is important

6/19 11:42a A "Did you pick out a gift for Ali yet?
D "I still haven't purchased the gift but I am whittling it down. If you have any additional things you can suggest that would be great. I am probably going to wait until we have firm plans to actually make a purchase though.
D "And didn't you want something too?
A "Yeah makes sense. Legit anything Elsa or princess themed she'd love. But especially Elsa (snowflake emoji)(snowman emoji) a girl can never have too many princess outpits lol

**Entrapment must be <u>scrupulously</u> avoided.** Entrapment occurs when the government implants in the mind of a person who is not otherwise disposed to commit the offense the disposition to commit the offense in order to prosecute. (The Attorney General's Guidelines on Federal Bureau of Investigation Undercover Operations, 2013, emphasis added.)

6/20 9:15p A "Will you have time to go shopping before then?

6/21 8:41p A "You buying her a gift is helpful (smile emoji)

"In their zeal to enforce the law, however, Government agents may not

originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act and then induce the commission of the crime so that the governement may prosecute." Jacobson v. United States 503 US 540, 548 118 L. Ed. 2d 174 112 S.Ct. 1535 (1992) "Jacobson, Sherman, Sorrells demonstrate that even **very subtle** governement pressure, skillfully applied can amount to inducement ... In Hollingsworth, the inducement was nothing more than giving the defendant the idea of committing the crime, coupled with the means to do it." Poehlman referencing United States v. Hollingsworth 27 F.2d 1196,1200 (7th Circuit, 1994) (en banc).(emphasis added)

On **six** different days the agent unsubtlely and unscrupulously implanted and reinforced what is the coercive element of the offense. As the day of arrest approached the defendant still had not purchased a gift so the agent provided pressure three days in a row, June 19, 20, and 21. The defendant was arrested June 24. This pressure is proximal to the arrest.

A second unsubtle and unscrupulous government pressure was supplied by the government on the first day:

4/24 1:16p A "Lol I know baby pussy is the sweetest

And was repeated 18 days later:

5/12 8:52p A "Baby is such a delicacy
"Yeah, it is the sweetest (peach emoji)
"When go you want to come have a taste?

It would still be 43 days until the arrest, so this was early in the operation. However in that time until arrest their relationship had progressed. In fact throughout the exchange it was blatantly apparent that the defendant was looking for companionship during COVID-19. COVID-19 vaccines had just started for medical workers after 13 months of lockdowns. The first indication was on the first day:

4/24 1:14p D "And I would love to do stuff with you too.
1:41p D "I'm pretty focused on finding a partner who shares my interests already with or breedable

4/29 8:49p D "Ok thanks love" (First use of a term of endearment)
"But I'm curious, why help me?
A "I think it will be hot to watch (wink emoji)

5/2 9:21p D "But maybe we can meet? I'm hoping we can just meet casually first?
D "Yeah well I'd like to meet you first if that's ok?
D "That way you can decide if you like me.
9:48p D "Sure. So you're open to meeting, just **you and me**" (emphasis added)
D "Maybe cofee or a drink (not a date)
A "Not a date! lol but yeah I think so then if your cool we can set up a play date

5/12 8:24p D "Anyway ... I'm surprised I'm the only one you're talking to
A "Well tbh I talk to some other people... I'm sure you do too
D "Not really. I'm pretty much a hermit these days. Lol
A "Lol nice perks of covid (smile emoji)
D "Yeah but I'd like a little more human contact

5/19 10:03a D "Well maybe we can meet up for cofee or something?
A "Not a date coffee. Lol

6/6 10:34p D "Ok. Good chat today! Maybe we can meet sometime?
A "Yeah good chat (smile emoji) and yeah isn't that the point of chatting?? Lol
D "I mean you and me. I just want to meet you first before I meet the girls
A "For sure. Gotta make sure you're not actually some 80 year old nasty guy
D "You sound awesome at least
A "Lol you do too
A "You said something before about meeting for coffee? We can meet at a coffee shop near me this week if you want
D "Yes I would like that. What town is close to you?
D "Ok. Have fun. Goodnight. I really enjoy chatting with you.
A "You too! Talk to you tomorrow!
D " **Even when it's not about the girls**" (emphasis added)

6/20 9:25p D "I'm not having sex with anyone right away

6/21 8:43p D "I was going to suggest that we get a drink tonight but it is too late now
A "Yeah def too late tonight Youwant to meet before Thursday?
D "Yes!
D "Just you and me. Make sure you're not a dude with a bat lol

6/22 9:36p D "I was thinking about you today
"You're such a great aunt.
"It's rare to find someone who is both kinky and quality.
"Like a real, caring person
A "Awww thanks (smile emoji)

6/22 (cont'd) D "I genuinely would like to talk to you as just like a normal
person. You sound like you have a great personality
A "We're lucky we found each other! (smile emoji)

6/23 9:31p D "Hey, how far are you from ramparts?" (Ramparts is a restaurant)

6/24 7:05p D "I really appreciate that. So do you mind coming to my car? So
we can chat for a second?
A "Are you here?
D "I just pulled up on [redacted]
A "Oh cool... I'll walk to the front of the building to meet you?
I've got the baby monitor so I can't go far.

The defendant was arrested while walkingdown the sidewalk in public, not yet arrived at the address. Clearly the defendant was pursuing a relationship with the adult woman. The agent capitalized on this to get her arrest. She did not scrupulously avoid this entrapment. "An impreoper 'inducement' ... goes beyond providing an ordinary 'opportunity to commit a crime.' An 'inducement' consists of an 'opportunity' plus something else - typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." United States v. Gendron, 18 F.3d 955, 961 (1st Circuit, 1994)(quoting Jacobson, 503 US at 550) According to expert witness Dr. Fred Berlin, "The combination of lonliness aggrevated by COVID-19 isolation, a pre-existing fascination with atypical sexual lifestyles, ... and the posted advertisement by the undercover investigator had created a "perfect storm" of circumstances that had affected the patient." "No child has ever accused him of sexual misconduct." (Sealed Berlin Report) As with Poehlman the government entrapped a lonely man, and was assisted by an international pandemic and 13 months of lockdowns. In this way the government exploited the defendant's needs while in a weakened state, just as it did in "Sherman, where the government played upon the defendant's weakness as a drug user." Poehlman.

There are however subtler elements of entrapment in the dialog. The agent would warmly greet the defendant as a caring friend. They talked about subjects other than the illicit, for example, she empathized with the defendant about his car being robbed just the next day after initial contact:

4/25 7:55p D "We have people who pilfer vehicles at night
A "Oh no that sucks!! Did your car get broken into??
D "I left it unlocked
D "I don't leave anything in my car usually...
A "Damn that sucks... what'd they steal??
D "Nothing much, claritin and my lock picks
A "Oh good glad it wasn't anything super expensive
D "I used to have a convertible so I got in the habit of not leaving anything in the car
D "I'm more upset about the mess they left
D "They went through everything
A "Convertible ... fancy! But that sucks. What assholes!

That conversation goes on to cover discussion of other non-illicit topics:

4/25 8:22p A "What do you do for work? For fun?
A "That sounds fancy. And awww what kind of dog??
9:30p A "Your turn what do you look like??
A "Very handsome. I'll tell Ali

The photo defendant provided was used to match against Maryland driver's licenses and successfully identified him. Pulling his records would shaw that he has no criminal history and there had never been a complaint about his character. This indicates no criminal predisposition. Yet she continued the entrapment anyway. Continuing:

5/2 6:09p A "Hey how has your weekend been?

5/9 8:18p A "I had some fun last week (wink emoji) how was your week??

5/11 1:34p A "Did you end up getting your shot?? How are you feeling??" (COVID Vaccine reference)

5/12 5:31p A "Only with the right guy!! (wink emoji)

5/16 2:36p A "Your turn send me a picture of you??
D "I did last week you said I was a handsome man
A "And yes very handsome (smile emoji)
A "What's with the money sloth background?? (cry laugh emoji)" (This is referencing the photo defendant sent of himself which contained a shower curtain with a sloth on a stripper pole)
A "Or whatever it was it's gone now" (Referencing that Wickr messenger app deletes messages on a sender expiration timer)
D "That's my shower curtain. My spirit animal is a sloth

5/16 (cont'd) D "It's a stripper sloth hanging on a stripper pole
A "A stripper sloth omg that's hilarious (cry laugh emoji)

5/27 7:14a D "(heart emoji)
D "How is she handling the cicadas?
A "Luckily we haven't seen too many!! I think I'm more afraid of them than she is lol (ant emoji)
A "Did they invade Maryland yet?
10:01a A "This rain is really messing with my plans!!
D "The pollen has been messing with me too
A "Was supposed to hang out at my friend's pool but like it is 50 and rainy (cry emoji)
A "Yeah that sucks. Rain should help with that

6/2 11:01a A "Did you have a slothy weekend? (cry laugh emoji)" (This is a call-back to 5/16's sloth discussion - 17 days earlier)

6/6 10:43p D "Ok Good chat today! Maybe we can meet sometime?
A "Yeah good chat (smile emoji) and yeah isn't that the point of us chatting?? Lol
D "You sound awesome at least

6/19 10:41a A "Happy Saturday! Been workinga ton this week ugh... How've you been??
D "Ok yeah I was starting to wonder if you were ok...

As the conversation goes along we can see the number of non-illicit topics increase and it takes on a character of friendship. What reason does an agent have to ask about a sloth shower curtain and reference it over two weeks later unless she was capitalizing on his need for this friendship? This would not have been possible if she was a male agent, or if the defendant was homosexual. She used her femininity to take advantage of a straight, lonely man. The agent's attempts at eliminating herself from the equation were insufficient and actually worked to her advantage. While she expressed that she was no longer into men, she claimed to have been at one point. This turned her intoa goal: to win this woman's affections.

5/12 8:46p D "Was your ex a man or a woman?
A "A guy... I was young and dumb and didn't really know what I was into

And the fact that she was not into men turned into a running joke:

5/19 10:03a D "Well maybe we can meet up for coffee or something?
A "A not-date coffee? Lol

This is infact a seduction technique of a Coquette. The Art of Seduction (ISBN 978-186197-769-4, 2001, hereafter "Art") covers coquettes on pages 67-78. "Coquettes are grandmasters of the game, orchestrating a back-and-forth movement between hope and frustration" Art, p.67 "Coquettes create space by remaining elusive and making others pursue them." Art, p.73 "A man is also challenged by the female coquette's independence - he wants to be the one to make her dependent, to burst her bubble. It is far more likely though, that he will end up becoming her slave, trying her incessant attention to gain her love, and failing." Art, p. 74-5 "The alteration of heat and cold is the most common pattern, and has several variations." Art, p. 76 "In the first, more traditional form, the coquettish woman stirs male desire, is completely in control, then at the last minute, after bringing her victim to a boil, steps back and lets him make the bold move." Art, p. 412. That is exactly what happened here. She was warm and friendly while keeping him at a distance.

Another aspect is that she made fantasy insufficient:

6/6 9:04p D "Yeah I'm just playing out a fantasy
A "Wait is this all fantasy for you??
D "What do you mean?
A "Like coming to naughty playtime with the girls??

The manipulation in this exchange is actually subtle but it informed the defendant that the continued attention depended on this not being fantasy. The "Wait" and the <u>three</u> question marks signaled an all-stop which the defendant picked up on. If he had insisted that this was only fantasy he was worried that she would have existed the conversation and the relationship. Now we can properly interpret the "bold move" needed to win the coquette. "The government thus played on Poehlman's obvious need for an adult relationship in order to draw him deeper into a sexual fantasy world including these imaginary girls." Poehlman.

"While parental consent is not a defense for statutory rape, it nevertheless can have an effect on the 'self-struggle [to] resist ordinary temptations.' Sherman 356 US at 384 (Frankfurter, J. concurring) this is particularly so where the parent does not merely consent but casts the activity of parental responsibility, and the selection of a sexualmentor was an expression of friendship and confidence, Not only did this diminish the risk of detection, it also allayed the fears defendant might have had that the activities would be harmful, distasteful or inappropriate." Poehlman. While the situation is changed slightly, an aunt instead of a parent, this long-running familial relationship the aunt and niece had, with her setting limits, admitting she would enjoy watching, and insisting on condoms and providing management of the situation has the same effect in this case.

Analysis of Predisposition

Under Jacobson, "the relevant timeframe for assessing the defendant's disposition comes **before** he has **any contact** with the government agent which is doubltless why it is called predisposition." Poehlman (emphasis added). However the timeframe after contact can illucidate predisposition if there is reluctance on the part of the defendant. After the agent implanted the idea of a gift, the defendant responded:

4/29 8:34p D "But how does she explain it to her parents?
A "I buy her gifts all the time...

And by her responding in that way she "materially altered the balance between risks and rewards bearing on the defendant's decision where to commit the offense, so that he will engage in the particular criminal conduct." Poehlman

Throughout the conversation the defendant continually asked to meet in public and without the kids present. This demonstrates reluctance on his part and that the government was "taking advantage of an alternative, non-criminal type of motive." Gendron, supra. The non-criminal motive is further evidenced

by the fact that after searching defendant and his vehicle, no condoms or other sexual paraphernalia were found. She told him to bring condoms. He did not.

4/24 1:42p A "I'd either want a recent test or condoms. I can't have a 9 year old and a baby with chlamydia!!!

4/25 9:17p A "Ok that sounds good... bring condoms if you want to try more

6/6 9:50p A "I'd want you to bring condoms for that...

6/25 7:51a A "If you want to try that I'm ok with it but bring condoms

Another episode of reluctance:

5/19 9:40p D "If I can be honest, sometimes I worry what it'll do to me
A "What do you mean?
D "Like what if it as as good as everyone says it is and I need it

Four days prior to his arrest he had backed off:

6/20 9:25p D "I'm not having sex with anyone right away
"Honestly I just want to hang out and see where it goes. I'm open to something between nothing and anything

Clearly the defendant has doubts and is engaged in a "self-struggle." No reasonable juror could be more confident than the defendant himself who has reasonable doubts. Thus he is clearly not predisposed to this conduct. We can only conclude that it was the agent's manipulation that got him to this point. (e.g. see chat on 5/12 8:52pm) Also stated in the sealed Berlin Report "No child has ever accused him of sexual misconduct." And as previously stated he had no criminal history.

Entrapment by a Non-Criminal Motive

"An inducement consists of 'opportunity' plus something else ... the government's taking advantage of an alternative non-criminal type of motive." Gendron, supra. In this case the agent had artifical human analogs (aka "dolls") that she was posing for photographs. The agent admits in her affidavit on page 5, footnote 6 "The image did not depict real children." The deception was discovered because the dolls bear no resemblance to the agent. The dolls are of light complexion where the agent is dark, so dark that he asked is she was "black". She insisted

that she was "mediteranean". The chat app allows the recipient to save a file sent, if they are quick enough to save it before the message disappears from the sender-controlled expiration timer. The defendant was fast enough to save most of the images sent to him, this gave him ample time to review the images outside of the chat app. There was not enough similarity for these to be her sister's kids. One photo in particular, had the dolls posed awkwardly by being leaned against a chair while kneeling on the floor, which gave the ruse away. Those images created the belief that these were dolls and therefore not "any individual who has not attained the age of 18 years" where "individual" is defined in 1 USC §8, an element of the offense. (These photos are esculpatory and impeaching and were not provided to the defense.) The government sent pictures of dolls but charged him with enticement of a minor thereby "taking advantage of an alternative non-criminal type of motive." Gendron, supra.

Entrapment by Another Non-Criminal Motive

Another "taking advantage of an alternative non-criminal motive" by the government is that the defendant, in the advent of them not being dolls, was going to report the aunt to the authorities. While this was never alluded to in the chats ther is some evidence to support this motive . The numerous requests to meet in public were attempts to get photographs and potentially her license plate from her car. Even on the day of arrest, he requested she come to his car (6/24 7:05pm.) was a ploy to get her to expose herself. The defendant had a "dash cam" (a dashboard mounted video camera) installed in his car. This was inventoried, though it may have been described as a "Go Pro" by his counsel. This camera would have recorded her approach to the vehicle. At that point he had an address for her building. (His attempts to save her picture was unsuccessful due to the short expiration she sent with them.) When she threw a complication in citing her "baby monitor" defendant left the vehicle, carrying only his key

wallet and camera phone, so that he could get her image and return to the car for the present and drive off if she refuted the doll theory. But the defendant was arrested before he ever saw her outside the building.

Entrapment is a Constitutional Violation

"[I]t cannot be supposed that Congress intended that the letter of its enactment should be used to support such a gross perversion of its purpose." Sorrells v. United States 77 L.Ed. 413 287 US 435-459 (1932).

> It is not their duty to incite and to create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their chief endeavor was to cause, to create crime in order to punish it, and it is unconscionable, contrary to public policy, **and to the established law of the land** to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it. Sorrells quoting Butts v. United States (C.C.A 8th) 18 A.L.R. 143, 273 Fed, 38. (Emphasis added)

Another Constitutional violation of this particular entrapment scenario is an entrapment which utilizes the implatation of a criminal motive is a violation of the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States 535 US 27, 150 L.Ed. 2d 94, 121 S.Ct. 2035 (2001). Therefore when the agent posted her ad on the adults-only forum Fetlife.com which claims to be "The world's most popular social network for the BDSM, fetish and kink community", where the agent admits the "web forum is used for legitimate, legal purposes" where the defendant was exercising his First Amendment right of freedom of association, his Fourth Amendment right was violated by her implanting the criminal motive. She violated his expectation of privacy to be free from

governmental manipulation to support her entrapment agenda.

4/29 8:26p A "She wanted to know if your bringing her anything

"[A] violation of the [Fourth] Amdendment is fully accomplished at the time of an unreasonable governmental intrusion." United States v. Verdugo-Urquidez 494 US 259, 264, 110 S.Ct. 1056, 108 L.Ed. 2d 222 (1990) (internal quotation marks omitted). Pursuant to Supreme Court jurisprudence this case ended 4/29/2021 at 8:26pm, if not before. As explained in petitioner's previous memorandum on Due Process Violations the agent violated his Fourth Amendment right when she used the Wickr app in violation of it Terms of Service (herafter TOS) when she circumvented the privacy protection features of the software by aiming an external camera at her device and recording the conversation, thereby creating a TOS violation and a Fourth Amendment violation, with the effect that the TOS violation left her without a license to use the software. (Other TOS violations not withstanding.) The Constitution is clear, the government does not get to conduct warrantless morality testing, especially when it is putting its thumb on the scale, as it has done in this case.

II. Ineffective Assistance of Counsel

Petitioner, a pro se layman, has shown that the "evidence strongly tends to prove, it it does not conclusively do so, that their chief endeavor was to cause, to create crime in order to punish it." Sorrells, supra. Why counsel was not able to show this himself pretrial is probative of his ineffectiveness of his counsel. His failure to know entrapment jurisprudence is substantive malpractice of law. Petitioner asked for a copy of the chats to review while in the detention center but counsel advised against having them citing vigilanteism if the content of the chats was to become known to other inmates. Counsel was therefore entrusted to perform the entrapment analysis, which he did incomp-

etently, a violation of Disciplinary Rule 6-101 (A)(3) of the American Bar Association's Model Code of Professional Responsibility and Code of Judicial Conduct (ISBN 0-89707-276-6, 1986). "A lawyer shall not (3) neglect a legal matter entrusted to him."

It is also important to note that the Berlin Report was not available at the plea deadline, Although it is dated December 4, that was the date of the interview and not the date it was delivered to the defendant. These results were only presented after pleading, but before sentencing. Counsel failed to timely schedule the psychological evaluation, and was so forced to plea without the results which are of meterial consequence. In this way counsel violated DR 6-101 again by failing to obtain the results prior to th plea deadline.

It is for all of the above that petitioner is entitled to a finding of ineffective assistance of counsel. (Other claims not withstanding.)

III. Conclusion

This case started with the agent selecting the Wickr app then posting her list of interests on a legal adults-only website which she know is used for "legitimate, legal purposes." She then went on to violate the TOS of the Wickr app by circumventing its privacy-protecting features of the software in several ways, but namely by recording the chats with an enternal camera when the software prevents screen recording on the device itself. This created a TOS violation where she lost the permission to use the software in the first place. She also used the software not for "personal or internal business" as required by the TOS. She then went on to record her entrapping the defendant. She recorded the initial implant: 4/29 8:26pm "She wanted to know if your bringing her anything" and subsequent reinforcement of the implant on 5/12, 5/19, 6/19, 6/20, and 6/21. She recorded her goading 5/12 8:52pm "Baby is such a delicacy", "It's the sweetest (peach emoji)". She recorded her befriending him 6/2 11:01am "Did you have

a slothy weekend? (cry laugh emoji)". She sent him pictures of dolls, which she admits "did not depict real children." She evidently feels that she is doing her job properly, scrupulously, as evidenced by the defendant's arrest. She spent two months luring an isolated, lonely man into her trap. She saved no children, yet wrecked a man's life for her own agenda.

The prosecutor in prosecuting this case evidently feels that she and he are doing justice since his "interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States 295 US 78, 55 S.Ct. 629, 79 _ Ed 1314 (1935). Clearly though, the actions taken by the government in this case prove that "the chief endeavor was to cause, to create crime in order to punish it." Sorrells, supra.

Counsel for his part, let the government get away with it. He took no adversarial measure, he failed to conduct an entrapment review, failed to get the psychological results prior to pleading (material to predisposition) and other esculpatory and impeaching evidence for the defendant prior to the plea deadline.

The term "complete miscarriage of justice" should not be used lightly, but applies here. What has taken place should shock the conscience of the court.

Prayer for Relief

The petitioner prays the court find for the petitioner and vacates his convictions and speeds his return home, or any other reflief the court finds is appropriate.

Supporting Papers

This filing is supported by petitioner's §2255 filing as amended through claim 8.1 and his Memorandum of Due Process Violations and Ineffective Assistance of Counsel.

Respectfully submitted this 31 day of December, 2023.

Jason Steuart Hihn, pro se
#52188-509
Coleman FCI LOW
POBox 1031
Coleman, FL 33521-1031

**CERTIFICATE OF SERVICE**

I, Jason Steuart Hihn, sui juris, proceeding pro se, certify that the foregoing is true and correct, and made with my firsthand knowledge pursuant to the penalty of perjury, pursuant to 28 U.S.C. §1746(1), that on the date affixed below, I did forward to the prison authorities for mailing,[1] my

Memorandum in Support of Petitioner's 2255 Claims: Entrapment and Ineff. Asst. of Counsel

for forwarding to the Albert V. Bryan U.S. Courthouse 401 Courthouse Square, 2nd Floor, in Alexandria, VA 22314-5704. Said mailing was properly addressed and did contain the proper amount of pre-paid postage affixed thereto.

It appears that the parties to this action are registered with the CM/ECF Electronic Docketing System, therefore as I am proceeding Pro Se, I ask for service by that means also.

Respectfully submitted this 31 day of December, 2023.

9589 0710 5270 0130 2355 22
Certified Mail Receipt

By: [signature]
Jason Steuart Hihn, Pro Se
Fed. Reg. No. 52188-509
Federal Correctional Complex - LOW
P.O. Box 1031
Coleman, Florida 33521-1031

1 Under the Prison Mailbox Rule, a pro se petitioner's pro se filing is deemed filed when it is delivered to the prison authorities for forwarding to the Clerk of the Court. Huston v. Lack, 487 U.S. 266, 268 101 S. Ct. 2379, 101 L.Ed.2d 245 (1988).