UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **Plaintiff,** | : | Criminal Action No. 1:21-cr-00167-RDA-1 |
| **v.** | : | |
| **JASON STEUART HIHN,** | : | April 8, 2022 9:38 a.m. |
| **Defendant.** | : | |
| ............................. | : | |

**TRANSCRIPT OF SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE LIAM O'GRADY,**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:

**Seth Schlessinger, Assistant U.S. Attorney**
UNITED STATES ATTORNEY'S OFFICE
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: Seth.schlessinger@usdoj.gov

**Whitney Kramer, Assistant U.S. Attorney**
UNITED STATES ATTORNEY'S OFFICE
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: Whitney.kramer2@usdoj.gov

APPEARANCES: (Cont.)

For the Defendant:

**Pleasant Sanford Brodnax, III, Esq.**
LAW OFFICE OF PLEASANT S. BRODNAX, III
1701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
202-462-1100
Fax: 202-204-5165
Email: Pleasant.brodnax@gmail.com

Court Reporter:

**Scott L. Wallace, RDR, RMR, CRR**
Official Court Reporter
United States District Court
401 Courthouse Square
Alexandria, VA 22314-5798
Cell: 443-584-6558
Email: Scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**MORNING SESSION, APRIL 8, 2022**

(9:38 a.m.)

THE COURTROOM CLERK: *United States of America versus Jason Steuart Hihn*, Case Number 1:21-cr-167.

May I have appearances, please, first for the government.

MR. SCHLESSINGER: Good morning, Your Honor. Seth Schlessinger and Whitney Kramer for the United States.

MR. BRODNAX: Good morning, Your Honor. Pleasant Brodnax on behalf of Mr. Hihn.

THE COURT: All right. Good morning, Mr. Brodnax.

(Thereupon, the defendant entered the courtroom.)

THE COURT: All right. Good morning, Mr. Hihn. This comes on for sentencing. Are the parties ready to proceed?

MR. SCHLESSINGER: Yes, Your Honor.

THE COURT: Mr. Brodnax?

MR. BRODNAX: We are, Your Honor. Thank you.

THE COURT: All right. Any objections to the presentence report or the guideline calculation by the government?

MR. SCHLESSINGER: Not by the government.

THE COURT: Mr. Brodnax?

MR. BRODNAX: No objection.

THE COURT: Mr. Hihn, have you gone over the presentence report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any objections to the contents of the report

or any additions you want to make at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: Have a seat, then. Thank you. I'll file the report without amendment. Count 1 has an adjusted offense level of 38; Count 2 of 29, a merge; and then, with full acceptance of responsibility, the guideline range is a 35, and Mr. Hihn is a Criminal History Category 1 resulting in a guideline range of 168 to 210 months and five years to life on supervised release, and I'll order the report filed without amendment.

I've read the parties' submissions and the letters on Mr. Hihn's behalf and also the psychiatric report.

And do you have any witnesses that you're going to call this morning, Mr. Brodnax?

MR. BRODNAX: Your Honor, I do not have any witnesses, but I would like to acknowledge the presence in the courtroom of Mr. Hihn's father, mother, sister, brother-in-law, and very close childhood friends.

THE COURT: All right. Good morning to each of you, and thank you for coming to support Mr. Hihn this morning.

I'm sure I've read letters from almost all of you, and thank you for those letters.

All right, then, I'll hear argument from the government on the appropriate sentence.

MR. SCHLESSINGER: Thank you, Your Honor. As the Court's aware from the government's written position paper previously

filed, the government is seeking -- is recommending a sentence within the guidelines the Court has now adopted as 168 to 210 months.

And the reasons, in support of that sentence, the government respectfully submits that, of course, you should first consider the nature and circumstances of the offense. And the core of that offense, as it pertains to Mr. Hihn, was really his desire to engage in direct physical sexual abuse of what he fully believed were to be two children.

I believe the Court's aware of the communications that are excerpted in the Statement of Facts that were submitted in support of Mr. Hihn's guilty plea are really only a small portion of the communications that Mr. Hihn engaged in to that effect.

I think the final pdf document that catalogs the written communications between Mr. Hihn and the undercover law enforcement officer to that effect spans several hundred pages, and so there's very, very lengthy, very, very detailed and specific discussions of what Mr. Hihn's intentions are with respect to the abuse of these two victims, not to mention the subsequent telephone call spanning over 45 minutes which contained a lot of similar content.

While it is true that in reality the victims that Mr. Hihn sought to sexually molest were fictitious, Mr. Hihn obviously did not know that, and the government submits that's really neither here nor there when it comes to Mr. Hihn's culpability because,

in Mr. Hihn's mind, at all times when engaging in these conversations when subsequently traveling from his home to this district to make those discussions a reality, he fully believed at all times that they were real, and he fully intended that these events would actually happen.

I think Mr. Hihn's seriousness of purpose in engaging in those communications is demonstrated by, among other things, his travel from Maryland to Virginia, which was inconsistent really with any other purpose than to make these things actually occur; also by his purchase of several gifts which were to be given to what Mr. Hihn understood to be the older minor who was nine years old, as Mr. Hihn understood. So it's evident that Mr. Hihn had every intention of making this actually occur, of actually accomplishing these ends.

And it's an extraordinarily serious offense. I know that defense counsel has noted -- and not inappropriately -- that Mr. Hihn has no prior criminal history, but that's reflected in the sentencing guideline range because Mr. Hihn is appropriately assigned a Criminal History Category 1.

Defense counsel has also noted perfectly appropriately that Mr. Hihn accepted responsibility for his offense but that's also reflected in Mr. Hihn's guidelines because he's received a three-level reduction for acceptance of responsibility.

There is something very significant about the case that is not reflected in the sentencing guideline range as calculated and

that is Mr. Hihn's separate quite serious offense of possession of child pornography.

The reason that doesn't factor into the ultimate final guideline sentence is because, as it's calculated, the offense level for that particular offense is nine levels below the offense level for the attempted enticement offense, and, because it's nine levels below, under the rules set forth in the guidelines, it doesn't result in any additional levels being added to the attempted enticement offense, the government makes no claim that that's inaccurate. It is an accurate application of the guidelines, but it does mean that the resulting guideline range applicable to Mr. Hihn does -- really does not reflect in any way this sort of quite serious and completely separate offense of which Mr. Hihn has been convicted.

Even notwithstanding that, the government's not recommending any upward departure or variance, but the government does submit that that is an additional reason not to vary downward from the guidelines in this case.

I'd like to just briefly respond to a couple of portions of the defendant's sentencing memorandum, if I might, Your Honor. One is -- again, I note that a significant portion of the defendant's sentencing paper is dedicated to making certain arguments against the persuasiveness of the child pornography guideline Section 2G2.2, and I just want to sort of note for the Court that in a practical sense that's really neither here nor

there because, as I've just noted, that's not the guideline that is driving Mr. Hihn's offense level. So any -- and we might take issue with some of the -- we certainly would take issue with some of the arguments that were made by Mr. Brodnax in that portion of his sentencing memorandum. But, in any event, it's really just sort of irrelevant because ultimately it's 2G1.3 under the attempted enticement guideline that's driving the range; it's not Section 2G2.2.

I also note that Mr. Brodnax submitted on behalf of Mr. Hihn sort of a data analysis, analysis of sentences that were imposed or a certain subset of sentences that were imposed pursuant to guidelines that were in some way similar to Mr. Hihn. At the outset, I'd like to sort of emphasize that really the value of such a comparison is really extremely limited to begin with, particularly in light of the inescapably individualized -- in the words of a recent 4th Circuit decision -- inescapably individualized sentencing nature of sentencing.

Really, the value of sort of this average or percentages contained in this data set from this aggregated set of cases really, I suggest, can't tell the Court very much about what an appropriate sentence would be in Mr. Hihn's case. That's particularly true in this case because that data set that the comparison is being made from compares other -- all cases -- not all cases, but all of the cases in that data set were cases in which the guideline was calculated pursuant to 2G1.3 of the

guidelines, and I note that there's an extraordinarily broad nature, range of criminal conduct that references to Section 2G1.3. It would include, of course, conduct like Mr. Hihn's been engaged in, but also would include importation of minor -- of aliens -- not a minor -- importation of aliens for what the statute describes as an immoral purpose, Title 8, United Code Section 1328. That also references to Section 2G1.3.

Transmission of information regarding a minor, like private identifying information with the intent to commit a sexual act with that minor, in violation of Section 2425 of Title 18, that also references a 2G1.3. Various sex trafficking offenses and Mann Act offenses also cross-reference to that section.

So, my point is, you know, looking at a data set that just includes offenses that are referencing 2G1.3 really doesn't tell the Court very much about what an appropriate sentence is because we don't know if any or to what extent the cases in that data set really involve defendants that actually are similarly situated to Mr. Hihn.

Having said that, even accepting that sort of methodology, I note that the report itself indicates that out of 81 cases identified as being similarly situated to Mr. Hihn, which is to say cases in which 2G1.3 was the guideline, there was an offense level of 35; criminal history category of 1; there was a plea of guilty rather than proceeding to trial, and there was no 5K1.1

motion filed, only 27 out of those 81 -- in only 27 out of those 81, that is to say exactly a third, was the defendant sentenced to the mandatory minimum 120 months imprisonment, which is what I believe Mr. Brodnax is recommending in this case, only in a third.

So, to the extent that, even in this nationwide data set, to the extent that can be credited by the Court at all, the fact that two-thirds of the defendants had been sentenced at least above the mandatory minimum sentence, even if not within the guideline range, I think suggests that the need to avoid nationwide sentencing disparities compels certainly a sentence above the mandatory minimum, even if not within the sentencing guideline range.

So, for all those reasons, Your Honor, the government respectfully recommends that the Court impose a sentence within the guidelines. And, unless the Court has any questions, I have nothing further.

THE COURT: Thank you, Mr. Schlessinger.

All right. Mr. Brodnax.

MR. BRODNAX: Yes, Your Honor. Thank you.

Your Honor, I guess, first responding go Mr. Schlessinger, how he walked through the guidelines and indicated how, you know, when you plead guilty you -- it points off and how that is an appropriate application of the guidelines, so it's another example -- and he gave -- it doesn't come to mind right now, but

then he tells the Court the guidelines are not reflective of the proper sentence because the child pornography offense somehow is not reflected in the guidelines. I don't understand that argument, because the guidelines do account for the child pornography offense, in addition to the enticement offense. He said as much. So the guidelines as they are currently calculated definitely take into account both offenses, Your Honor.

The Sentencing Commission in their report, in this most recent report that I cited to the Court, June 2021, talks about not just the nonproduction offenses such as possession of child porn or receipt of child porn, but also draws the comparison that the special offense characteristics apply to both types of cases. So the -- you know, the number of images, the nature of the images, all of those apply to enticement cases, and nonproduction cases alike. So, this report -- and it says as much -- it refers to enticement cases as well. It's the same analysis, and that's what we've tried to show the Court in our sentencing memorandum.

Judge, "All people and children have souls and memories. I don't want to be anyone's monster." Those are the comments of Mr. Hihn to Dr. Berlin, and I know we've provided the Court with the report. There were two videos on his phone totaling about 90 seconds. Those two videos account for 150 images of the 300 in the special offense characteristics.

There were 40 photographs which account for 148 images. What the Sentencing Commission has said, Your Honor, and I think

the country received an education on pornography and how courts around the country are departing during the confirmation sessions of then Judge now Justice Ketanji Brown Jackson. She served on the Sentencing Commission. She received a lot of questions about why courts are departing. The report makes clear, as did her testimony, judges believe, judges know that Congress has not accepted the recommendations of the Sentencing Commission to take the special offense characteristics and aggregate them in a way where not everybody receives all of these characteristics.

THE COURT: Well, what happened is the Sentencing Commission has created these additional levels that are completely inconsistent with common sense in our world today, you know, the use of the computer, the number of images, given the way pornography is exchanged these days, and the number of images is -- it's not irrelevant, but it's far less relevant than it used to be. The enhancement for the use of a computer, that makes no sense at all.

It's the Sentencing Guidelines Commission that's created this mess, and Congress attempted to modify the sentences that were being given out by having not only possession but receipt with a five-year minimum mandatory and distribution with a ten-year minimum mandatory, and that's their way of dealing with everything, is to create minimum mandatories to bar the Court from looking individually at defendants and crimes, but the attempted enticement here drives my concern, and the possession

or the receipt of the child pornography is not as concerning to me -- it's concerning, certainly, but it's in a separate arena from his -- Mr. Hihn's acts with regard to what he thought was this infant and nine-year-old girl.

And what's disturbing to me in reading the report by Dr. Berlin and Mr. Hihn's own statement is that he still holds out this belief that he really wasn't going to or might not have gone through with this act if he had been permitted to. And that doesn't -- that doesn't jive with the facts of the case and the fact that he bought the gifts in anticipation of this meeting, and so that concerns me.

Dr. Berlin just doesn't really take that on or consider it. He also doesn't seriously consider whether or not Mr. Hihn did have prior events with a minor. He says that was just, in his mind, that was just all talk and part of the fantasy that he participated in with what turned out to be this undercover agent. So, tell me where I should be looking there and why, perhaps, I shouldn't have the level of concern that I do.

MR. BRODNAX: Sure. Yes, Your Honor, and thank you for distilling my argument with respect to the Sentencing Guidelines. I appreciate that. Thank you, Your Honor.

Your Honor, Dr. Berlin -- I think one of the statements is, "Whether in the bright light of day the patient would have been able to allow himself to engage in those actions may never be known with certainty." He feels strongly that he never would

have been allowed -- he never would have harmed a child.

In the chart that I provided Your Honor, and that goes to the 3553 factors, particularly (a)(6) that the government did not address, to make sure that we maintain sentencing parity.

Some of these facts -- I mean, all of these facts in all of these cases are bad. Some are horrendous. This case does not fall in those facts. There are facts where people brought condoms, lubricant -- all these are enticement cases -- and these people ended up with the mandatory minimum. Nothing like that was recovered from Mr. Hihn when he was seized. There was no -- there was a gift, but none of these other items that would have been used in that activity.

So, the absence of those items could be -- it could be inferred from the absence of those items that at least at that point in time nothing like that was going to happen.

And when we look at the *Schimmel* case, the *Chapman* case -- those are just two cases that Your Honor has had -- but there have been cases in this courthouse that have much worse facts than those where there's actual sexual conduct and contact with the minor where they received the mandatory minimum sentence.

The Court made or the government made reference to the report that we had done by MCM Reporting here in Fairfax where they took all the sentencing data and showed that the three cases in the Alexandria Division under this guideline -- and one of them is the *Goddard* case, I believe, with Judge Brinkema, all

three of those cases, the mandatory minimum was imposed.

And in the *Goddard* case, Your Honor, someone traveled from Canada to Dulles to have sex with a ten-year-old girl and a nine-year-old boy. This was after several weeks of communication, similar to this case. This was -- the guideline range was 168 to 210 months. Judge Brinkema imposed 120 months.

Ten years -- I guess, Your Honor, you know, the purposes of sentences are rehabilitation, deterrence, restraint. I think Dr. Berlin's report shows the Court or should give the Court some measure of comfort that at least the restraint portion of that, a ten-year sentence, is more than sufficient to satisfy the purpose of sentencing in that regard, at least that would be our submission to the Court.

We believe, Your Honor, because -- I think of the 17 cases that I've provided to the Court, sentences in this courthouse, we believe that a sentence of 120 months would create sentencing parity with those and satisfy 3553(a)(6).

Dr. Berlin did say that he believed a perfect storm had been created, and that, you know -- Mr. Hihn, Your Honor, is not the only person who may have mental health issues that suffer particularly because of the pandemic.

One of the letters that was written on his behalf, I think, summed it up very well.

"Jason is kind, caring, and a compassionate man. Jason discussed how the pandemic had affected his mental health and how

desperately depressed he was; how he doesn't even know his neighbors, he doesn't have an office to go to anymore; how long it has been since he spoke face-to-face with anyone, had a hug or even a simple smile from anyone. With my working in the medical field myself, not only knowing all too well the toll this has taken on all of us, sadly I've not been able to meet up and be there for Jason in these last 21 months."

Mr. Hihn is not the only person, Your Honor, who acted in a way inconsistent with how he might have acted because of the pandemic.

We believe, Your Honor, 120 months; supervised release period where he will be talking with U.S. Probation; a lifetime registry where he's going to have to report, watch his back because of vigilantes -- he has a support system, his family. They want to help him reintegrate into society.

With all of those factors, Your Honor, we believe that 120 months is more than sufficient to satisfy the purposes of sentencing in this case. Thank you, Your Honor.

THE COURT: All right. Thank you, Mr. Brodnax.

All right, Mr. Hihn. This is your opportunity to tell me anything that you would like to before I sentence you. Please come to the podium, sir, and remain there when you're done.

THE DEFENDANT: I prepared a written statement that has been included in the presentence report because I wasn't sure of my ability to speak at this moment. I would just like to add

that I -- since this all began, I've experienced levels of regret that -- {witness crying} -- and these past ten months of being incarcerated have been the worst ten months of my life, and I'll never be able to forget them. That's all.

THE COURT: All right. Thank you. I read your letter to me, and read carefully your -- the reports made on your behalf. The offense is just -- you know, unimaginable. It's just horrible.

As Mr. Brodnax indicated, for you to have gotten that far out there where you were excited about participating in a sexual assault of an infant and a nine-year-old girl is so hard to understand and come to grips with for most people, and so, obviously, it's very concerning to the Court.

Where are you going to go ten years from now, you know? Where are you going to be? What are you going to do to make sure this doesn't happen? I think your counsel, Mr. Brodnax, bringing in Dr. Berlin to really take a look at you and spend time with you and provide his view of where you will be was a wonderful idea and of great help to the Court.

I think that you bared your soul to Dr. Berlin and really told him what you were thinking and the process that led you to do what you did. In part, I have to disagree with Dr. Berlin. I think, you know, when you look at what happened on -- just putting it on paper -- it was clear to certainly the government but also clear to me that you were going to do what you were on

your way to do, which is something you need to come to grips with in understanding of how to avoid that behavior in the future.

So, hopefully, you're going to get help while you're at the Bureau of Prisons, and hopefully you're going to get help when you're released, and it's -- you are going to need to pay attention to your mental health needs for the rest of your life.

And you have your family who has been very supportive, and you can do it if you put your mind to it and make the right decisions with the help of professionals and with the help of your supervised probation officer in the future, and I hope, very much hope that you will do that for you and also for our community, because when you were arrested, you were really a dangerous, really dangerous person to our community.

I don't -- I've carefully looked at Mr. Brodnax's review of sentences for -- to make sure that there's parity and not disparity, but every sentence is an individual sentence, and I've had the unpleasant circumstances to sentence multiple persons in your position, and you are not as aggravating a factual situation as some of those persons were, but, as I said, it's still a very troubling offense.

I don't find that a guideline sentence is necessary under the 3553 factors. I'm going to sentence you to 132 months of incarceration; ten years of supervised release; a $200 special assessment. I'm going to impose a $5,000 fine on each offense under the Justice For Victims of Trafficking Act for a total of

$10,000, and that 132 months will be on each offense to run concurrently.

And I'm not going to impose any other fine or costs or any assessment under the Child Pornography Victim Assistance Act other than restitution, which is a matter that has not been determined; is that correct, at this time?

MR. SCHLESSINGER: Your Honor, we received no request for restitution from any identified victims of the offenses, so the government is satisfied that no restitution is appropriate to enter in this case.

THE COURT: Then I won't impose restitution. I won't impose a fine or costs of incarceration, because I find that your assets that you have left are going to be dissipated through your term of incarceration.

As special conditions, you'll have the ten-year term of supervised release. I'll order that you submit to polygraph testing under the guidance of the probation officer; that you participate in a program for mental health treatment; that you provide any confidential -- that you waive all right of confidentiality regarding sex offender mental health treatment; that you not engage in employment or services that allow you access to computers or minors; that you not purchase or possess sexually explicit material that has images with juveniles under the age of 18; that you have no contact with minors, unless you're supervised by competent, informed adults approved in

advance by the probation officer; that you not utilize sex-related adult telephone services; that you register with the Adam Walsh Child Protection Safety Act in any state where you reside, work, or attend school; that you submit to a search of your person, property, and house pursuant to the -- or vehicle pursuant to the Adam Walsh Child Protection Safety Act of 2006; that you not possess or use a computer to access any online computer services without approval of the probation office; and that you comply with the requirements of the computer monitoring program.

I'll give you credit for time served awaiting sentencing. I'll recommend that you -- that the Bureau of Prisons designate you to the Cumberland FCI or, if not, to a suitable facility for mental health treatment. Do you want him to be evaluated for the residential drug program as well, Mr. Brodnax?

MR. BRODNAX: Yes, Your Honor.

THE COURT: All right. I'll make that recommendation as well.

Anything else that you think I missed, Mr. Brodnax?

MR. BRODNAX: Your Honor, if I may?

THE COURT: Yes, sir.

MR. BRODNAX: Your Honor, as I understand the Court, the Court sentenced Mr. Hihn to 132 months on each count to run concurrent.

THE COURT: Correct.

MR. BRODNAX: I'd like to just -- I know the Court knows this, but I'd like to just point out, Your Honor, that Count 2, the guideline range for Count 2, with acceptance of responsibility, it would be 63 months.

THE COURT: Right.

MR. BRODNAX: And I'd ask the Court to reconsider imposing on Count 2, rather than 132 months, 63 months on that count. That might have some impact on how Mr. Hihn's time is calculated. There's some pending legislation or instructions to BOP to give people credit for time, but certain offenses don't count, and I think the offense under -- the child porn offense, he probably would not be eligible for anything.

So, since that guideline, Your Honor, is 63 months, we would ask the Court to please reconsider a sentence in which the Court imposes 132 months on Count 1 and 63-month sentence on Count 2 to concurrently.

THE COURT: Okay. I don't have any objection to doing that. I'll modify the sentence to reflect Count 2 will be 63 months.

MR. BRODNAX: Thank you, Your Honor. Thank you very much.

THE COURT: All right. Mr. Hihn, it's up to you. You've got a wonderful family behind you that's supporting you, and you need to move forward from today and, you know, build a better you. You've got the tools to do it, and I hope that you will, sir. All right. Good luck to you. Thank you, Counsel.

MR. SCHLESSINGER: Your Honor.

THE COURT: Mr. Schlessinger.

MR. SCHLESSINGER: I'm sorry. If I may, just two brief matters. One is we have a consent order of forfeiture we would like to hand up, if it's amenable to the Court.

And, along the same lines, I also have a motion to dismiss the underlying indictment. As the Court recalls, Mr. Hihn pled guilty to a superseding information, but we have a motion to dismiss the indictment and --

THE COURT: All right. I'm happy to look at both of those.

MR. SCHLESSINGER: Thank you, Your Honor.

MR. BRODNAX: If we may have a moment, Your Honor.

(Brief pause in the proceedings.)

MR. BRODNAX: Thank you, Your Honor.

THE COURT: Thank you.

(Proceedings adjourned at 10:16 a.m.)

**C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace 3/4/24

------------------------------ -----------------

**Scott L. Wallace, RDR, CRR** **Date**
**Official Court Reporter**