UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
MAILROOM
APR 19 2024
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Jason Steuart Hihn
Petitioner,
v.
United States
Respondent

Case: 1:21-CR-167

The Honorable Rossie D. Alston Jr.

MEMORANUM OF GIGLIO VIOLATIONS PERTAINING TO
ICAC TASK FORCE PROGRAM OPERATIONAL AND INVESTIGATIVE STANDARDS
AND INEFFECTIVE ASSISTANCE OF COUNSEL

## I. Preface

The following abbreviations are used in this document:

ICAC - Internet Crimes Against Children
LEO - Law Enforcement Officer
TF - Task Force

The source document also has extensive capitalization and italicization. There are terms that are capitailized but do not appear in the "Definitions of Terms" section (Pages 2-3.) For the purposes of this memorandum, the exact capitalization is not needed. This typewriter is not capable of italicization and is therefore dropped.

## II. Exhibit 7 Review

Petitioner's exhibit 7 is the ICAC TF's OPERATIONAL AND INVISTIGATIVE STANDARDS document. It is codified under Title 34 USC §21101-21131. Agent Danielle K. Schnur, in her affidavit states that she is a member of the Child Exploitation and Human Trafficking Task force, that she has "received training on investgative techniques, ... including surveillance techniques, undercover activities, ..." She therefore would have known and been required to follow these operational and investigative standards. Her behavior in contradiction to these standards are therefore Giglio v. United States 405 US 150,92 S.Ct. 763,31 L.Ed 2d 104 (1972) violations, falling under Brady v. Maryland 373 US 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963).

## III. Violations of the Standard

Section 9.3 - "Software shall be properly acquired and licensed."

The agent violated the Wickr Application's Terms of Service by using in violation of the terms. She violated multiple terms: 1, 3, 8 and 10. The terms state in relevant part:

> IF YOU DO NOT AGREE TO THIS TERMS OF SERVICE, PLEASE CEASE UNING THE Wickr SERVICES IMMEDIATELY [Emphasis in original]
>
> 1. LICENSE GRANT
> ... Subject to the terms of this agreement, Wickr grants yuou a personal, non-exclusive, non-transferable and non-sublicenseable license to use the Wickr Services solely for your Personal or internal business purposes.
>
> 3. RESTRICTIONS
> You acknowledge and agree that you will not ... (c) attempt to circumvent or disable the Wickr Software or any technology, features, or measures in the Wicker Software by any means or in any manner...
>
> 8. USAGE RULES; PROHIBITED CONDUCT & USES
> YOU MAY NOT USE, FACILITATE, OR ALLOW OTHERS TO USE THE Wickr Services:
> * to violate the rights of others;
> * to impersonate others in a manner that does or is intended to mislead, confuse or deceive others;
> * to remove, circumvent, disable, damage or otherwise interfere with security features of the Wickr Services, including any technical measures we may use to prevent or restrict unauthorized access to the Wickr Services, features that prevent or restrict use or copying of any content accessible through the Wickr Services or features that enforce limitations on the use of the Wickr Services;
>
> 10. GOVERNMENT END USERS
> If this software is being acquired on behalf of the United States Government then the following provision applies. Use, duplication, or disclosure of the Wickr Software by the U.S. Government is subject to the restrictions set forth in this Agreement and as provided as DFARS 227.720101(a) and 227.7202-3(a), DFARS 252.227-7031(c)(a)(ii)(OCT 1988), FAR 12.212(a)(1995), FAR 52.227-19, or FAR 52.227-14(ALT III) as applicable.

The agent violated the license when she used the software not for "personal or internal business purposes." She violated the restrictions when she used an external camera to circumvent the message expiration timer. This was needed because the software refuses to operate if there is screen-recording software detected and it disables the screenshot ability of the device. The only way to circumvent measure

the measures was to use an external recording device. The agent violated another restriction when she impersonated someone other than herself inorder to mislead the defendant. Finally she used the software for official government work without complying on the restrictions specific to the United States Government.

Section- 13 Mandated proper tactics and rules of engagement.

Section 13.1 - Specifies that LEOs "shall not use and are prohibited from using" (emphasis in original) websites for consenting adults. The website in this case is Fetlife.com which bills itself as "The world's most popular social network for the BDSM, fetish and kink community" where the agent admits in her affidavit the "web forum is used for legitimate, legal purposes". It is a website for consulting adults . This is a clear violation of 13.1, and she knew of its legitimacy as a "Website for Consenting Adults".

Section 13.2 - Specifies that LEOs "shall not use and are prohibited from using" instant messageing for consenting adults. She violated 13.2 by using Wickr.

Section 13.3 - Secifies LEOs "shall not use and are prohibited from using" adult profiles of the age of 18 yers old andolder on social media websites. Fetlife is such a site, and she had an adult profile there in order to post her ad. The agent never represented her age as under 18. This is a vlear violation of 13.3.

Section 13.4 - Specifies that LEOs are "allowed to use and shall only use" profiles of the age of 17 years old and younger on websites. The agent did not do that. This is a clear violation of 13.4.

Section 13.5 - Specifies that LEOs "are mandated to ask permission in writing via a cooperative agreement for the express purpose of conducting said online inter-net undercover sting operation. LEOs "shall not violate and are prohibited from violating" ther Terms and Conditions of applications/websites because they would be in violation of Title 18 USC §1030 of the Federal Computer Fraud and Abuse Act." Agent Schnur violated the Wickr Terms of Use as described above. This is a

clear violation of 13.5

Section 13.6 - The agent may have violated the ICAC TF's Memorandum of Understanding. However her superior officer violated the Oversight Clause (Section 3) Section 3.2 by not ensuring that "ICAC activities comply with agency policies and these Standards. The agent's activities clearly violated the standards but she was allowed to continue the investigation, what is more, even start it. This makes her supervisor liable under Title 18 USC §1961-1968, the Racketeer Influenced and Corrupt Organizations Act.

Section 13.7 - Specifies that LEOs are "prohibited from committing and shall not commit "... entrapment by cajoling, compelling, convincing, enticing, inducing, luring, persuading, seducing, tempting a person ... and if not complied with would be in violation of of Title 18 USC §373 the Solicitation to Commit a Crime of Violence Act and in violation of title 18 USC §2422 the Coersion and Enticement Act and in violation of the Federal Elements of Entrapment from the United States Department of Justice Archives Manual Criminal Resource Manual Section 645

The petitioner has already identified several examples in his Memorandum of Entrapment and Ineffective Assistance of Counsel, but for thoroughness will include two examples here, all from Agent Schnur:

4/29 8:29pm "She wanted to know if you are bringing her anything"
8:34pm "She said if you are nice and bring her a gift (gift emoji)"
8:51pm "I buy her gifts all the time"

5/12 8:52pm "Baby is such a delicacy"
"Yeah, it is the sweetest (peach emoji)"
"When do you want to come have a taste?"

And in so doing opened herself up to criminal liabilities under 18 USC §373 according to the standards.

It has now been shown that Agent Schnur violated five of the seven standards

of engagement, exposed her supervisor to racketeering, violated the work equipment standard, She may have violated 13.6, but petitoner does not have the Memorandum of Unserstanding for which to judge.

IV. Ineffective Assistance of Counsel

These violations could have been uncovered by petitioner's counsel but he never requested Giglio and Brady material. He failed to conduct an investication, even though he had been requested to by the defendant.

V. Conclusion

The government failed to disclose this Giglio/Brady material in violation of the defendant-petitioner's consitutional rights. It is as if the agent "went rogue" and used the standard as a plan of what to do instead of what not to do. This is reckless disregard for the law and the Standard's Rules of Engagement. These convictions cannot stand.

Respectfully submitted this 15 of April, 2024

Jason Steuart Hihn #52188-509
Coleman FCI LOW
PoBox 1031
Coleman, FL 33521-1031

## CERTIFICATE OF SERVICE

I, Jason Steuart Hihn, sui juris, proceeding pro se, certify that the foregoing is true and correct, and made with my firsthand knowledge pursuant to the penalty of perjury, pursuant to 28 U.S.C. §1746(1), that on the date affixed below, I did forward to the prison authorities for mailing,[1] my memorandum of Giglio Violations re: ICAC TF Op & Invest. Stds & IAC; Exhibit 7: ICAC Operational & Investigative Stds; Exhibit 8: Affidavit of Bonnie Burkhardt

for forwarding to the Albert V. Bryan U.S. Courthouse 401 Courthouse Square, 2nd Floor, in Alexandria, VA 22314-5704. Said mailing was properly addressed and did contain the proper amount of pre-paid postage affixed thereto.

It appears that the parties to this action are registered with the CM/ECF Electronic Docketing System, therefore as I am proceeding Pro Se, I ask for service by that means also.

Respectfully submitted this 15 day of April, 2024.

9589 0710 5270 1605 7138 30
Certified Mail Receipt

9590 9402 1250 5246 3876 16
Return Receipt

By: [signature]
Jason Steuart Hihn, Pro Se
Fed. Reg. No. 52188-509
Federal Correctional Complex - LOW
P.O. Box 1031
Coleman, Florida 33521-1031

1 Under the Prison Mailbox Rule, a pro se petitioner's pro se filing is deemed filed when it is delivered to the prison authorities for forwarding to the Clerk of the Court. Huston v. Lack, 487 U.S. 266, 268 101 S. Ct. 2379, 101 L.Ed.2d 245 (1988)