FILED
MAILROOM
MAY - 6 2024
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner
v.
United States
Respondent

Case: 1:21-CR-167

The Honorable Rossie D. Alston, Jr.

7

PETITIONER'S REPLY TO UNITED STATES' RESPONSE
IN OPPOSITION TO PETITIONER'S MOTION
UNDER 28 USC §2255

Petitioner files this reply in response to to the government's response.

The Petitioner respectfully requests the court grant his motion and hold an evidentiary hearing as needed. The Petitioner has filed a timely motion, his claims of ineffective assistance of counsel have merit, his sentence violates federal law, and he makes a valid claim of actual innocence, while documenting Due Process violations by the Government.

The government fails to address all the issues in his memorandums. Both were filed prior to the government's response, and therfore are acquiesed to and stand unrebutted.

Part I - Rebuttals of Government's Response

[Heading numbers and titles are taken from the Response of March 21, 2024 and are for clarity and are <u>not</u> arguments made by petitioner.]

III. Argument

a) Petitioner's motion is untimely

This arguement fails for several reasons.

First, the Petitioner <u>did</u> put his pleading in the prison mailbox on April 3, in ample time to arrive before the deadline. It was expected to arrive on April 7 still in plenty of time. Petitioner has supplied a Statement of Facts under penalty of perjury to this point. This fulfills his obligations under Huston v.

Lack. The fact that the prison lost his filing between the unit mailbox and the Post Office is not under Petitioner's control. Furthermore the incarserated inmate has no way to track it or verify it made it onto the docket from within the prison.

Secondly the Government cites United States v. Thomas No. 18-135, 2020 WI 7229705. This case does not apply because the Petitioner was not incarserated "prior to the lockdown." (Emphasis added.) In fact, petitioner arrived during the lockdown from COVID-19, during a National State of Emergency which did not end until May of 2023.

Thirdly, the response conceeds "However Petitioner has definitely shown he placed his Section 2255 motion in the mail system." The assertions that the prison is "unaware" of any issues is hearsay, Petitioner respectfully demand to see the exchange so that he may challenge it. There is a difference between there not being a problem, and being unaware of it. It alsc may be that it is just an isolated failure of the prison mailing system.

Fourthly, the contention that the "delays due to FCI Coleman's mail system would not qualify as an extraordinary circumstance" was never raised by Petitioner because he relies on Huston v. Lack mailbox rule.

Fifthly, it is very apparent that when the Petitioner's Motion to Ammend and Motion for Extension of Time were filed, their content undicated that Petitioner was amending a §2255 motion that he had already supplied to the court. The Motion for Leave to Ammend states "moves the court for leave to amend his §2255 pleading that was filed on April 7, 2023". It then instructs "1) Add a claim" and "2) Add a ground". The content of the filing includes two pages that continue the claim numbers and page numbering from the original pleading.

Sixthly, by the Government motioning the Court to order Petitioner to (re)file, which the Petitioner complied with in a timely manner, the Government waived its ability to object.

For the six reasons above, Petitioner's motion is therefore timely.

b) Defense counsel provided effective assistance

Petitioner asserts that his counsel provided ineffective assistance.

i) Defense counsel's performance was not deficient

The Rule 11 Colloquy is invalid for multiple reasons explained herein. As Petitioner asserts in his Memorandum in Support of Petitioner's 28 USC §2255 Claims: Entrapment and Ineffective Assistance of Counsel dated Dec 31,2023 (hereafter Entrapment Memorandum) and as Mr Brodnax reveals in his Declaration, his advice was Constitutionally deficient. In the 31 cases he studied, he did not study a single Supreme Court decision. Petitioner cited Mathews v. United States 485 US 58, 99 L.Ed 2d 54, 108 SCT 583, United States v. Jacobson, 583 US 540, 118 L.Ed 2d 174, 112 SCT (1992), Sherman v. United States 356 US 369,376 2L.Ed 2d 84 878 SCT 819 (1958), Sorrells v. United States 77 L.Ed 413 287 US 435-459 (1932) and Kyllo v. United States 353 US 27 150 L.Ed 2d 94, 121 SCT 2035 (2001). Without these Supreme Court cases factored into the defense strategy his understanding of entrapment was literally Constitutionally deficient of Supreme Court precident. When asked at the colloquy "Are you fully satisfied with the way in which he has represented you in this proceeding?" Petitioner would have replied in the negative if the narrow scope of the entrapment cases has been known to him, as argued in the Entrapment memorandum. That memorandum has specific assertions citing specific cases from the Supreme court that would have substantially and materially altered his defiense. Furthermore, the colloquy is flawed for additional reasons explained later in this reply.

First, Petitioner did express that he wanted the psychological evaluation and forensic report completed before deciding to enter into the plea agreement. However Mr. Brodnax failed to obtain either one before then. With the plea period already extended and time running out, petitioner had nothing to show in his defense and was thereby "railroaded" into the plea agreement by his own counsel. For theforensic report, he expected the results to be exculpatory,or at least substantially reduce his sentencing exposure by demonstrating that he did not knowlingly possess the images as claimed by the government. The ones he did possess were not illicit. "Rehaif annouced a new substantive rule that applies restroactively on collateral review ... therefore narrow[ed] the scope of a criminal statute by reinterpreting its terms" United States v. Waters 64 F.4th 199 (4th Cir. 2023).

Second, Mr. Brodnax exhaustively listed the 31 cases of his entrapment examination. None of these were shared with Petitioner, none were controlling precident from the Supreme Court. As such Mr. Brodnax was Constiutionally deficient in his understanding of how to conduct an entrapment defense.

Petitioner has shown in his Entrapment Memorandum that there is more than a "scintilla" of evidence for entrapment. If Judge O'Grady would not have given a jury instruction given that evidence, then it would be material for appeal.

Third, Petitioner asserts that this counsel was ineffective by failing to advise Petitioner of his appeal rights. This is admitted in Mr Brodnax's Declaration, ¶90.

Futhermore the plea colloquy confirms that he can assert Ineffective Assistance of Counsel (IAC). Petitioner is asserting IAC. However the waiver is also unenforcible. A "prosecutor is permitted to consider only legitimate criminal justice concerns in striking [a plea] bargain - concerns such as re-

habilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of [a defendant's] cooperation with authorities." Town of Newton v. Rumery 480 US 386, 401, 107 SCT 1187, 94 L.Ed 2d 405 (1981) (Oconner J. concurring) see also id. at 397 (majority opinion (evaluating to the degree to which as an agreement in the criminal context "further[ed] legitimate prosecutorial an public interests") This set of legitimate interests places boundaries on the rights that can be bargained away in plea negotiations." Price v. United States Department of Justice Attorney Office 865 F.3d 676; 431 U.S.App. D.C. 329, 2017 USA App LEXIS 14338 (D.C. Cir, 2017). "[W]aivers promote finality only by making it more difficult for criminal defendants to uncover esculpatory information or material showing that their counsel provided ineffective assistance. That arguement takes the finality interest too far after all a criminal defendant can never waive his right to bring a colorable claim of ineffective assistance of counsel, even though such claims undermine finality." Id. "Some courts have even suggested that the right to material esculpatory information under Brady v. Maryland [citation omitted] also cannot be waived. See McCann v. Mangialardi 337 F.3d 782, 787-88 (7th Cir., 2003)" See also Monroe v. Angelone 323 F.3d 286, 299 (4th Cir., 2003) "At the end of the day a plea agreement that attempts to waive a right conferred by a federal statute is, like any other contract, 'unenforcible if the interest in its enforcement is outweighed [under] the circumstances by a public policy harmed by its enforcement.' [Rumery citation omitted] More specifically, the Supreme Court has instructed us to consider whether agreements with prosecutors "further legitimate prosecutorial and public interests" before enforcing those agreements. Id at 379" In the instant case, the government attempts to shield petitioner from having justice done by preventing relief from the Constitutional, statutory, and

and policy violations committed by Agent Schnur, which were required to be disclosed under Brady and progeny, specifically Giglio. The agent also committed crimes as part of her investigation by 1) using software and services in violation of the Terms of Use, thereby violating 18 USC §1030 - the Computer Fraud and Abuse Act, 2) solicited a crime of violence on May 12, 2021 8:52pm "Baby is such a delicacy", "It's the sweetest (peach emoji)", "When do you want to come have a taste?" and on April 29, 2021 8:26pm "She wanted to know if you're bringing her anything" thereby violating 18 USC §373 - solicitation to commit a crime of violence, and violating the ICAC Operational and Investigative Standards, section 13, "Rules of Engagement", the Federal Elements of Entrapment from the United States Department of Justice Archives Manual Criminal Resource Manual section 645, and the Fourth Amendment to the Constitution.

There are no "legitimate prosecutorial or public interests" or "legitimate criminal justice interests" in maintaining a conviction where it was obtained by illegal actions by a rogue agent. The Exclusionary Rule of Weeks and its progeny (See Wong Sun v. United States 371 US 471 (1963) and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics 403 US 388 (1971),) show that unlawful actions by government agents are not to be tolerated. For this reason, the waiver is unenforcible.

Mr. Brodnax did not conduct an investigation into the legality of the agent's use of Wickr, which is ineffective assistance of counsel. Any competent attorney having conducted such an investigation would have had the totality of the evidence quashed because it was gathered illegally. Mr Broadnax's Declaration is silent on this subject.

Mr. Brodnax "reviewed the unredacted discovery for 120 minutes then consulted by telephone with petitioner" however, petitioner and counsel were unable to

jointly review the discovery together. This is a violation of the Sixth Amendment. His independent review denied petitioner the ability to literally point to the specific elements in the photos of the dolls that the agent sent, thereby preventing him from sharing his interpretations and insights gained therefrom.

Lastly, as petitioner has claimed the plea colloquy is invalid because he was not Constitutionally versed as per Supreme Court entrapment precident. Petitioner is not satisfied and would not have been satisfied if he knew that his counsel did not review Supreme Court case law.

Petitioner's satisfaction with Mr. Brodnax's performance was also contingent on promises of future performance which went unfulfilled at sentencing. Mr Brodnax promised to file the forensic report with the court prior to sentencing. It was not. Mr. Brodnax failed to execute the contract properly by sentencing. This is deficient performance.

ii) Defense Counsel's performance did not cause prejudice

As explained in his Entrapment Memorandum, petitioner asserts that if he would have done a proper review, he would have gone to trial. The government claims multiple times "overwhelming guilt" guilt. However with a proper entrapment defense under Jacobson (supra), it superceeds that evidence because the government must first show that it was not entrapment before considering the evidence of guilt. In this case, the government agent implanted the criminal element of coersion for enticement. But also under Mathews v. United States (supra) he can assert another defense in addition to entrapment. To be "overwhelming[ly]" guilty does not preclude entrapment. Both can be true, they are not mutually exclusive. The difference is that a defendant is not criminally liable when he is entrapped. This is why in United States v. Jacobson the Supreme court requires the government to first prove it was not entrapment. The

government's response attempts to switch that, proposing that defendent is guilty and therefore we need not consider entrapment. This is not how it works per Jacobson.

Second, knowledge of Dr. Berlin's psychological evaluation is material to an entrapment defense. "As Mr Brodnax explains, the purpose of the proposed evaluation was not to determine Petitioner's culpability for his crime, but rather to determine whether petitioner suffered from any sexual disorder." (Government's response, emphasis added.) Because a lack of predisposition is material to, and is an explicit element of, and entrapment defense, petitioner wanted to know if he had an undiagnosed sexual disorder. He was found not to have any disorder. Therefore the report was relevant.

Third, and entrapment defense would not have been fruitless. Petitioner has given a detailed examination of these arguments in his Entrapment Memorandum detailing down to the minute the exact messages and times at which the coersive element of 18 USC §2422(b) was implanted. It was April 29, 2021 8:26pm "She wanted to know if you're prining her anything". This was augmented by five more mentions and instructions to bring a gift. There are other elements of entrapment like use of friendship and coquettery. There is enough evidence detailed in the Entrapment Memorandum to establish entrapment as a Matter of Law, exactly as in Poehlman [citation omitted]. The Government attempts to characterize these messages as "several innocuous messages cherry-picked from the chats", but no reasonable juror would find the agent's April 29 and May 15 messages (quoted earlier) as "innocuous" or "inoffensive". They are deliberately manipulative statements made by the government agent reting to induce the Petitioner into criminal conduct so that she can prosecute. The Respondent then goes on to repeat "desire to have sex with an infant and 11-year old girl". However 1) The agent claimed to

have already done these acts with the fictitious minors, altering the situation, and 2) that is not the crime for which Petitioner is charged and convicted. Enticement is a four-factor crime featuring a coersive element, one that the agent implanted on April 29, 2021 8:26pm. The gent repeated that five more times as explained in the Entrapment Memorandum.

The statement "Petitioner was aware of the fultility of an entrapment defense because Mr. Bodnax discussed it with him" is false. Mr Brodnax's "discussions" consisted of repeatedly bringing up the admittedly "fabricated" story to humiliate Petitioner. If the Petitioner can be denied an entrapment defense because of a fabricated story, then there is something wrong with the law. Firstly because under the Jacobson Supreme Court precident the story could only be presented after the entrapment defense had failed. Secondly, no amount of fabricated story telling is an element of the crime. See also United States v. Gladish 536 F.3d 646, 647 (7th Cir., 2008) "Explicit sexual talk alone does not constitute a substantial step toward a §2422(b) offense". Finally, the Respondent cannot accurately speculate as to what Petitioner's reason for pleading guilty and guesses incorrectly.

Fourth, the Petitioner did not make an arguement in his motion or memorandums because he was not advised of his appeal rights. This is admitted in Mr. Brodnax's Declaration ¶ 90. In fact there are several aspects that Petitioner would have liked to appeal. Mr Brodnax did promise to review the written sentence when it became availible. He did not. Mr Boadnax did win a modification at sentencing so that he could get First Step Act Earned Time Credits, but this is not reflected in the his Judgement and Convictions. Petitioner is not getting the FSA ETCs he is supposed to. Judge O'Grady promised to make that "modification", but it did not happen. Counsel instead signed out that very day of sent-

encing and has not contacted Petitioner since. He could have done better.

Fifthly, the Respondent accuses Petitioner of "cherry-picking". Petitioner has consulted the law library, Blacks Law Dictionary (6th Pocket Edition) and multiple average dictionaries. Nove have the verb "cherry-pick". There is no legal term and no legal definition. **But** this is is an admission by Respondent that conceedes multiple points: 1) that the evidence exists, and 2) that it is not cited out of context. Therefore Responent, by its own accusation, admits that the evidence of entrapment exists. Which then raises the question: is a "cherry" equal to or greater than a "scintilla" of evidence? "Scintilla" is commonly defined as a "spark or trace". Petitioner therefore asserts that yes, a "cherry" satisfies the "scintilla" standard, and that standard has been met in this case, thereby proving Petitioner's point that he received IAC. The next question then is: how many "cherries" does it take to make an entrapment pie? There is no legal standard, but if the often proffered metric of "pages" is used, the Petitioner cited 66 of 563 (non-duplicated) pages, equalling 12% (percent) or 1 in every 8 pages. That is a lot of cherries. However Petitioner cannot find any quantitative analysis in case law. Instead, the Supreme Court uses a qualitative, perceptional-based analysis. "Even very subtle government pressure, skillfully applied, can amount to entrapment." United States v. Jacobson, supra. Where "subtle" is defined as "difficult to detect" in multiple dictionaries, having the evidential "cherries" be detected and now admitted to by the Respondent, the government has admitted the entrapment threshold has been met and the Respondent has admitted to the entrapment.

This then indicates the deficiency of Mr. Brodnax's performance that he was not able to identify these "cherries" of entrapment on his own. Petitioner then asserts that Mr. Brodnax's deficient review was the reason that he was not

able to find a "scintilla" of evidence to persuade Judge O'Grady for an entrapment instruction, not that the evidence was lacking or unpersuasive.

Lastly, Petitioner does not fail to allege his remaining claims would have resulted in actual prejudice. In fact he identified that the "full pathnames" to the files are exculpatory, and were never disclosed by the government. The fact that Petitioner as of March 21, 2024 has never seen this evidence suggests that it is being withheld because it is esculpatory. Petitioner intends to request Discovery of these full pathnames, ownership, and permissions since they were used to increase his sentence, by both quantity and content. So petitioner did not "only argue some allegedly exculpatory photos were redacted." As to those photos, which the agent admits were "not real children" are therefore definitively exculpatory. Mr. Brodnax reviewed them on his own and not with Petitioner. As argued above, this is a violation of the Six Amendment. Being able to explain how the details added up to a belief that she was not referring to flesh-and-blood humans would have meaningfully altered the way in which Mr. Brodnax represented Petitioner. Since 18 USC §2422(b) requires an "individual" who has not reached the age of 18 years, where "individual" is defined in 1 USC §8 as someone who has essentially been gestated and removed from the womb, it does not include dolls, so the mens rea element (which is judicially constructed and not statutorily constructed) does not apply. It is legally impossible to entice a doll.

The Respondent goes on to say that "Petitioner does not explain how an objection regarding the exact quantity of incriminating chat exchange pages and images could have influenced his decision to go to trial." The Respondent is confused. The prosecutor cited the number of pages at sentencing. As for the number of images, defending 3 images is far more practical than defending 144. Petitioner is the first person in the Alexandria Courthouse to get more than the

mandatory minimum when compared to similar cases.

Finally, Petitioner stated that he was unable to communicate effectively with counsel in the detention center. The privacy of the attorney-client communications is zealously defended by the courts. The Petitioner has cited the "chilling effect" he experienced. The Video Teleconferencing Service (VTS) has the same legal protections as the phone service. "[T]he Fifth and Sixth Amendments, which unqualifiedly guard the right to assistance of counsel, without making the vindication of the right depend upon whether its denial resulted in demonstrable prejudice. The Supreme Court said in Glasser v. United States, 1942 315 US 60,76,62 SCT 457,467, 86 L.Ed 680: 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' Coplon v. United States 191 F.2d 749; 89 US.App. DC 103; 1951 US App. LEXIS 2618 (D.C. Cir. 1951)." "We reject the government contention that the defendant and his counsel must prove affirmitively the exact prejudice produced by this injunction in a federal prosecution. Not only would this require them to disclose what would have been privileged communication between attorney and client, [b]ut, as stated in Glasser v. United States, supra [Glasser quote from above]" Id. "The sanctity of the Constitutional right of an accused party to consult with his counsel is generally recognized and zealously enforced by state as well as federal courts." [Emphasis added] Id. "A defendant in a criminal case may not legally be found guilty except in a trial in which his Constitutional rights are scrupulously observed. No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel, or any other element of due process of law without which he cannot be deprived of life or liberty." Id. Therefore, Petitioner does not need to show prejudice.

However this means that by not zealously enforcing this right, Mr. Brodnax provided deficient performance. In order to get Petitioner to stop insisting he secure the privacy of their communications he explained the four-point test of United States v. Brugman 655 F.2d 540 (4th Cir., 1981). "In [Brugman] we were presented with a similar problem. There a drug conspiracy case proceeded to trial against three defendants, one of whom 'changed sides' during the trial by pleading guilty and testifying against the remaining two. The defendant who changed sides had attended a joint defense counsel meeting during trial, prompting the remaining two defendants to argue that the government deprived them of effective assistance of counsel guarenteed by the Sixth Amendment." United States v. Bryant US App. LEXIS 27511 (4th Cir., 1994). Mr Brodnax then went on to explain that the government could listen in and that we would have to go to trial, then prove that what the prosecution used at trial was gathered from the VTS. This set a very high bar. This is deception, sophistry, fraud, malpractice and is unethical. Mr. Brodnax is an experienced criminal defence attorney in the Fourth Circuit with over 30 years of experience. He knew, or should have known, that Brugman does not apply to defendants being held in detention having a private 1-on-1 meeting with his counsel. This also means that the colloquy is invalid because Mr. Brodnax obtained his client's assent with his performance by deception. He materially misrepresented his client's Sixth Amendment rights in order to have an easier job. He is required to, and should have, zealously defendended his client's rights by informing the detention center of their Constitution-violating VTS environment, and mandate they change them, or come in. He did not. This is deficient performance. The Courts are willing to zealously defend the accused person's rights, but Mr. Brodnax was not. Petitioner calls on the Court to do what his counsel did not do.

In sum, due process violations notwithstanding, Petitioner has plenty of reasons why he would "have been confident of acquittal". From the entrapment evidence which when properly analyzed shows that he was obviously, definitively, per se, entrapped as matter of law, to the fact that Petitioner determined that the agent was dealing with dolls and not flesh-and-blood humans, that counsel's performance was over-promised and under-delivered (the entrapment analysis, forensic report, securing his Constitutional privacy in the detention center) the Petitioner's ineffective assistance of counsel claims should prevail. When the illegality of the angent's conduct is factored in, as described in Petitioner's Memorandum in Support of Petitioner's 28 USC §2255 Claims: Due Process Violations and Ineffective Assistance of Counsel (hereafter Due Process Memorandum) the case should have been ended immediately after it began, thereby not even needing to consider acquittal.

c. Petitioner's conditions of supervised release do not violate federal law

Petitioner does not object to the mental health order and intends to fully comply with any court-ordered therapy. Petitioner only objects to his being ordered to "waive" his health privacy rights under duress by the threat of re-incarseration. While other courts have ordered and other convicts have complied, this Petitioner raises the issue that this is an Unconstitutional Condition. He cannot "waive" anything while being threatened. Black's Law Dictionary, 6th Pocket Edition defines "waive" as "1. to abandon, renounce, or surrender (a claim, a privilege, right, etc); to give up (a right or claim) voluntarily." "Voluntary" is likewise defined as "Intentionally; without coersion." "A man may not barter away his life or his freedom or his substantial rights" Home Insurance Company of New York v. Morse 87 US 445,451 (1874) "This would allow the government to 'produce a result which [it] could not command directly." Perry v.

Sinderman 408 US 593,597-598 (1972). The Government can never require surrender of one right as a condition to receive another. The government cannot additionally require surrender of a right as a condidtion of continuing to receive a benefit. "Enjoyment of a benefit or protection provided by law cannot be conditioned upon the 'waiver' of a Constitutional right." Patton v. State of North Carolina F.2d 636 640 (4th Cir., 1967) cert. denied 390 US 905 (1968). Respondent claims it would only be "impeded" but not entirely prevented. The courts would be able to order the disclosure by a "friendly subpoena" in which the provider would be protected from retaliation because it is required to comply. Petitioner would not oppose any such subpoena. He is just unable to waive his rights which would be plenary. Petitioner respectfully demands the same privacy protections as were extended in another 4th Circuit case wher it found "the Patient's privacy concerns were not compelling in the context of discovery order <u>because</u> the magistrate judge appreciated confidential and private nature of records, requiring defendants to submit expert affidavit to be show need for medical records before ruling on patient's motion to quash, and magistrate judge issued a 'confidentialitly order' designating patient's subpoenaed medial records as confidential, requiring records to be filed under seal, limiting individuals able to review records to counsel, experts employed by parties, and one designated client representative, and prohibiting photocopying or dissemination of records." Menzu v. Morgan State Univ. 495 Fed Appx 286, 19 Wage & Hour Cas. 2d (BNA) 1147 (4th Cir. 2012) cert. denied 586 US 1144, 133 SCT 991, 184 L.Ed 2d 763 20 Wage & Hour Cas. 2d (BNA) 288 (2013) [Emphasis added]

d. Petitioner's actual innocence claim is meritless

The Respondent mischaracterizes the evidence at hand. As argued previously and herein, Petitioner's counsel did not do an adequate review of the evidence

or case law), and advised Petitioner not to have evidence in his cell for fear of vigilanteism. Now that Petitioner has done a thorough and proper analysis done my himself and others, this is new evidence not previously put before the court or put to him prior to pleading. Again the Petitioner was not convicted of attempting to have sex with a child, he was convicted of coercing-enticement. The Respondent attempts a miscarriage of justice by ignoring the essential element of coersion for entrapment because the record shows that the agent implanted that element and reinforced it five more times. On the night of April 29, 2021 starting at 8:26pm, the agent's implant started thusly:

> She wanted to know if you're bringing her anything
> She said if you're nice and bring her a gift
> I bring her gifts all the time
> You can think about gifts for us tonight

Then on subsequent days:

> 5/12 4:33pm "And she asked if you picked out her present (gift emoji)? LOL
> 5/19 9:30am "Gift for Ali is super important (gift emoji)
> 6/20 9:15pm "Will you have time to go shopping before then?
> 6/21 8:41pm "You buying her a gift is super helpful (smile emoji)
> 6/19*11:42am "Did you pick out a gift for Ali yet" *out of order

Next Respondent claims that Petitioner claims he traveled to Virginia to have sex with a child, however this does not take into account that because she used awkwardly posed dolls in her photos, and the apparent lack of a familial connection (genetically) to a "mediterranean" family. By the time he traveled he no longer thought she was dealing with flesh-and-blood humans.

There is also significant evidence that the the reason for travel was not for the minor. See Petitioner's Entrapment Memorandum, pages 6-10 where he repeatedly asks to meet up with her without the girls present. For example, 5/2 9:48pm "Just you and me".

On review, the evidence is conclusive that he was entrapped as a matter of

law. No reasonable juror would find otherwise. The agent injected the gift idea six times, with reinforcement on June 19, 20, and 21, with arrest on June 24. She clearly overcame his will.

e) Petitioner is not entitled to an evidentiary hearing

The petitioner has alleged facts that are true and entitles him to relief. Petitioner has rebutted every one of Respondent's claims.

Part II - Deficiencies of the Response

I. Silence on Due Process Violations

The response is completely silent on the issues raised in Petitioner's Due Process Violation Memorandum. As shown in that memorandum, the agent did not have a valid license to use Wickr Software and Services in her investigation. Her investigation by its very method of operation violated the license in multiple ways, from the very first moment she started recording the conversation. By doing so, she was in violation of the license which is a crime under 18 USC §1030 - the Computer Fraud and Abuse Act. Unlawful recording is a violation of the Fourth Amendment to the Constitution, and she violated 18 USC §2511 et. seq, operating an illegal wiretap. She also violated the Internet Crimes Against Children Task Force Operational and Investigative Standards §9 and §13 - "Rules of Engagement" as explained in Petitioner's Memorandum of Giglio Violations Pertaining to ICAC Task Force Program Opertional and Investigative Standards and Ineffective Assistance of Counsel (hereafter Giglio Memorandum).

Part III - The Declaration of Mr. Bodnax

The Petitioner takes issue with several statements in Mr. Brodnax's Declaration.

¶26. As mentioned previously, none of the cases listed are Supreme Court cases, so his evaluation was deficient.

¶49. On November 10, as asserted in his original motion, Petitioner demanded the forensic report be completed prior to pleading guilty as the vast majority

of images were not known by petitioner to be on his device. Counsel refused. He promised to have the report filed before sentencing if he pleaded guilty. He did not maintain the promise.

¶154. Petitioner had been promised the results of the psychological evaluation of December 4 "after the weekend" which would have been in enough time to consider to take the case to trial. But no results came. Petitioner was forced to take the plea bargain without them. Another promise unfulfilled.

¶169. Petitioner and his father both expected the fee paid for the forensic exam to be for the four pretrial phases, up to and including the forensic report. Petitioner was never informed nor never authorized the discontinuing of the report. Petitioner asserts that work continued upt to April 7 when he was verbally informed of the results. Mr. Brodnax mismanaged the project, and let it slip so that it could not be completed in time for sentencing. Mr. Brodnax did not even realize the written report was not included in the statement of work, learning of it on August 11, 2021, three months after Petitioner was sentenced. (See petitioner's Exhibit 10.) This is why there was no report.

¶182. The alleged March 20, 2022 call with Phillip DePue was on April 7, the day before Petitioner's sentencing. There were no documents viewed by Petitioner because none had been produced. Mr. DePue was on a voice call while Petitioner and counsel used the VTS. It is wherefore impossible for Petitioner to have reviewed Mr DePue's alleged document. Mr DePue did state that there were only 22 files of interest (17 are from BDSMLR.com) not the 144 the government claimed. The difference being the files the government included were cache files or hidden from the Petitioner.

¶190. Mr. Brodnax admits that he never advised his client of his appeal rights. Petitioner asked him to review the written sentence with him because he

was emotional and overwhelmed during the hearing. Mr Brodnax promised he would after the judgement was entered. Instead Mr. Brodnax signed out that very day. If Mr. Brodnax had reviewed the sentence with him, Petitioner would have appealed elements of his Supervised Release. Conditions #5, 8, 11, 13 violate Packingham v. North Carolina 582 US 137 S.Ct. ____, 198 L.Ed 2d 273, 2017 US LEXIS 3871 (2017) "[T]he state may not enact this complete bar to the excercise of First Amendment rights on websites integral to the fabric of our modern society and culture." Id. "It is well established that, as a general rule, the Government 'may not suppress lawful speech as the means to suppress unlawful speech.' Ashcroft v. Free Speech Coalition 535 US at 255, 122 S.Ct. 1389, 152 L.Ed. 2d 403."

#12 is unlawful because under 18 USC §3563 (b)(23) the standard for searches is "reasonable suspicion" but the computer monitoring software "may restrict/ or record <u>any and all</u> activity on the computer" [emphasis added] which violates the "reasonable suspicion" standard required by the law. It instead operates under a "general suspicion" standard, not authorized by the law.

Mr Brodnax's Declaration is silent on what measures he took to secure the privacy of their VTC sessions.

Mr. Brodnax's Declaration is silent on what investigation he performed with respect to the legality of the agent's use of Wickr and her recording of the chats.

Part IV - Conclusion

Petitioner has shown that there was substantial enough evidence to get an entrapment instruction in a reasonable court of law. Petitioner has also shown that his own counsel did not zealously secure the privacy of their privileged communications in the detention center while using the VTS, both from other

inmates and from staff. Mr. Brodnax has documented that he substantially relied on the VTS throught the entire proceeding. Petitioner is not required to show prejudice under Glasser v. United States (supra). Petitioner has shown that the plea waiver is unenforcible because there is no legitimate criminal justice interest, nor has the Responent identified one. In fact legitimate criminal justice interests require that the plea waiver not be enforced because it would only encourage more agents to break the laws and policies in similar ways. "No conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel, or any other element of due process of law without which he cannot be deprived of life or liberty." [From page 12, citation omitted] Entrapment can never be justified by the government either. Petitioner has shown his conditions of supervised release violate multiple laws, from 18 USC §3563, to the First Amendment.

The Petitioner would not be in this situation today if the agent had not embarked on an illegal investigation in violation of law and policy, then entrapped the defendent. It then went to Mr. Brodnax's ineffective assistance where he failed to conduct an investgation into the illegality of the agent's methods before conducting a deficient entrapment investigation. Then Mr. Bodnax failed to have a the forensic and psychological results available prior to the plea deadline, and in the case of the forensic results, available at all. Mr. Brodnax even went so far as to mislead the Petitioner about his privacy rights by citing Brugman, to make his job easier, so that he could work from home and not meet his client at the detention center. This is all deficient performance.

For all the above, Petitioner is entitled to an evidentiary hearing.

Respectfully submitted this 30 of April, 2024.

Petitioner will request Discovery in a sperate motion to be filed shortly.

Jason Steuart Hihn #52188-509
Coleman FCI Low
PoBox 1031
Coleman, FL 33521-1031