UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner,
v.
United States
Respondent

Case: 1:21-CR-167-RDA

The Honorable Rossie D. Alston, Jr.

MEMORANDUM IN SUPPORT OF PETITIONER'S 28 USC §2255 CLAIMS:
ANALYSIS OF PETITIONER'S EXHIBITS 9 AND 10
(US_V._Hihn_CAT1_File_Report-c.xlsx and Email Thread, respectively)

## I. Introduction

Petitioner argued in his §2255 motion that the was deprived of effective assistance of counsel when his counsel failed to file an exculpatory forensic report due to Counsel's mismanagement of the matter. Counsel stated in his Declaration ¶82 that this report would not have been exculpatory. Petitioner will now show that that statement is incorrect.

When Sensei Enterprises, the firm contracted to do the analysis and forensic report, requested more funs on June 23, 2022 (see exhibit 10) the request was forwarded to his family for collection. His family, having seen nothing at all in return for their initial funding demanded to see the data. (See exhibit 9.) Petitioner now presents his analysis of that data ans shows it to be exculpatory.

The files for count 2, the 18 USC §2252 charge are identified by number (the "#" column) in that file and this document. The "Path" column contains the "full path" showing where the file was found on the device.

## II. Cache Filenames

A cache is a collection of files that are managed by the computer without any knowledge of the owner/operator. For this reason prevailing caselaw does not include cache files. See United States v. Dobbs 629 F.3d 1199, 1201 (10th Cir., 2011) and United States v. Flyer 633 F.3d 911, 919 (9th Cir., 2011). The presence of files in a cache is not probative of guilt and are not to be used at sentencing. The following files from the exhibit all contain "/cache/" in the path which identifies them as residing in a directory used for caching purposes:
29, 29, 30, 31, 32, 34, 59, 60, 61, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 98, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 123, 124, 125, 126. (69 total files.)

III. Thumbnails

"Thumbnails are simply previews of digital images that are viewable without opening the digital folder in which the digital images are contained. United States v. McNerney 636 F.3d 772, 774 n.1 (6th Cir., 2011)" United States v. Keefer 490 Fed Appx 797, n. 3 (6th Cir., 2012) McNerney holds that thumbnail images do not count for sentencing purposes. McNerney is caselaw in the Fourth Chircuit by way of United States v. Price 711 F.3d 455 n. 4. "[O]ur holding brings us in accord with the Sixth and Eights Circuits. See United States v. McNerney [citation omitted]".

The following files all contain "/.thumbnails/" in the path which identifies them as residing in a hidden directory used for thumbnail purposes (note the "." makes the directory hidden from the owner/operator):
1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49,

50, 51, 52, 53, 54, 55, 56, 57, 58. (51 total files.)

IV. BDSMLR Images

There are 17 files that are prefixed with "bdsmlr-". These files were saved as they were named by the BDSMLR.com site. The site is an adults-only microblogging site that arose after Yahoo!, Inc acquired Tumblr.com and changed the Terms of Use (TOU) to prohibit adult content. The BDSMLR.com TOU is filed as Exhibit 2. This TOU prohibits all illicit content in no uncertain terms. In acquiring files from the site, Peitioner believed that the site would not be hosting illicit content in violation of its TOU, and therefore would be legal content. Rehaif v. United States 204 L.Ed. 2d 594 __ US__ (2019) requires that the accused to know what he was acquiring was illicit and that the government is required to prove that the Paccused knew what he was acquiring was illicit. Because the Petitioner cites the TOU, it cannot be shown that that he "knowingly" possessed the allegedly illicit images. "Rehaif announced a new substantive rule that applies retroactively on collateral review." United States v. Waters 64 F.4th 199 (4th Cir., 2023). Those files are: 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143. (17 total files.)

V. One Deleted File

The exhibit contains 1 file with "DELETED" in the name, but a size of zero meaning there is no picture content in it. Petitioner believes this to be not a file included by the government. The file number is 62.

VI. "Virtual" Files

The government identified two files in a folder named "SHC" which was used

exclusively for images of "virtual" content, which are legal under Ashcroft v. Free Speech Coalition 535 US 243, 152 L.Ed. 2d 403, 122 SCT 1289 (2002). These files are "virtual" images: 63, 64.

VII. Remaining files

This leaves just files 33, 106, and 122. Petitioner still asserts that these files are either 1) miscategorized as illicit, or 2) Petitioner did not know they were illicit. Petitioner highly suspects that they are virtual images that had not yet been moved to the virtual folder.

VIII. Email Thread (Exhibit 10)

The petitioner cites the August 11 email from Phillip Depue in the thread as the definitive proof that his Counsel mismanaged the forensic report effort. In that message Mr. DePue states "The scope of work in this matter did not include an expert report." In order for Counsel to adequately make the point in court, he would have to file the expert report with the court, following the Federal Rules of Evidence. Over four months after Petitioner's sentencing his Counsel learned that he failed to contract for phases 3 and 4. The instruction to Mr Brodnax to obtain this data was given on November 10, 2021 before they left the United States Attorney's Office. Five months later, the data was still not in front of the court. Counsel delayed the start of the effort until February 1, 2022. Data collection did not happen until March 16-17, 2022. This matter was entrusted to him by his client and he failed to have the report filed as he promised to his client. This proves that Petitioner received Ineffective Assistance of Counsel (IAC). Petitioner still asserts that they were only given the results on April 7, 2022, the day before sentencing. If the results were presented on March 30, as

contended by Mr. Brodnax, then there would have been time for the report to be completed. If it is contended that there would not have been enough time, then that is still ineffective assistance of counsel. Given the facts presented here, there is absolutely no reason why Petitioner would not have wanted the report filed. It would have dropped his sentencing several tiers under USSG 2G2.2.

If counsel had done as he was instructed to do on November 10, the report would have allowed Petitioner to identify the three files and decide not to plea guilty, which would have taken it to trial, or the government could have dropped the count given the evidence. Under current interpretation, the Petitioner is not getting First Step Act Earned Time Credits towards his release as a result of the §2252 conviction, which will lengthen his incarseration by over a year, potentially three.

IX. Conclusion

Petitioner has shown that the forensic evidence prevents a very different picture than what the government has put forward. Petitioner's counsel was ineffective at getting the proper sentence under established law. Counsel promised a report and failed to file it. Petitioner has shown that with that report, the outcome would have been different, and is therefore entitled to a ruling of ineffective assistance of counsel.

Respectfully submitted this 30 of April, 2024.

Jason Steuart Hihn 52188-509
Coleman FCI LOW
PoBox 1031
Coleman, FL 33521-1031