FILED
MAILROOM
SEP 30 2024
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner,
v.
United States
Respondent

Case: 1:21-CR-167-RDA

The Honorable Rossie D. Alston, Jr.

MOTION TO EXPAND THE RECORD

Jason Steuart Hihn proceeding pro se, respectfully requests leave from the court to expand the record in the above-styled action pursuant to Rule 7 of the Rules covering 28 U.S.C. 2255 proceedings.

I. Background

On April 3, 2023 Petitioner filed his inital 28 USC 2255 action. That initial filing contained two exhibits, Exhibit 1, the contract with Sensei Enterprises and Exhibit 2, the BDSMLR Terms of use (TOU). The government later filed a response and Petitioner filed a reply to that response. In the time since his initial filing the Petitioner has filed 8 addictional exhibits. Petitioner now requests that his exhibits be entered onto the record.

II. Argument

Rule 7 of the Rules Governing 2255 proceedings is a "simplifying proceedure" designed to "minimize the burden to all concerned" in the fact development process. Murray v. Carter 477 US 487,487 (1986) A process that can save the parties time and money. See Ward v. Hall 592 F.3d 1144, 1159 (11th Cir. 2010).

A petitioner may attach to the request "letters predating the petition, documents [and] exhibits" for consideration of an expansion of the record. R. Gov. 2255 Proc. 7(b). Prior leave from the court to attach the documents is not required. See Brian R. Means, Federal Habeas Manual 2021, section 5:10. And only "[i]f the judge directs the record expanded" must he "give the party

against whom the materials are offered an opportunity to admit or deny their correctness." Mathis v. United States 2018 US Dist. Lexis 230395 *3 (M.D. Fla, 2018) (quoting R. Gov 2255 Proc. 7(c).

Petitioner requests leave to add the records at this juncture. Petitioner is aware that because his "conviction is [now] final, he may [only] collaterally attack that conviction under 2255... and then only on a subset of legal errors that pose great Constitutional harm." Maye v. United States 2018 US Dist Lexis 241883 *14 (M.D. Fla. 2018) (Covingto9n, J.) Moreover, "[if] collateral relief eludes him," Petitioner understands that "[each] layer of subsequent review" beyond this point "narrows the avenues for relief." and will create "new and significant procedural and substantial hurdles." Id. In other words, the 2255 petition is his final opportunity to obtain meaningful relief. As such, Petitioner is keen to ensure the Habeas record is fully developed prior to disposition.

III. The Evidence

1. Exhibit 1 is the contract with Senei Enterprises for their forensic investigation to obtain the full path names, filenames, checksums and permissions. It shows an execution date of February 1, 2022, after the Petitionr plead guilty, dispite his insistence to have it completd prior to accepting the plea deal.

This is probative of his Ineffectice Assistance of Counsel (IAC) claims.

2. Exhibit 2 is the BDSMLR.com Terms of Use (TOU) which forbids illicit content on the site. The files named with a "bdsmlr-" prefix (See Exhibit 9) were named by the site as such when they were acquired from the site. Under Rehaif v. United States 139 SCT 2191, 204 L.Ed. 2d 594 (2019) the scienter requirement applies to both the verb and the noun.

This is probative of his Actual Innocence claims and his IAC claims.

3. Exhibit 3 is the Wickr "Agreement to the Terms of Use". These TOU forbids certain types of conduct which the agent engaged in. It forbids in part.
i) circumvention of its privacy features, which the agent did by pointing an external camera at the device and recording the conversation ,
ii) it is for "personal or internal buisiness use" which the agent did not use it for. She used it for official government use, but did not comply with the government users provisions either.
iii) impersonation, which the agent did by assuming abother identity for the purposes of the conversation.

The agent's use of the Wicker application and services in violation of the TOU opens the convictions to collateral attacks: 1) it violates the Internet Crimes Against Children Task Force (ICAC TF) Operational and Investigative Standards (OIS) (See Exhibit 7, section 9), 2) a violation of Brady v. Maryland 373 US 83, 10 L.Ed. 2d 215, 83 SCT 1194 (1963) and progeny by not disclosing "Giglio" information. See Giglio v. United States 405 US 150, 154, 31 L.Ed. 2d 104, 92 SCT 763 (1962), and 3) a violation of 18 USC 1030 - the Federal Computer Fraud and Abuse Act, among others.

The document also is probative of his IAC claims because his counsel was asked to lookinto the legality of the recorded chats and failed to perform an investigation, and raise these issues in court.

4. Exhibit 4 are the portions of the conversation in which Petitioner has identified unlawful entrapment tactics by the agent. These tactics are prohibited by the Constitution and the ICAC TF OIS (Exhibit 7, section 13).

This document substantiates his claims of Entrapment and IAC.

5. Exhibit 5 is the vehicle inventory report created by the Federal Bureau of Investigation recording a video recording device in his vehicle.

This document is probative of his actual innocence claims.

6. Exhibit 6 is the filing containing the errors and duplications found in the illegally recorded Wickr conversation which shows the document has been edited .

This is probative of Petitioner's Ineffective Assistance of Counsel (IAC) claims because he made no attempt to have the document corrected or suppressed.

Exh.7. Exhibit 7 is the Government document titled "Internet Crimes Against Chlidren Task Force - Operational and Investigative Standards" (ICAC TF OIS). The agent violated a standard of section 9 and most, if not all, of section 13 which details mandated engagement tactics.

This document in conjunction with exhibit 4 (the chat excerpts) is dispositive of the collateral attack on the agent's conduct. It also is dispositive of the collateral attack of a Brady and progeny violation. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others actiing on the government's behalf in the case, including the police." Kyles v. Whitley 514 US 419, 131 L.Ed. 2d 490, 115 SCT 155 (1995) (in discussing Bagley material.)

8. Exhibit 8 is the Affidavit by Bonnie Burkhardt who conducted and investigation after Petitionr was sentenced.

The document is dispositive of Petitioner's claims of IAC. It shows an ineffective effort at investigation by Petitioner's counsel to investigate the legality of the chats and their recording and of lack of knowledge regarding entrapment cases, among others. For example, United States v. Poehlman 217 F.3d 692, 701 (9th Cir. 2000).

9. Exhibit 9 is the list of filenames with full paths that Sensei Enterprises was contracted to obtain for the files the government had identified as illicit. As Petitioner insisted to his counsel, he did not knowingly possess the vast majority of the files the government identified, and the ones he did

knowingly possess were either not illicit or were not knowingly illicit by way of Rehaif, supra. Under Fourth Circuit case law which includes United States v. Dobbs 629 F.3d 1195, 1201 (10th Cir. 2011), United States v. Flyer 633 F.3d 911, 919 (9th Cir. 2011), United States v. McNerney 636 F.3d 772, 780 (6th Cir 2011), the vast majority of the files should not have been included in the count, and this increased Petitioner's punishment under the sentencing guidelines for both quantitative and qualitative enhancements.

This document is dispositive of seceral claims:

i) Petitioner received IAC because his counsel failed to file the evidence with the court and invoke established Fourth Circuit case law, not just at sentencing but prior to having his client plead guilty.

ii) The proceeding is subject to collateral attack because this evidence is esculpatory, or at least potentially esculpatory and is required to be provided by the government in a timely manner after it is discovered by the government under Brady(supra).

iii) If this information had been provided prior to pleading guilty, Petitioner would not have pled guilty.

The Petitioner and his counsel reviewed the images in question on November 10. 2021 and the prosecution still had not disclosed the full paths and permissions bythe time the first Plea Agreement deadline came, orby the extended deadline. We can therefore ascertain that the prosecutor had no intent to comply with their disclosure obligations. "[I]t became clear that a defendant's failure to request favorable evidence did not leave the Government free of all obligations." Kyles v Whitley, supra. "[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." Id. When the prosecution agreed with Petitioner's counsel to defer the number of images until sentencing in

April of 2022, it had material notice to the dispute and absolutely had a disclosure obligation.

iv) This material directly contradicts Brodnax's Declaration PH69, as the document contains the result of the Electronic Discovery processing phase. Even the Petitioners original complaint shows this by his knowledge of "22 files". This evidence also directly contradicts his PH82 stating that "many of the images were in locations consistent with user activity and not automatic downloads, such as non-default subfolders, which the government could argue showed organization and therefore, knowledge of the user. Thus any expert report would not have been helpful to the notion that Petitioner was unaware of the images." Rather, what this document does show is that the vast majority of the files were either in cache directories (with extremely long numeric filenames, which on a highly technical note are 128-bit random numbers, which counters the "user activity" theory) or a hidden ".thumbnails" directory that the user would have no knowledge of, which Senei attributed to default software installed on the device. Petitioner also points out that just because the government "could argue" does not indicate that it would prevail. Counsel's job is to argue, but he shirked his duty to zealously defend his client at the slightest "could argue" controversey. It was not until long after sentencing that Petitioner finally got to see the full paths to the filenames. Mr. Brodnax's claim that "Petitioner viewed documents on the shared screen which were produced by Senei's forensic analysis." Which is it? Did Senei do the Electronic Discovery processing, ot did it not, as Mr. Brodnax claims in his PH69? Mr. Broadnax is caught in a contradiction. Did he have these documents to file but fail to file them, or did he not have the documents but somehow show them to Petitioner? The truth is that no Senei documents were shown to Petitioner.

Had these documents existed, counsel would have been justified in invoking Dobbs, Flyer and McNerney (supra). Petitioner knows what he knowingly possessed. He did not pay for a useless forensic report out of principal. He pleaded guilty because he was sure of his exhonoration. This document supports that belief.

10. Exhibit 10 is an email thread between Mr. Brodnax, Sensei Enterprises, and Mr. C. Hihn, Petitioner's father. This email conversation makes apparent that Petitioner and Mr Hihn were expecting to see a report at sentencing. (See July 21, 2022) to which Mr Brodnax seeks assistance from Phillip DePue of Senei. Mr DePue replies that the scope of work "did not include an expert report." If Mr Brodnax knew that already, why did he not reply to Mr Hihn with that response himself without involving Mr DePue? Furthermore, as Mr. DePue states in his August 11 message, "Drafting an expert report will incur costs and we cannot get started on the additional work before the outstanding balance is taken care of." Petitioner asserts that the VTC session of the results happened on April 7, the day before sentencing. Mr. Brodnax asserts that it was on March 30. (Brodnax Declaration PH69.) In either case, is 7 days enough time to take care of the outstanding balance and then wait for the production of the report? Could it be proofed and approved in that time, and still meet the filing deadline with the court? Petitionr asserts that it is not. Petitioner asserts that a report was the plan all along and Mr. Brodnax mismanaged that effort and is now claiming it would not have been useful in order to cover for his mismanagement, which is IAC.

This document is probative of Petitioner's IAC claims.

IV. Conclusion

The exhibits Petitionr filed in this case, which he now seeks to have added to the record substantiate his claims of Due Process violations, Ineffective Assistance of Counsel, and Actual Innocence claims. Some of these exhibits

dovetail in support of each other, like exhibits 3 and 7 (Wickr TOU and ICAC TF OIS, respectively). All these documents are material to Petitioner's claims.

Based on the above, Petitioner respectfully requests the evidence filed as exhibits 1 to 10 to be added to the record, and that this court provide an opportunity for the United States to respond.

Respectfully submitted this 23 of September, 2024.

Jason Hihn #52188-509
Coleman FCC Low
PO Box 1031
Coleman, FL 33521-1031

**CERTIFICATE OF SERVICE**

I, Jason Steuart Hihn, sui juris, proceeding pro se, certify that the foregoing is true and correct, and made with my firsthand knowledge pursuant to the penalty of perjury, pursuant to 28 U.S.C. §1746(1), that on the date affixed below, I did forward to the prison authorities for mailing,[1] my

Motion to Expand the Record

for forwarding to the Albert V. Bryan U.S. Courthouse 401 Courthouse Square, 2nd Floor, in Alexandria, VA 22314-5704. Said mailing was properly addressed and did contain the proper amount of pre-paid postage affixed thereto.

It appears that the parties to this action are registered with the CM/ECF Electronic Docketing System, therefore as I am proceeding Pro Se, I ask for service by that means also.

Respectfully submitted this 23 day of September, 2024.

9589 0710 5270 1605 2067 26
Certified Mail Receipt

9590 9402 1250 5246 4194 09
Return Receipt

By: [signature]
Jason Steuart Hihn, Pro Se
Fed. Reg. No. 52188-509
Federal Correctional Complex - LOW
P.O. Box 1031
Coleman, Florida 33521-1031

1 Under the Prison Mailbox Rule, a pro se petitioner's pro se filing is deemed filed when it is delivered to the prison authorities for forwarding to the Clerk of the Court. Huston v. Lack, 487 U.S. 266, 268 101 S. Ct. 2379, 101 L.Ed.2d 245 (1988).