FILED
MAILROOM
JUL - 1 2025
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner,
v.
United States
Respondent

Case: 1:21-CR-167-RDA

The Honorable Rossie D. Alston Jr.

EXHIBIT 11

Affidavit of Charles S. Hihn III
June 16, 2025
4 Pages

Affidavit_June 16, 2025

Title: Affidavit in Reference to Jason S. Hihn

Affiant Information:
Charles S. Hihn III
Address: 18426 Gunpowder Rd., Hampstead, Maryland 21074
Relationship: Father of Jason S. Hihn
Training: Masters Degree in Applied Information Technology, including digital forensics. Post MS degree training in mobile device forensics.
Professional Experience: Engineering and Information Technology support at Honeywell International Inc., Raytheon Technology Corp., General Dynamics Corp. and as a Contractor to the National Security Administration.

Opening Sentence:
This affidavit is in support of Jason S Hihn's 2255 claim of inadequate defense and outlines the facts as they transpired.

Statement of Facts:

1. 10/1/2021: I requested the following actions and content. This also informed Pleasant Brodnax of my training in digital forensics. This also alerted Pleasant Brodnax of the time critical nature of this information.
   "With three months left till Jason's trial I feel it is time I start looking into the evidence with a critical eye. Can you please request the following. I doubt they are willing to turn any original items over to you for analysis but your should ask.
   1.1. A list of the tools with version numbers including patches and updates used to perform digital forensics on all media to include phones, camera, memory and storage devices.
   1.2. A list of tools used to create forensic copies of digital media.
   1.3. Two copies of all forensic copies of digital media.
   1.4. A list of the hash algorithm with version numbers including patches and updates.
   1.5. A list of hashes for all copies of forensic copies of digital media.
   1.6. A list of all hardware such as computers, motherboards, RAM, hard drives, flash drives, interfaces, cables, networking equipment, etc. to include the manufacturer, operating system, firmware version, patches and updates.
   1.7. A detailed list of procedures used to forensically create copies of the digital media.
   1.8. A detailed list of procedures use to forensically exam the digital media.
   1.9. A detailed list of procedures used to forensically analyzed the digital media.
   1.10. A detailed list of all files and their hashes and which hash algorithm was used.
   1.11. A list of the equipment used to conduct the pre arrest chat sessions to include computers, motherboards, RAM, hard drives, flash drives, interfaces, cables, networking equipment, phones, tablets, etc. to include the manufacturer, operating system, firmware version, patches and updates.
   1.12. A list of all pre-arrest hardware such as computers, motherboards, RAM, hard drives, flash drives, interfaces, cables, networking equipment, cameras, files storage

devices and to include the manufacturer, operating system, firmware version, patches and updates used to generate images sent to the defendant.

1.13. Digital and hard copies of all images they sent including the file hashes and the algorithm used including the version of the hash generating software.

1.14. A listing of software used to generate the images they sent.

The goals here are to obtain everything they have, everything they used, and if needed to build an identical forensic environment using their procedures. I suspect they have used OpenText Encase forensic software as apposed to open source tools. But they will have to tell us.

https://security.opentext.com/encase-forensic

I have thought about getting certified in the Encase tool. My forensic training has been in using Free Open Source Software (FOSS) . The course I took was designed and taught by one of the elite at the National Security Agency (NSA) while earning my MS at Towson University. I just hope it helps."

2. 10/4/2021: I asked Pleasant Brodnax to provide me with the source of the images Jason sent to the recipient of the chat. Nothing was returned. It is obvious from the chats that images were a link to an adult content website that forbids child pornography.

3. 10/7/2021: I sent the following to Pleasant Brodnax. "I have just started the analysis of the text messages in the chat sessions.
   As expected they have redacted the identity of the agent. I think we should use a designation that paints the texter in a negative light. Any suggestions.

   1. The conversation seems to have started earlier than April 21, 2021 at 3:00 AM and the beginning is missing.
      1. When did the first chat begin?
      2. What are the contents of those earlier messages?
   2. You will want to confirm with Jason.
   3. You will want to request the earlier messages from the prosecutor if Jason confirms they started earlier."
      The earlier text messages were never delivered to me. These earlier messages were before the use of the secure chat requested by the agent.

4. 10/9/2021: I sent Pleasant Brodnax the following. "Could you put me under a consulting contract for 1 year for a valuable fee of one dollar ($1.00)? Wouldn't this allow me to act as your agent and afford me privileges similar to yours?" Pleasant Brodnax never sent a contract for my signature.

5. 10/22/2021: I sent Pleasant Brodnax an email that inquired about his ability to use Microsoft Excel and the progress of the transcription of the chat messages.
"I have two questions.

   1. Do you have access to Microsoft Office, specifically Excel?
   2. Do you want me to send the completed transcript or do you want incrementing installments?"

6. 11/8/2021: I informed Pleasant Brodnax that I had completed the transcription of the chat messages. Plus more time would be required to perform an analysis of the transcript. Additionally I stated the following.
"However, after reading all of the texts between the two parties it is clear that Jason never communicated with a minor. So how can charge one stand?

   Jason never agreed to pay the adult woman, Danielle K. Schnur, for Illicit Sex though payment was requested on page 133. This should make charge five shaky if not invalidate it.

   That leaves charges two, three and four. The images are needed to refute them. We can't rely on opinion.

   I am not a lawyer but do you see these points?

   I'll be sending the completed transcript later this week though a full analysis will take some time."

7. 11/22/2021: I asked Pleasant Brodnax the following questions that remain unanswered.

   7.1. 1. Have you been able to obtain any of the images Jason sent?

   7.2. At least two images might be discoverable on BDSMLR.com.

   7.3. Has Jason provided any account information for BDSLMR.co?

   7.4. Jason told me you may have his account information.

8. 12/6/2021: I sent Pleasant Brodnax the transcript of the chat messages. And this question." Will Jason ever get a chance to apologize and explain his actions."

9. 12/17/2021: I sent the following question to Pleasant Brodnax.

   9.1. "Jason was wondering what are the legal requirements to record the phone conversation, as he was in Maryland which has a consent law. Did they legally record the conversation?"

   9.2. Can you explain it to him? I would be interested as well."

10. 12/17/2021: Jason under duress by the prosecution and persuasion or coercion of Pleasant Brodnax signed the plea agreement prior to the receipt of any exculpatory facts or information. This before a full forensic investigation of Jason's phone, sentencing report, examination by Dr. Berlin, receipt of information and materials requested in earlier emails.

Post Sentencing

11. 6/23/2022: Received an invoice from Sensei Enterprises. This was an additional amount above the originally quoted forensic examination of one of the phones held by the FBI. At this time, no forensic report had been delivered to me.

12. 11/15/2022: Received two Excel workbooks representing the listing of files on Jason's phone. No JPEG, bitmap or other full image files were found. This may have been exculpatory information that should have been delivered by the prosecution or Sensei Enterprises prior to the execution of a trial or plea agreement. This information was requested in October 2021. Over one full year before delivery. Sensei Enterprises performed their forensic examination on March 17/2022. Well after the plea deal dead line and the proposed trial date.

13. 11/15/2022: I asked Pleasant Brodnax stated the following concerning the files provided by Sensei Enterprises. "These are the reports prepared by Sensei. They were not helpful to the sentencing argument." However I found them to be quite important though delivered too late.

14. 11/15/2022: I requested Pleasant Brodnax provide the listing of files he received from any report provided by Sensei Enterprises.

15. 11/16/2022 I received two files which listed the files found by Sensei Enterprises.

    15.1. Pleasant Brodnax wrote, "They were not helpful to the sentencing argument."
    15.2. This information was requested in October 2021, prior to the planned trial date. It was requested and needed for the affirmative defense, not for a sentencing argument.

Confirmation of the above events.
I, Charles S. Hihn III confirm and affirm the above email content and events are true and factual.

Charles S. Hihn III

Charles S Hihn III