FILED MAILROOM
FEB 12 2026
CLERK U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jason Steuart Hihn
Petitioner
v.
United States
Responent

Case #1:21-CR-167-RDA

The Honorable Rossie D. Alston, Jr.

MOTION TO SUPPLEMENT THE RECORD
BASED ON NEW EVIDENCE
Fed. R. Civ. P. 15(d)

Petitioner Jason Steuart Hihn, pro se, requests permission from this court to supplement the record with new evidence of egregious government misconduct meeting the exceptionally high bar of "fraud upon the court" and exposing a conspiracy that has been perpetuated by the Department of Justice (DOJ) on the public and in the courts of this nation for over a decade. The DOJ has been deliberately misrepresenting its investigation standards to make prosecutions easier and violations of the true standards are the inception of the investigation into Petitioner. These scandalous revelations follow from an affidavit and supporting exhibits in a new case in the Middle District of Florida, Cabezas v. United States, #6:22-CV-65, filed December 10, 2025. This new evidence is germane and dispositive to Petitioner's case as well. Based on this new evidence Petitioner asserts the government misrepresented the ligitimacy of the investigation against him since its inception and had he had known of the impermissible conduct, he never would have pled guilty.

## I. Motion to Supplement

Petitioner moves the court for leave to supplement his complaint pursuant to Federal Rule of Civil Procedure 15(5) stating:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defectivein it stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time. A supplemental pleading differs from an amended pleading because a supplemental pleading relates to matters occurring after the filing of the initial complaint, while and amended pleading relates to a matter occurring prior to the filing of the initial complaint. Franks v. Ross, 313 F.3d 184, 198, n.15 (4th Cir., 2002)(citing Fed. R. Civ. P. 15(d)). Nonetheless "[t]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." Id. Leave to amend is freely granted unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 425 (4th Cir., 2006)

See Claims v Lundbeck LLC, 2024 U.S.Dist LEXIS 1510, 51-52 (4th Cir., 2024).

## II. The New Evidence

The Cabezas case contains a new affidavit and supporting exhibits from Mrs. Bonnie Burkhardt dated December 9, 2025 and these are attached to this motion. She evinces a scheme where the DOJ maintains the Internet Crimes Against Chlidren Program Operational and Investigative Standards document (OIS) and produces and distributes and adulterated version. The OIS govern investigations as was done in Petitioner's case.

In that affidavit, ¶9, she states that two versions of the OIS exists for a given date. The true, "internal DOJ" version contains a 1-page section titled "Mandated Proper Tactics and Rules of Engagement" (ROE) while the adulterated version contains a table of contents (TOC) and lacks the ROE section. She also described receiving a redacted set based on the TOC version from a FOIA

request. In the version applicable to Petitioner, the date of the document is October 1, 2018, and the ROE section number is 13.

In ¶12, she states receiving the "internal DOJ" version in December 2023 from a whistleblower from within the DOJ, which is the first time the ROE section has been available outside the government.

In ¶14 she states only the ROE version contains the statutory reference to 34 U.S.C. §21101-21131.

In ¶24 she reviews training materials from Bellevue, Washington and Wisconsin. These training materials lack the ROE section.

This new evidence reveals a scheme where the authentic version is adulterated to produce a less restrictive version. The DOJ seal, titles, page counts, and dates are kept the same between the versions, and the difference of lacking a ROE section is substituted by a TOC. The adulterated version is also scrubbed of references to the ROE section and the statutory citations. The adulterated version is otherwise indistinguishable from the authoritative version. This misled Mrs Burkhardt into believing she had the real version when she compared the FOIA response to the versions she found online. It was only in December 2023 that she received the whistleblower version containing the ROE section, and she received versions for "6 different years". This exposes a concerted effort since at least 2012 to deceive the public and the courts as to the investigative limits of agents. The training manuals from Washington and Wisconsin, and the prosecutions of Mr. Cabezas and Petitioner demonstrate that this is a pervasive national scheme of only following the adulterated version and ignoring the ROE.

These revelations stand in stark contrast to Agent Schnur's affidavit in support of the Criminal Complaint, which Petitioner now asserts contains material mistatements of fact which puts the prosecution in such a new light

as to undermine the entire prosecution.

In Agent Schnur's affidavit, ¶1, she states: "I received training in investigative techniques related to crimes involving the sexual exploitation of children, including surveillance techniques, undercover activities..."

In agent's ¶5 she states: "On or about March 23,2021, a Special Agent with the FBI, acting in an undercover capacity (the "UC") from the Eastern District of Virginia, posted on a publicly viewable web forum known to the UC as an online location often frequented by individuals interested in the sexual exploitation of children[1]. The UC posted a message indicating that the UC was interested in ..." The footnote [1] reads: "The name of the web forum is known to law enforcement but is intentionally omitted to protect the integrity of ongoing law enforcement investigations. The web forum is also used for legitimate, legal purposes."

These statements in her affidavit are now shown to be admitting impermissible government misconduct in relation to the ROE. The first occurrence of impermissible conduct was on March 23, 2021 because the UC created an adult profile on the adults-only website FetLife.com in order to post her message. ROE section 13.1 requires "Officers shall not use and are prohibited from using Online Dating Applications/Websites for consenting adults..." The UC also violated Section 13.3 "Law enforcement officers Shall not use and are prohibited from using adult profiles of the Age of 18 years or older..." Since FetLife.com is adults-only, it is impermissible conduct for the UC to have established a profile there for which to post a mesage with her contact information.

In agent's ¶6 she states that "On or about April 21, 2021, the UC received a message on the mobile messaging application from [Petitioner]." This was the beginning of the investigation involving Petitioner.

For a full accounting of ROE violations see Petitioner's earlier filing

"Memorandum of Giglio Violations Pertaining to ICAC Task Force Program Operational and Investigative Standards and Ineffective Assistance of Counsel" ("OIS memorandum") dated April 15, 2024, incorporated herein by this reference.

"We concluded that the officer's false affirmations constituted impermissible conduct and influenced the decision to plead guilty thereby rendering his plea involuntary. In our view, the case involved 'gross police misconduct that went to the heart of the prosecution's case' because the officer's 'deliberate lie' provided the foundation for the warrant that led to recovery of all evidence against the defendant." United States v. Garrett, 128 F.4th 583; 2025 US App LEXIS 3769 (4th Cir., 2025)(Quoting United States v. Fisher, 711 F.3d 460, 466 (4th Cir., 2013). In Fisher there was a warrant and in this case there was an improperly initiated investigation used to gather all the evidence used to convict. If Petitioner had known that the investigation was police misconduct from the start, he would have proceeded on a path to trial. The first step would be to move for the evidence gathered from the misconduct to be suppressed. If that had succeeded there would have been no evidence left for which to convict Petitioner since it all flows from that one and only poisoned branch. That effort would have led to a motion to dismiss for lack of evidence. If however the motioned to suppress failed, Petitioner points to his request to his counsel for an entrapment defense. This is documented in the Brodnax Declaration, ¶26 and footnote, where he lists the cases examined in evaluation of this defense. The agent's misconduct materially changes this evaluation because now there would be misconduct to discredit the government witnesses (the agent and the UC). These viable alternatives undermine confidense in the outcome.

III. Duty for the Government to Disclose

The Petitioner and his counsel relied on the government's promised endorsement

of the June 29, 2021 standing Brady order that what was on the record was legitimate and if not legitimate, that it would be corrected in a timely manner. "[A]busive prosecutorial discovery tactics may render a plea involuntary, even if it does not amount to a Brady violation, when the prosecutor's actions amount to deceit or lack of candor that materially affects the case against him." United States v. Shaffer Equip. Co., 11 F.3d 450,457 (4th Cir., 1993). "It is appropriate to remind counsel that they have a 'continuing duty to inform the court of any development which may conceivably affect the outcome of the litigation." Bd. of License Comm'rs of Town of Tiverton v. Pastore, 469 US 238, 240, 105 SCT 685, 83 F.ed. 2d 618 (1985) The Fourth Circuit has espoused its "confidence that a general duty of candor to the court exists in connection with an attorney's role as an officer of the court". Shaffer at 457. "The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation ([...]) the prosecutor's responsibility for disclosing known, favorable evidence raising to a material level of importance is inexcapable... since then, the prosecutor has the means to discharge the government's Brady responsibility, if he will, any argument for excusing the prosecutor from disclosing what he does not know about boils down to a plea to substitute tthe police for the prosecutor and even for the courts themselves as the final arbiters of the government's obligation to ensure fair trials." Kyles v. Whitley, 514 419 131 L.ed 2d 490, 115 SCT 1555(1985). The lack of disclosure regarding the improper conduct of the UC and the materially deficient statements by the agent violated Petitioner's due process rights, and renders his plea involuntary under Brady v. United States, 397 US 742, 90 SCT 1463,25 L.Ed. 2d 747. The government's actions during the pre-plea process evince a lack of

candor that deprived Petitioner of due process. "The government's nondisclosure was so outrageous that it constituted impermissible prosecutorial misconduct sufficent to ground the petitioner's claim that his guilty plea was involuntary." Ferrara v.United States, 456 F.3d 278, 293 (1st Cir., 2006) In other words, "[e]ven if the nondiclosure is not a Brady violation, it may be argued... that it made it impossible for [the defendant] to enter a knowing and intelligent plea." Mathew v. Johnson, 201 F.3d 353, 364 n.15 (5th Cir., 2000)

## IV. Fraud Upon the Court

"Fraud upon the court is not "garden-variety" fraud. Fox ex. rel. Fox v. Elk Run Coal Co. 739 F.3d 131, 135 (4th Cir., 2014). Rather fraud upon the court ordinarily involves "corruption of the judicial process itself." Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 986 (4th Cir., 1987). Although courts within this circuit recognize that "Fourth Circuit caselaw does not directly lay out the elements of fraud upon the court" the Fourth Circuit has established certain "guideposts". In Re. Harlow v. Wells Fargo & Co. 2022 Bankr LEXIS 352. The Fourth Circuit has instructed that "[t]he doctrine of fraud on the court is a principal to narrowly be constructed and applied, and it embraces only that species of fraud which does, or attempts to, defile the court itself, is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." Asterbai v. Lietess, 176 F. Appx. 426, 430 (4th Cir, 2006)(unpublished)(citations and internal quotations omitted) "[F]raud committed by and officer

of the court actively participating in court proceedings renders the judicial machinery [unable to] perform in the usual manner." Great Coastal Exp. Inc. v. Bhd of Teamsters, Chauffeurs, Warehouse-men & Hlpers of Am., 675 F.2d 1349, 1356 (4th Cir., 1982).

Moreover fraud in these circumstances "cannot necessarily be expected to be exposed by the normal adversarial process." Id at 1357. In the instant case fraud upon the court is committed by the government. The DOJ established two sets of documents, one with a ROE and one without. This is an intentional deception to subvert the adversarial process. Mr. Cabezas' prosecution started in Florida in 2017 and Peitioner's started in Virginia in 2021, both because of the same subterfuge. Mrs Burkhardt obtained whistleblower versions for six years going back to at least 2012, now 13 years ago. This suggests hundreds if not thousands of prosecutions across the nation over that period. The government wanted the public, the defense, and the courts to know nothing about the ROE section. It took a whistleblower to finally divulge the true version which should have been supplied to the defense. The DOJ arrogated its prosecutors the legal and moral authority to decide what truth became public and, thereby what fate awaited Peitioner. The DOJ substituted itself for the judge, jury, and the defense, in effect making away with the fact-finding machinery. This subterfuge was designed with the notion that it would succeed, undetected and unimpaired. It is a readily repeatable template for renewal on future occasions. The conception and implementation of this scheme was intentional and calculated to deprive the defense of its right of confrontation. It has succeeded. It will

undermine the public's confidence in the judicial system and the credibility of the DOJ.

Petitioner and his counsel had no reason to disbelieve, and most importantly, no mechanism to fact check the government's misrepresentations when they were made. The government's misrepresentations therefore placed all the parties on a faulty foundation that influenced Petitioner and his counsel's understanding of the case. Furthermore, this disclosure that contained the information to correct the falsity occurred years after sentencing concluded, and was only provided by a whistleblower.

V. Ineffective Assistance of Counsel

It should be self-evident that the material misrepresentations and failed disclosures by the government cause Petitioner's counsel to give deficient performance. However counsel was also deficient because he failed to request the OIS, and even if the request had been filled by the adulterated version, would still have been deficient. Both versions contain section 9, "Work Environment and Equipment". Section 9.6 specifies: "Software shall be properly acquired and licensed." The "mobile messaging application" mentioned in Angent Schnur's ¶6 has license terms that forbid multiple elements of the UC's conduct. (See the OIS memorandum.) This left the UC unlawfully using the application in violation of Section 9.6. This alone would have given reason to have the chat evidence suppressed. But no effort was made by Counsel to check that the investigation conduct was within bounds for this type of investigation. Section 9.6 notwithstanding, the government in general cannot use software in violation of its license terms.

Failure to obtain the OIS --any version- or the mobile application's End User License Agreement- before the plea amounts to ineffective assistance of counsel. Had the request been made and fulfilled by even the adulterated OIS, at least Counsel would have tried to conduct and investigation and the fault would fall only on the government. However since there was no request, counsel demonstrably relied on the statements by the government to be materially correct.

VI. Conclusion

A reasonable defendant standing in Petitioner's shoes would not have pled guilty had they known the true situation that gave rise to his case. Petitioner cites police misconduct, prosecutorial misconduct, fraud upon the court, and ineffective assistance of counsel, all of which antedated his plea. These statements blocked Peitioner's ability to understand the case against him. And the uncorrected material mistatements of fact were material to his decision to plead guilty. Therefore under Fisher he is entitled to vacate his pleas.

VII. Request for Relief

For the reasons stated above, the Petitioner requests that this new evidence and accompaning arguement be supplemented to the proceeding and as a consequence, that his plea agreement and convications are vacated. Petitioner also requests a finding of ineffective assistance of counsel.

VIII. Record on Motion

This motion is based on this document, the attached affidavit and exhibits of Mrs. Burkhardt dated December 9, 2025 from Cabezas

v. United States, Middle District of Florida case #6:22-CV-65, and the entire record of proceedings in this action.

Respectfully submitted this 31 of January, 2026.

Jason Steuart Hihn, 52188-509
Coleman FCC Low
PO Box 1031
Coleman FL, 33521