# Exhibit

# CC

**LIMITED OFFICIAL USE ONLY**
**LAW ENFORCEMENT SENSITIVE**

# Internet Crimes Against Children Program

# OPERATIONAL AND INVESTIGATIVE STANDARDS

# Definitions of Terms

## Applicability of Terms

Although some of the definitions below may be generally applicable to law enforcement, they are intended for use in the interpretation of these Standards. As such, where any term defined below is capitalized in these Standards, the Standards are referring to that term as defined below. By contrast, where any term defined below is not capitalized in these Standards, the Standards are referring to that term as it is used generally in the field of law enforcement.

**"Affiliate"** or **"Affiliate Agency"** is an agency that is working with a Lead Agency as part of a regional or State ICAC Task Force. An Affiliate has agreed in writing to adhere to these Standards.

**"Authorized Personnel"** are Members who themselves lack powers of arrest but have been authorized by their respective agency to participate in Investigations and are being supervised by Sworn Personnel.

**"Commander"** is the Member of a Lead Agency who has been designated by that Lead Agency and recognized by OJJDP as the leader of the corresponding Task Force.

**"CEOS"** is the Child Exploitation and Obscenity Section of the Criminal Division of the DOJ.

**"Crime"** is any offense (or group thereof) that involves (or involve) the exploitation/victimization of children facilitated by technology.

**"CVIP"** is the Child Victim Identification Project operated by NCMEC.

**"CyberTipline"** is a reporting mechanism operated by NCMEC that allows for the reporting of suspected Crimes.

**"Deconflict"** is a process whereby Members are able to submit Investigative information to each other and/or to ICAC-related databases in order to determine whether other Members or other law enforcement agencies have information concerning the same targets or Crimes.

**"DOJ"** is the United States Department of Justice.

**"Employee"** is a sworn or compensated individual, or any individual working under the direction and control of a law enforcement agency.

**"Equipment"** is any device or tool -- including but not limited to computers, phones, and online accounts and services -- purchased or obtained for use in ICAC-related matters.

**"ICAC"** is the Internet Crimes Against Children Program, a national program composed of state and regional Task Forces.

**"Images"** are visual depictions in any form (image or video/printed or digital) of child sexual exploitation as defined by federal and/or state statute.

**"Investigation"** is an investigation into a Crime. Likewise, "Investigate" "Investigating" and "Investigative" are used within the same context.

**"Investigative Persona"** - any identity established or created by an Employee to aid an Investigation. Excluding and Not Including Online Profiles Age of 18 Years Old and Older. Including and Not Excluding Online Profiles Age of 17 Years Old and Younger as provided for by sections 13.3 and 13.4 of these Standards.

**"Investigator"** is a Member who is a part of the Sworn Personnel of a Task Force.

**"Lead" or "Lead Agency"** is the law enforcement agency that receives the ICAC grant and is designated by OJJDP to act as the lead agency for the corresponding Task Force.

**"Member"** is a Lead or Affiliate Agency's employee who is either Sworn Personnel or Authorized Personnel and who has been designated to work on ICAC-related matters for his/her respective agency and Task Force.

**"National Initiative"** is any proposal that relies on the cooperation and resources of a significant number of Task Forces and, accordingly, has been approved by OJJDP.

**"NCMEC"** is the National Center for Missing and Exploited Children.

**"OJJDP"** is the Office of Juvenile Justice and Delinquency Prevention within the DOJ.

**"Supervisor"** is a Member who has been designated by his/her respective agency to supervise Investigations and other ICAC-related matters.

**"Standards"** are all of the provisions of these, the ICAC Operational and Investigative Standards.

**"Sworn Personnel"** are Members with powers of arrest.

**"Task Force"** is the Lead Agency and its Affiliate(s) (combined) as designated by OJJDP for a particular state or region.

## 1. Purpose of the ICAC Standards

These Standards are established by OJJDP to guide administration and operation of ICAC and its Members when working on ICAC-related Investigations and matters.

ICAC Members should make every reasonable effort to comply with these Standards. However, since many aspects of Investigations are dynamic and laws vary widely between jurisdictions – their genesis; methods for their evidentiary pursuit; and their application within court – it is difficult to anticipate every circumstance that might present itself. Thus, reasonable deviations from these Standards may occur depending upon various factors (e.g., emergency situations; timing constraints; accessibility constraints; resource constraints; technology constraints; perceived conflicts between the Standards and statutes, decisional law, and court orders; et cetera).

Should questions regarding the interpretation of these Standards arise or conflicts occur between these Standards and agency policies or law, the subject Commander faced with the issue shall seek the guidance of an OJJDP Program Manager. However, nothing in these Standards is meant to interfere with a Commander's or Supervisor's lawful tactical decision-making.

Commanders may supplement, but not contradict, these Standards in the written agreements they establish with their Affiliates to promote the effective operation of their Task Forces.

## 2. ICAC National Program

### 2.1 Mission of the ICAC Program

The Internet Crimes Against Children Task Force Program (ICAC) helps state and local law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children. This support encompasses forensic and investigative components, training and technical assistance, victim services, prevention and community education.

### 2.2 ICAC Background

The Internet Crimes Against Children Program (ICAC) is a national network of 61 coordinated task forces representing more than 3,500 federal, state, and local law enforcement and prosecutorial agencies. These agencies are engaged in both proactive and reactive investigations, forensic examinations, and criminal prosecutions. By helping state and local agencies develop effective, sustainable responses to online child victimization – including responses to child sexual abuse images (Images), The ICAC Program has increased law enforcement's capacity to combat technology facilitated crimes against children at every level.

The ICAC Program was developed in response to the increasing number of children and teenagers using the Internet and other technology, the proliferation of child sexual abuse images available electronically, and the heightened online activity by predators seeking unsupervised contact with potential underage victims.

Because ICAC Members understand that arrests alone cannot resolve the problem of technology-facilitated child sexual exploitation, the ICAC Program is also dedicated to training law enforcement officers and prosecutors, as well as educating parents and youth about the potential dangers of online activity.

## 3. Oversight of the ICAC Program

3.1 The oversight of the ICAC Task Force Program and the administration of ICAC grants is the responsibility of OJJDP. The oversight of each Task Force falls to its Commander. The oversight of each agency, both Lead and Affiliate, falls to its designated Supervisor.

3.2 Commanders shall ensure there are supervisory systems and protocols in place that provide for observation, documentation, and review of ICAC activity. Said systems shall comply with the principles of quality case management and shall ensure that ICAC activities comply with agency policies and these Standards.

3.3 Commanders shall ensure that each Member in his/her Lead Agency and each Supervisor of an Affiliate Agency receives a copy of the Standards.

> 3.3.1 Supervisors shall ensure that each Member in his/her Affiliate Agency receives a copy of the Standards.

3.4 Commanders shall submit all proposed National Initiatives to OJJDP prior to the start of the project.

> 3.4.1 OJJDP may suggest amendments to the original proposal following consultation with the presenting Commander and, as appropriate, other federal, state, and local entities.

3.5 Supervisors shall inform their Members about departmental or Task Force employee assistance programs and services available to them.

## 4. Selection and Retention of Task Force Members

4.1 When practicable during the selection process of Members, Commanders and Supervisors shall evaluate prospective candidates for work histories that indicate prior investigative experience, courtroom testimony skills, technical knowledge and ability, an ability to prudently handle sensitive information, a genuine interest in the protection of children, and an understanding of the effects that Members may experience when exposed to Images.

4.2 Commanders and Supervisors shall acknowledge the potential effects of Investigations and exposure to Images. When practicable, they shall attempt to mitigate the potential effects of the work using, for example, the following techniques:

- *Work environment considerations* – Commanders and Supervisors are encouraged to provide a physical location for the work environment that allows the Investigator to conduct discreet Investigations.

- *Work* flexibility – Commanders and Supervisors are encouraged to allow flexibility for Investigators and others who are exposed to Images (e.g., frequent breaks, having an open-door policy, etc.).

- *Educating colleagues* – Commanders and Supervisors are encouraged to teach their colleagues that the viewing of Images is serious and restricted.

- *Work with Mental Health Providers (MHP)* – In compliance with their agency guidelines, Commanders and Supervisors are encouraged to work with MHP to make recommendations for care of Members and to provide education and training designed to minimize the impact of Images.

- *Training* -- Commanders and Supervisors are encouraged to share or seek out best practices for minimization of the impact of Images and to promote attendance at trainings regarding methods used to minimize said impact.

## 5. Training

5.1 Carefully-managed Investigations conducted by well-trained Investigators are among the most effective techniques available to law enforcement for addressing Crime.

5.2 All national training curricula supported by ICAC resources shall be conducted consistent with the Standards and shall be approved by OJJDP.

5.3 Commanders shall ensure that nominees to attend any ICAC-sponsored national in-person training are current Members.

5.4 Task Forces may develop and deliver Task Force training. This training shall comply with the Standards and shall be approved by the Commander. All costs to develop and deliver the training shall be the responsibility of the Task Force or Affiliate providing the Task Force training.

## 6. Case Management

6.1 Commanders and Supervisors are responsible for determining Investigative priorities and selecting cases for Investigation in their respective agencies. Those determinations shall include an assessment of victim risk, jurisdiction, known offender behavioral characteristics, and the likelihood of securing the information necessary to pursue each Investigation.

6.2 Conventional boundaries often are meaningless in today's digital world where the usual constraints of time, place, and distance lose their relevance. These factors increase the possibility of Lead and/or Affiliate Agencies targeting other law enforcement personnel, Investigating the same target, or inadvertently disrupting an ongoing Investigation. To foster effective case coordination, collaboration, and communication, each Member shall make every effort to Deconflict all active Investigations.

6.3 Lead and Affiliate Agencies shall be subject to their respective agency's incident reporting procedures and case supervision systems. At a minimum, a unique identifier shall be assigned to each case.

## 7. Task Force Reporting Requirements to OJJDP

7.1 The reports described below do not replace the semi-annual progress report required by the Office of Justice Programs' Financial Guide.

7.2 Commanders shall compile and submit a Task Force Monthly Performance Measures Report to the OJJDP-designated location before the end of the following calendar month.

7.2.1 Affiliates shall report their activity to their respective Commander by the 10th of each month using the ICAC Monthly Performance Measures Report.

7.3 Commanders shall compile and submit an annual report which details each of their Affiliates. The report shall be submitted in a method determined by OJJDP and shall include the following information:

7.3.1 The name of each Affiliate Agency.

7.3.2 The staffing level of each Affiliate including the number of Investigators, prosecutors, education specialists, and forensic specialists dedicated to Investigating and prosecuting Crime.

7.3.3 This ongoing annual report shall be submitted within 30 days of the end of the calendar year.

## 8. Investigations

8.1 Investigations shall be conducted in a manner consistent with applicable laws and constitutional requirements.

8.2 Only Sworn Personnel shall conduct Investigations.

8.2.1 Authorized Personnel acting under the direction and supervision of Sworn Personnel may participate in Investigations.

8.2.2 Members shall not approve, condone, encourage, or promote cyber-vigilanteism by private citizens. As such, Members shall not use unauthorized private citizens to proactively seek out Investigative targets.

8.2.3 The above section (8.2.2) shall not preclude the use of information related to a Crime provided by victims or public citizens who discover evidence (e.g., CyberTip reports, mandated reports from professionals, computer repair shop complaints, parental complaints, et cetera). Nor does it preclude the use of authorized over-hears or other similar investigative methods designed to further an Investigation.

8.3 Investigations shall be documented. Any departures from this provision due to unusual or exigent circumstances shall be documented in the relevant case file and reviewed by the Supervisor.

8.3.1 The retention, storage, security, and disposal of Investigative or case information shall be consistent with the subject agency's policies and federal and state law regarding same.

8.3.2 Access to Investigative case files shall be restricted to Authorized Personnel.

8.4 Members shall not electronically upload, transmit, or forward any Images.

8.4.1 Section 8.4 shall not prohibit the transfer of evidence between Investigators as provided for by sections 8.9 and 8.10 of these Standards nor shall it prohibit the submission of Images to CVIP as provided for by section 10.1 of these Standards.

8.5 Visual depictions of any identifiable person used to represent an investigative or any identifiable minor, shall be only those of an Employee who has given his or her written consent and only if that Employee was at least 18 years old at the time of consent. Further, the depictions themselves may be of that Employee under the age of 18. Excluding and Not Including Online Profiles 18 years of age and older. Including and Not Excluding Online Profiles 17 years of age and younger as provided for by sections 13.3 and 13.4 of these Standards.

8.6 Absent prosecutorial input to the contrary, during online dialogue, officers shall allow the Investigative target to set the tone, pace, and subject matter of the online conversation. Excluding and Not Including Dating Applications and Websites for Consenting Adults. Excluding and Not Including Escorting Applications and Websites for Consenting Adults. Excluding and Not Including Prostitution Applications and Websites for Consenting Adults as provided for by sections 13.1 and 13.2 of these Standards.

8.6.1 The above section (8.6) shall not be construed to prohibit Investigators from performing any of the following activities when initiating or conducting an Investigation: (a) posting information including visual depictions (image or video/printed or digital) to establish an online presence, (b) placing advertisements or posts, or (c) sending messages. Again Excluding and Not Including Dating Applications and Websites for Consenting Adults. Excluding and Not Including Escorting Applications and Websites for Consenting Adults. Excluding and Not Including Prostitution Applications and Websites for Consenting Adults again as provided for by sections 13.1 and 13.2 of these Standards.

8.6.2 Members shall familiarize themselves with relevant state and federal law, including but not limited to those regarding the defense of entrapment, and should confer with relevant prosecutors for legal consultation, as needed as provided for by section 13.7 of these Standards.

8.6.3 Members planning large-scale (multi-target) operations shall advise the Commander and shall consult relevant prosecutors regarding the operation.

8.7 The examination of digital storage devices shall be performed consistent with the subject agency's protocol.

8.8 Images shall be maintained pursuant to the subject agency's policy.

8.8.1 Absent a court order specifically ordering otherwise, evidence containing Images shall not be released to any defendant or representative thereof.

8.9 Absent exigent circumstances, all Members' case referrals between jurisdictions shall include:

- Notification to and acceptance by the Commander(s) of both jurisdictions that are involved in the referral;
- A secure (i.e., digitally-protected) copy of the case file;
- An official Investigative report or affidavit containing case details; and,
- Documentation, preferably the original, of all legal process conducted and all compliance with same, especially those documents related to the issue of jurisdiction and identification of suspect(s).

8.10 The transfer of evidence containing Images among law enforcement shall be done in a secure manner.

## 9. Work Environment

9.1 ICAC Equipment shall be reserved for the exclusive use of its Members, and shall be used in accordance with their respective agency's policies.

9.2 When practicable, Equipment which might be used in undercover aspects of an Investigation shall be purchased covertly.

9.3 No personally-owned Equipment shall be used in Investigations.

9.4 Software shall be properly acquired and licensed.

9.5 Investigations shall be conducted in an approved work environment as designated by a Commander or Supervisor.

## 10. Victim Identification

10.1 Identifying child victims of Crime is a critical element of the ICAC Program. DOJ and OJJDP require the Lead Agencies and Affiliates to submit Images to CVIP as a means to improve child victim identification. Absent exigent circumstances, Images shall be sent to CVIP pursuant to NCMEC's standards regarding same. In addition, Lead Agencies and Affiliates are encouraged to collaborate with NCMEC in their effort to identify children depicted in Images.

10.2 Absent exigent circumstances, victim-identifying information shall be protected from public disclosure pursuant to the protections set forth in federal and state law.

10.3 Lead Agencies and Affiliates shall adhere to local, state, and federal laws regarding mandated reporting, victim notification, and victim assistance.

## 11. Public Awareness and Community Outreach

11.1 Public awareness activities and community outreach are a critical component of ICAC. Lead and Affiliate Agencies shall foster awareness and shall provide practical relevant guidance to children, parents, educators, and others concerned with child safety.

11.2 Presentations to school personnel, parents, and community groups are excellent ways to promote awareness. These presentations shall not depict identifiable victims nor shall they use pornographic or sexually explicit images. Presenters shall not discuss confidential Investigative techniques.

11.3 Members shall not endorse any product or service without the express written consent of an OJJDP Program Manager. While making public presentations, Members may indicate a preference for a product or service, but, where done, shall avoid an implicit endorsement and shall include alternatives in the presentation.

11.4 Materials and presentations shall be consistent with ICAC's mission and background, as enumerated in Section 2 of these Standards.

## 12. Media Relations and Media Releases

12.1 Media releases relating to prosecutions, Crime alerts, or other matters concerning ICAC operations shall not include information regarding confidential Investigative techniques, and shall be coordinated, when applicable, with the law enforcement agencies involved with the subject Investigations, in a manner consistent with sound information management and sound media relations practices.

12.2 Commanders and Supervisors may speak to members of the media about their own agency's ICAC-related activities per the terms of their agency's policy on such media relations. No individual affiliated with ICAC may speak on behalf of the national ICAC Program without the express written consent of OJJDP.

12.3 Commanders shall inform their OJJDP Program Manager if approached by national media outlets about the national ICAC Program (as opposed to media seeking information about local activities) so that a coordinated national response can be prepared by OJJDP.

12.4 Information provided by Task Forces to the media shall be consistent with ICAC's mission and background, as described in Section 2 of these Standards.

## 13. Mandated Proper Tactics and Rules of Engagement

13.1 Law Enforcement Officers Shall not use and are Prohibited from using Online Dating Applications/Websites for Consenting Adults nor Escorting Applications/Websites for Consenting Adults nor Prostitution Applications/Websites for Consenting Adults.

13.2 Law Enforcement Officers Shall not use and are Prohibited from using Online Instant Messaging Chatrooms for Consenting Adults.

13.3 Law Enforcement Officers Shall not use and are Prohibited from using Adult Profiles of the Age of 18 Years Old and Older on Online Social Media/Social Networking Applications/Websites.

13.4 Law Enforcement Officers are Allowed to use and Shall only use Profiles of the Age of 17 Years Old and Younger on Online Social Media/Social Networking Applications/Websites.

13.5 Law Enforcement Officers when Setting Up an Online Internet Undercover Sting Operation are Mandated to ask for Permission in Writing via a Cooperative Agreement to said Social Media/ Social Networking Application's/Website's Legal Counsel/Legal Team for the Express Purpose of Conducting said Online Internet Undercover Sting Operation. Law Enforcement Officers Shall not Violate and are Prohibited from Violating the Terms and Conditions of the Online User Service Agreement of any and all Adults Only Oriented Applications/Websites because then they would be in Violation of Title 18 U.S.C. §1030 the Federal Computer Fraud and Abuse Act.

13.6 If Law Enforcement Officers Violate and Do not Honor the Liability Clause of the Internet Crimes Against Children Task Force Memorandum of Understanding and Violate and Do not Honor the Oversight Clause of the Internet Crimes Against Children Task Force Operational and Investigative Standards then they would be in Violation of Title 18 U.S.C. § 1961-1968 the Racketeer Influenced and Corrupt Organizations Act.

13.7 Law Enforcement Officers are Prohibited from Committing and Shall Not Commit Egregious-Outrageous Conduct, Entrapment by Cajoling, Compelling, Convincing, Enticing, Inducing, Luring, Persuading, Seducing, Tempting a person who Is Not Predisposed to Commit the Crime Nor Premeditating to Commit the Crime and if not complied with would be in Violation of Title 18 U.S.C. § 373 the Solicitation to Commit a Crime of Violence Act and in Violation of Title 18 U.S.C. § 2422 the Coercion and Enticement Act and in Violation of the Federal Elements of Entrapment from the United States Department of Justice Archives Manual Criminal Resource Manual Section 645.

**End of ICAC Standards**