# Exhibit

# EE

**LIMITED OFFICIAL USE ONLY**
**LAW ENFORCEMENT SENSITIVE**

# Internet Crimes Against Children Program

# OPERATIONAL AND INVESTIGATIVE STANDARDS

## Table of Contents

Definitions of Terms ........ 3

1. Purpose of the ICAC Standards ........ 5
2. ICAC National Program ........ 6
3. Oversight of the ICAC Program ........ 7
4. Selection and Retention of Task Force Members ........ 8
5. Training ........ 9
6. Case Management ........ 10
7. Task Force Reporting Requirements to OJJDP ........ 11
8. Investigations ........ 12
9. Work Environment ........ 14
10. Victim Identification ........ 15
11. Public Awareness and Community Outreach ........ 16
12. Media Relations and Media Releases ........ 17

## Definitions of Terms

**Applicability of Terms**

Although some of the definitions below may be generally applicable to law enforcement, they are intended for use in the interpretation of these Standards. As such, where any term defined below is capitalized in these Standards, the Standards are referring to that term as defined below. By contrast, where any term defined below is not capitalized in these Standards, the Standards are referring to that term as it is used generally in the field of law enforcement.

**"Affiliate"** or **Affiliate Agency"** is an agency that is working with a Lead Agency as part of a regional or State ICAC Task Force. An Affiliate has agreed in writing to adhere to these Standards.

**"Authorized Personnel"** are Members who themselves lack powers of arrest but have been authorized by their respective agency to participate in Investigations and are being supervised by Sworn Personnel.

**"Commander"** is the Member of a Lead Agency who has been designated by that Lead Agency and recognized by OJJDP as the leader of the corresponding Task Force.

**"CEOS"** is the Child Exploitation and Obscenity Section of the Criminal Division of the DOJ.

**"Crime"** is any offense (or group thereof) that involves (or involve) the exploitation/victimization of children facilitated by technology.

**"CVIP"** is the Child Victim Identification Project operated by NCMEC.

**"CyberTipline"** is a reporting mechanism operated by NCMEC that allows for the reporting of suspected Crimes.

**"Deconflict"** is a process whereby Members are able to submit Investigative information to each other and/or to ICAC-related databases in order to determine whether other Members or other law enforcement agencies have information concerning the same targets or Crimes.

**"DOJ"** is the United States Department of Justice.

**"Employee"** is a sworn or compensated individual, or any individual working under the direction and control of a law enforcement agency.

**"Equipment"** is any device or tool -- including but not limited to computers, phones, and online accounts and services -- purchased or obtained for use in ICAC-related matters.

**"ICAC"** is the Internet Crimes Against Children Program, a national program composed of state and regional Task Forces.

**"Images"** are visual depictions in any form (image or video/printed or digital) of child sexual exploitation as defined by federal and/or state statute.

**"Investigation"** is an investigation into a Crime. Likewise, "Investigate" "Investigating" and "Investigative" are used within the same context.

**"Investigative Persona"** -- any identity established or created by an Employee to aid an Investigation.

**"Investigator"** is a Member who is a part of the Sworn Personnel of a Task Force.

**"Lead" or "Lead Agency"** is the law enforcement agency that receives the ICAC grant and is designated by OJJDP to act as the lead agency for the corresponding Task Force.

**"Member"** is a Lead or Affiliate Agency's employee who is either Sworn Personnel or Authorized Personnel and who has been designated to work on ICAC-related matters for his/her respective agency and Task Force.

**"National Initiative"** is any proposal that relies on the cooperation and resources of a significant number of Task Forces and, accordingly, has been approved by OJJDP.

**"NCMEC"** is the National Center for Missing and Exploited Children.

**"OJJDP"** is the Office of Juvenile Justice and Delinquency Prevention within the DOJ.

**"Supervisor"** is a Member who has been designated by his/her respective agency to supervise Investigations and other ICAC-related matters.

**"Standards"** are all of the provisions of these, the ICAC Operational and Investigative Standards.

**"Sworn Personnel"** are Members with powers of arrest.

**"Task Force"** is the Lead Agency and its Affiliate(s) (combined) as designated by OJJDP for a particular state or region.

## 1. Purpose of the ICAC Standards

These Standards are established by OJJDP to guide administration and operation of ICAC and its Members when working on ICAC-related Investigations and matters.

ICAC Members should make every reasonable effort to comply with these Standards. However, since many aspects of Investigations are dynamic and laws vary widely between jurisdictions – their genesis; methods for their evidentiary pursuit; and their application within court – it is difficult to anticipate every circumstance that might present itself. Thus, reasonable deviations from these Standards may occur depending upon various factors (e.g., emergency situations; timing constraints; accessibility constraints; resource constraints; technology constraints; perceived conflicts between the Standards and statutes, decisional law, and court orders; et cetera).

Should questions regarding the interpretation of these Standards arise or conflicts occur between these Standards and agency policies or law, the subject Commander faced with the issue shall seek the guidance of an OJJDP Program Manager. However, nothing in these Standards is meant to interfere with a Commander's or Supervisor's lawful tactical decision-making.

Commanders may supplement, but not contradict, these Standards in the written agreements they establish with their Affiliates to promote the effective operation of their Task Forces.

# 2. ICAC National Program

## 2.1 Mission of the ICAC Program

The Internet Crimes Against Children Task Force Program (ICAC) helps state and local law enforcement agencies develop an effective response to technology-facilitated child sexual exploitation and Internet crimes against children. This support encompasses forensic and investigative components, training and technical assistance, victim services, prevention and community education.

## 2.2 ICAC Background

The Internet Crimes Against Children Program (ICAC) is a national network of 61 coordinated task forces representing more than 3,500 federal, state, and local law enforcement and prosecutorial agencies. These agencies are engaged in both proactive and reactive investigations, forensic examinations, and criminal prosecutions. By helping state and local agencies develop effective, sustainable responses to online child victimization – including responses to child sexual abuse images (Images), The ICAC Program has increased law enforcement's capacity to combat technology facilitated crimes against children at every level.

The ICAC Program was developed in response to the increasing number of children and teenagers using the Internet and other technology, the proliferation of child sexual abuse images available electronically, and the heightened online activity by predators seeking unsupervised contact with potential underage victims.

Because ICAC Members understand that arrests alone cannot resolve the problem of technology-facilitated child sexual exploitation, the ICAC Program is also dedicated to training law enforcement officers and prosecutors, as well as educating parents and youth about the potential dangers of online activity.

## 3. Oversight of the ICAC Program

3.1 The oversight of the ICAC Task Force Program and the administration of ICAC grants is the responsibility of OJJDP. The oversight of each Task Force falls to its Commander. The oversight of each agency, both Lead and Affiliate, falls to its designated Supervisor.

3.2 Commanders shall ensure there are supervisory systems and protocols in place that provide for observation, documentation, and review of ICAC activity. Said systems shall comply with the principles of quality case management and shall ensure that ICAC activities comply with agency policies and these Standards.

3.3 Commanders shall ensure that each Member in his/her Lead Agency and each Supervisor of an Affiliate Agency receives a copy of the Standards.

> 3.3.1 Supervisors shall ensure that each Member in his/her Affiliate Agency receives a copy of the Standards.

3.4 Commanders shall submit all proposed National Initiatives to OJJDP prior to the start of the project.

> 3.4.1 OJJDP may suggest amendments to the original proposal following consultation with the presenting Commander and, as appropriate, other federal, state, and local entities.

3.5 Supervisors shall inform their Members about departmental or Task Force employee assistance programs and services available to them.

## 4. Selection and Retention of Task Force Members

4.1 (b)(7)(E) [redacted]

(b)(7)(E) [redacted]

4.2 (b)(7)(E) [redacted]

(b)(7)(E) [redacted]

## 5. Training

5.1 Carefully-managed Investigations conducted by well-trained Investigators are among the most effective techniques available to law enforcement for addressing Crime.

5.2 All national training curricula supported by ICAC resources shall be conducted consistent with the Standards and shall be approved by OJJDP.

5.3 Commanders shall ensure that nominees to attend any ICAC-sponsored national in-person training are current Members.

5.4 Task Forces may develop and deliver Task Force training. This training shall comply with the Standards and shall be approved by the Commander. All costs to develop and deliver the training shall be the responsibility of the Task Force or Affiliate providing the Task Force training.

**LIMITED OFFICIAL USE ONLY**
**LAW ENFORCEMENT SENSITIVE**

## 6. Case Management

6.1 (b)(7)(E)

(b)(7)(E)

6.2 (b)(7)(E)

(b)(7)(E)

6.3 Lead and Affiliate Agencies shall be subject to their respective agency's incident reporting procedures and case supervision systems. At a minimum, a unique identifier shall be assigned to each case.

## 7. Task Force Reporting Requirements to OJJDP

7.1 The reports described below do not replace the semi-annual progress report required by the Office of Justice Programs' Financial Guide.

7.2 Commanders shall compile and submit a Task Force Monthly Performance Measures Report to the OJJDP-designated location before the end of the following calendar month.

> 7.2.1 Affiliates shall report their activity to their respective Commander by the 10th of each month using the ICAC Monthly Performance Measures Report.

7.3 Commanders shall compile and submit information on all cases referred for local, state, or federal prosecution. Information is required for all cases referred by the Lead Agency, as well as all Affiliates that received more than $20,000 a year in OJJDP ICAC funding, and any Affiliate the Commander selects to include. The case reporting requirement is ongoing and begins with the prosecutorial agency the case is referred to and continues through the final disposition of the case.

> 7.3.1 This ongoing quarterly report shall be submitted within 30 days of the end of the quarter.

7.4 Commanders shall compile and submit an annual report which details each of their Affiliates. The report shall be submitted in a method determined by OJJDP and shall include the following information:

> 7.4.1 The name of each Affiliate Agency.
>
> 7.4.2 The staffing level of each Affiliate including the number of Investigators, prosecutors, education specialists, and forensic specialists dedicated to Investigating and prosecuting Crime.
>
> 7.4.3 This ongoing annual report shall be submitted within 30 days of the end of the calendar year.

## 8. Investigations

8.1 (b)(7)(E) [redacted]
(b)(7)(E) [redacted]

8.2 (b)(7)(E) [redacted]

8.2.1 (b)(7)(E) [redacted]

8.2.2

8.2.3

8.3 (b)(7)(E) [redacted]
(b)(7)(E) [redacted]

8.3.1 (b)(7)(E) [redacted]

8.3.2

8.4 (b)(7)(E) [redacted]

8.4.1 (b)(7)(E) [redacted]

8.5 (b)(7)(E) [redacted]
(b)(7)(E) [redacted]

8.6 (b)(7)(E)
(b)(7)(E)

8.6.1 (b)(7)(E)

8.6.2

8.6.3

8.7 (b)(7)(E)
(b)(7)(E)

8.8 (b)(7)(E)

8.8.1 (b)(7)(E)

8.9 (b)(7)(E)
(b)(7)(E)

(b)(7)(E)

8.10 (b)(7)(E)
(b)(7)(E)

## 9. Work Environment

9.1 (b)(7)(E)

(b)(7)(E)

9.2 (b)(7)(E)

(b)(7)(E)

9.3 (b)(7)(E)

9.4

9.5

(b)(7)(E)

## 10. Victim Identification

10.1 Identifying child victims of Crime is a critical element of the ICAC Program. DOJ and OJJDP require the Lead Agencies and Affiliates to submit Images to CVIP as a means to improve child victim identification. Absent exigent circumstances, Images shall be sent to CVIP pursuant to NCMEC's standards regarding same. In addition, Lead Agencies and Affiliates are encouraged to collaborate with NCMEC in their effort to identify children depicted in Images.

10.2 Absent exigent circumstances, victim-identifying information shall be protected from public disclosure pursuant to the protections set forth in federal and state law.

10.3 Lead Agencies and Affiliates shall adhere to local, state, and federal laws regarding mandated reporting, victim notification, and victim assistance.

## 11. Public Awareness and Community Outreach

11.1 Public awareness activities and community outreach are a critical component of ICAC. Lead and Affiliate Agencies shall foster awareness and shall provide practical relevant guidance to children, parents, educators, and others concerned with child safety.

11.2 Presentations to school personnel, parents, and community groups are excellent ways to promote awareness. These presentations shall not depict identifiable victims nor shall they use pornographic or sexually explicit images. Presenters shall not discuss confidential Investigative techniques.

11.3 Members shall not endorse any product or service without the express written consent of an OJJDP Program Manager. While making public presentations, Members may indicate a preference for a product or service, but, where done, shall avoid an implicit endorsement and shall include alternatives in the presentation.

11.4 Materials and presentations shall be consistent with ICAC's mission and background, as enumerated in Section 2 of these Standards.

## 12. Media Relations and Media Releases

12.1 Media releases relating to prosecutions, Crime alerts, or other matters concerning ICAC operations shall not include information regarding confidential Investigative techniques, and shall be coordinated, when applicable, with the law enforcement agencies involved with the subject Investigations, in a manner consistent with sound information management and sound media relations practices.

12.2 Commanders and Supervisors may speak to members of the media about their own agency's ICAC-related activities per the terms of their agency's policy on such media relations. No individual affiliated with ICAC may speak on behalf of the national ICAC Program without the express written consent of OJJDP.

12.3 Commanders shall inform their OJJDP Program Manager if approached by national media outlets about the national ICAC Program (as opposed to media seeking information about local activities) so that a coordinated national response can be prepared by OJJDP.

12.4 Information provided by Task Forces to the media shall be consistent with ICAC's mission and background, as described in Section 2 of these Standards.

**End of ICAC Standards**