# Exhibit

# MM

# Whistleblower Report

## False Claims Act, 31 U.S. Code § 3729

## Manufacturing Criminals

## Criminal Violations of the

## Electronic Communications and Privacy Act, ECPA and

## Racketeer Influenced and Corruption Organizations Act, RICO

By: Bonnie Burkhardt

Contents

Contents ........ 2
I. INTRODUCTION ........ 3
II. THE CONSPIRACY ........ 4
A. Scenario 1: Online Sting Operation ........ 4
B. Scenario 2: Parent Reports Suspicious Messages to their Child ........ 6
III. ICAC IS LIABLE ........ 8
IV. ALLEGATIONS ........ 10
A. COUNT ONE – Illegal Interception ........ 10
1. Federal Law and the Fourth Amendment ........ 10
2. Meaning of *Person* ........ 12
3. Electronic Surveillance without a Warrant ........ 14
4. Sixth Amendment Violated ........ 16
5. Illegal use of 180-day Stored Communication Criteria ........ 16
B. COUNT TWO – Disclosing and Using ........ 16
C. COUNT THREE – Identity Theft ........ 17
D. COUNT FOUR – Entrapment ........ 18
E. COUNT FIVE – Illegal use of a Pen Register / Trap and Trace Device ........ 19
F. COUNT SIX – Falsifying Evidence ........ 20
G. COUNT SEVEN – Destruction of Evidence ........ 20
H. COUNT EIGHT – Extortion ........ 20
I. COUNT NINE – Fraud ........ 21
J. COUNT TEN – RICO ........ 22
K. COUNT ELEVEN – Involuntary Manslaughter ........ 25
L. COUNT TWELVE – Electronic Warfare ........ 25
M. COUNT THIRTEEN – Misprision ........ 26
N. COUNT THIRTEEN – Denying Access to the Grand Jury ........ 27
V. UNINTENDED CONSEQUENCES ........ 28
VI. CONCLUSION ........ 29

## I. INTRODUCTION

Bonnie Burkhardt, acting pursuant to the provisions of the False Claims Act, 31 U.S. Code § 3729, et seq, brings this complaint on behalf of the United States of America and for her own benefit, alleging that Internet Crimes Against Children Task Force (ICAC), knowingly submitted false claims to the United States Government to obtain almost $1,000,000,000 in grants from the Department of Justice, Office of Juvenile Justice and Delinquency Prevention, OJJDP. A spreadsheet listing the grants is available upon request. ICAC offices like the Broward Sheriff's Office in Florida label these operations "proactive investigations" and readily acknowledge they are funded by federal OJJDP grants. DHS has recently become involved in these cases.

The federal government is also paying the salaries of FBI agents to manufacture criminals, and the salaries judicial officials to prosecute and judge these cases. In addition, there has probably been over $50,000,000,000 expended by DOJ to incarcerate those illegally arrested and convicted. This does not include a similar amount for states' expenses for their prosecutions of manufactured crimes based on this same federally funded ICAC training and federal grants, or the states' cost of incarceration.

ICAC used federal grant money to train over 675,700 federal, state and local officers to violate law.[1] This allows ICAC branches to also obtain state and local grant moneys. Local law enforcement also obtains state funds to house inmate in local jails while awaiting trial or awaiting transport to prison. Therefore, local judges deny bond for these manufactured crimes to get millions of state dollars sent to their county. This violates the defendant's Eighth Amendment rights.

Burkhardt's information is "independent of and materially adds" to the publicly disclosed information, such as court documents and public grant records. Burkhardt is the "original source" who gave the information to the government before filing this complaint, 31 U.S. Code § 3730. She filed numerous reports to state and federal government agencies notifying them of illegal ICAC activity. She also notified them of grant moneys and other funds used for illegal purposes.

ICAC's stated purpose is twofold: 1) To conduct pro-active sting operation to find pedophiles who intend to harm children. 2) To proactively seek those who may trade child pornography. This complaint deals with fraud that occurred during item 1) pro-active sting operations and investigations. Allegations that law enforcement violated law during investigations of child pornography will be discusses separately.

This Complaint alleges that ICAC criminally violated federal law and used entrapment to manufacture criminals to increase ICAC's favorability rating when obtain grants. ICAC officers violated the criminal statues of the Electronic Communications and Privacy Act, ECPA, when

[1] *Home.* (2013). Icactaskforce.org. https://www.icactaskforce.org/

obtaining evidence used to arrest and prosecute defendants. These tactics violate the defendant's rights guaranteed by the First, Fourth, Sixth, Eighth, and Fourteenth Amendments. ICAC has grown into a nationwide organization with 61 branches in all 50 states. These branches are fraudulently obtaining federal grant money using similar techniques. This vast criminal organization buried within the justice system violates the Racketeer Influenced Corrupt Organizations Act, RICO.

## II. THE CONSPIRACY

ICAC was founded in Bedford, Virginia, but now has locations in every state. Bedford has functioned as ICAC's headquarters. Federal courts have jurisdiction over all causes of action asserted against ICAC pursuant to 28 U.S. Code § 1343(a)(1-4) and § 1346(b). Federal grant money was used to train federal, state, and local officers to violate the law and is cited in the Dallas CAC Undercover Chat Training documents. This gives the federal government jurisdiction over state and local cases that were conducted based on this federal training. Federal grant money was also expended by state and local ICAC branches on other resources. Additionally, Federal courts have jurisdiction over all other claims pursuant to 28 U.S. Code § 1402(b), § 2401(b), and § 2671-2680 FTCA, because grants to all ICAC agencies arise from a common training, tactics, and facts that are so intertwined that they cannot be reasonably separated. ICAC grant applications submitted from across the country are almost carbon copies of each other.

### A. Scenario 1: Online Sting Operation



This is not picture of a child. It is not a picture of a male FBI agent or male ICAC detective wearing a disguise. It is a picture of an adult woman. Pictures like this are posted as part of an adult profile on an adult-only dating site by male FBI agents or local male detectives. The dating ad may even list the age of the person pictured as "age 19". This photo was used in ads created by an officer with the Chandler Police Department, Chandler, Arizona.

Ads are created in such a way that all replies are routed to the officer, not the person pictured. Male officers then impersonate the woman pictured (or a young man on gay dating sites), sending text messages as if they were her and intercepting all private electronic communications sent to her, without a warrant. The woman pictured is not party to any conversation. Interception begins at the word "Hi" sent by an anonymous man. If the officer is going out of town for a day or

so, he will hand-off his character and his phone to a second officer who takes over impersonates the female, exchanging "her" text messages.

This scenario is how ICAC officers conduct pro-active sting operation, supposedly to find pedophiles who intend to harm children. Officers use adult-only dating sites instead of websites where children are actually trafficked or where real pedophiles may go to find children. There is no report of criminal activity to start the sting operation. There is no written agreement with legal counsel of the dating site company authorizing officers to conduct sting operations or permitting officers to violate their Terms of Use. The advertisement and its photo are bait. The officer then waits for some unwitting anonymous man looking for an adult date to answer the ad. Once a conversation begins, the officer claims to be 14-years-old, even though the photo shows an adult. The officer uses entrapment techniques to cause the suspect to talk dirty, request a meeting, or to send a picture or video of his private parts. All texts sent by the "child" are manufactured evidence since a child did not send them. Manufacturing evidence violates the defendant's right to due process under the Fourteenth Amendment. Seduction, luring, enticing, inducing, and guilt trips are common tactics. Inducement and entrapment are used to manufacture the crime of soliciting a minor.

LinkedIn



**Rhonda McKay**
Selection and Assessment Team at Wells Fargo
Jacksonville, North Carolina Area | Human Resources

Current Wells Fargo
Previous Wells Fargo Home Mortgage
Education Coastal Carolina Community College

Send Rhonda InMail

**Administrative Assistant**
Wells Fargo
February 2014 – Present (2 years 11 months)
Part of the Selection and Assessment team providing quality products and resources to assist in the hiring process.

**Mortgage processor**
Wells Fargo Home Mortgage
April 2004 – February 2014 (9 years 11 months)
Processing and underwriting conventional, VA and FHA mortgages. Managing to change and a natural leader.

Rhonda McKay is not a child. Officer Robert S. Martin, Hillsville Police Department, VA, posted an ad on adult-only dating site Craigslist using Rhonda's photo and her true name, *Virginia v. Darius Foran*, Carroll County, VA Case No. 16-1590. Darius Foran answered the ad and began to converse. Officer Martin impersonated Rhonda, sending messages to Foran and receiving all messages from Foran as if he was Rhonda. Rhonda was not party to the conversation. Officer

Martin stated that he was 15-years-old. Since the photo did not agree with the age, Mr. Foran researched Rhonda McKay and found her on LinkedIn with the same name and a photo that matched to the person in the ad. Mr. Foran is currently serving year 10 of a 25-year sentence for soliciting a minor.

In *Virginia v. Ryan Thomas Pick*, Hanover County Case No. CR18001081, Det. Troy Payne impersonated a female he named Lilly. Payne told the suspect (Pick) to use Dropbox and to send a video "from the neck down." Pick did not know how to use Dropbox from his phone and did not know how to post a video to it. Officer Payne had to giving step-by-step instructions on which buttons to push to teach Pick how to commit the crime of putting a risqué video in Dropbox.[2]

Occasionally, the suspect demands a phone call with the person pictured as in *Virginia v. Achin*, Fairfax County Case No. FE2018-1497. Officer Robert Bauer then procured the younger-sounding Officer Gadell to be the voice actor on recorded phone calls, violating 18 U.S. Code § 2511(1)(a). Without a warrant, Officer Gadell used Bauer's phone which was specially equipped to record phone calls, violates 18 U.S. Code § 2511(1)(b). Recording was done without a warrant or court authorization violates 18 U.S. Code § 2511(1)(a).

In *New York v. St. Pierre*, Jefferson County Case No. D311-11076123, one male officer and two females were involved impersonating a fake mom pimping her stepdaughter. The male officer exchanged text messages, and the females were voice actors on recorded phone calls. Analysis shows there were about 51 federal crimes, 7 New York felonies, and 6 misdemeanors committed by officers and government officials against St. Pierre. The Jefferson County Circuit Court of New York refused my *pro se* motion requesting permission to submit my analysis which detailed these allegations. St. Pierre was forced to sign a plea deal.

Many times, the officer unmasks the identity of the suspect before the meeting, or if the suspect refuses to meet. This is also done without a warrant. The suspect's unmasked name is written on the application for the arrest warrant and the suspect's home address is written on the application for the search warrant. A summary of communications is written on the warrant applications to justify the arrest and search of the defendant's home and property. This conversation includes the illegally intercepted communications sent by the defendant and the manufactured text messages supposedly sent by a child but actually sent by an adult officer.

**B. Scenario 2: Parent Reports Suspicious Messages to their Child**

A parent notices suspicious text messages sent to their teen. They report this to law enforcement and bring the teen's phone so officers can examine the messages on the phone. In *Virginia v. Laurence Einus*, Fairfax County Case No. GC14115829 and JA415154, Mr. Einuis had not committed any criminal act with this teen. Det. Nicholas Boffi then had a parent sign a form

---

[2] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence*. Chapter 9.

similar to the FBI form number FD-1086, "Consent to Assume Online Presence." There is no statute making this form legal or giving any legal substance once the form is signed. Det. Boffi then took control of the teen's phone, impersonated the teen, and exchanged text messages with Mr. Einuis as if Boffi was the teen. The teen's phone was used so the caller ID would match when Einuis read Boffi's text messages. Det. Boffi changed the tone of the conversation and used entrapment to manufacture the crime of soliciting a minor. All other charges against Einuis are fruit of the poisonous tree and are derived from this illegal interception and Boffi's manufactured text messages supposedly sent by the teen.

I have seen other cases where FBI form FD-1086 or an equivalent local form was signed by a parent and used by officers to impersonate a child. FBI form FD-1086 includes the content:

> *I, [name], hereby voluntarily authorize [agency] to take control of and use my "online presence." This online presence includes the following screen names(s), nick name(s), and/or e-mail addresses, as well as the passwords associated with the accounts: [fill in list].*
>
> *I consent to the use of my online presence for any purpose relating to an official investigation by the above law enforcement authority, including (but not limited to) sending and receiving e-mail or conducting any other electronic communications, accessing stored information, and using and disclosing such communications or information. I understand and acknowledge that by signing the consent form, I relinquish all present and future claims to the use of these accounts. I understand that law enforcement authorities will change the password(s) to this account so that I will no longer have access.*
> *I give this consent freely and voluntarily without fear, threats, coercion, or promises of any kind. I have been advised of my right to refuse to allow the assumption of my online presence, and I hereby voluntarily waive this right.*
>
> *Signed and witnessed:*

An officer then takes control of the child's phone, email, texting, and online accounts. The child is no longer party to the conversations. Without a warrant, the officer impersonates the child, sending and receiving messages as if he is the child. The child's phone number and account names are used by the officer as a means of identification to allow the officer to successfully impersonate the child. The officer creates messages and sends them to the suspect. This is manufactured evidence since the child did not send them. All private electronic messages sent by the suspect to the child are intercepted by the officer controlling the child's phone. The officer uses entrapment techniques to cause the suspect to talk dirty, request a meeting, or to send a picture or video of his private parts. Seduction, luring, enticing, inducing, and guilt trips are common tactics.

**Common for Both Scenarios:**

The manufactured texts sent by officers posing as the "child" and content from the illegally obtained text messages and phone calls are used as justification for an arrest warrant of the suspect and for a search warrant for the suspect's home, phone, and computers. Illegally obtained content is disclosed to the grand jury to get an indictment, and disclosed in court to force a plea deal or a conviction by the jury. Bond may be as high as $20,000,000 for text messages to a fictitious character, or it is denied altogether. This violates the defendant's Eighth Amendment rights.

## III. ICAC IS LIABLE

Internet Crimes Against Children trains officers to violate the law. Fox Valley Technical College puts on training for ICAC and OJJDP using federal grant money, including their logos on the cover page of training material.[3] I obtained one such training manual, 2015 June 15-19 ICAC Training and Technical Assistance Program Undercover Concepts and Techniques. Page 73 gives a handy spreadsheet form for detectives to use to keep track of each character they have created and each suspect they are conversing with. Page 71-72 gives a size chart for clothing to match the height/weight of the imaginary character created so every detail officers invent about their character appears consistent.

Page 49 includes a sample form "Consent To Assume Online Presence" where a parent lists all the accounts of their child and authorize law enforcement to take over their child's phone and accounts. Parents sign the form on behalf of their child, authorizing law enforcement authorization for "sending and receiving e-mail or conducting any other electronic communications, accessing stored information, and using and disclosing such communications or information." There is no legal substance behind this piece of paper. Nothing under 18 U.S. Code § 2511 authorizes anyone, including law enforcement, to send messages while impersonating someone else or to receive messages intended for someone else. This signed form is equivalent to getting written permission from a mother to rob a bank – it does not make it legal.

Page 79 begins the ICAC Operational and Investigative Standards document. There appears to be two subtly different versions of this document produced every year. The first seems to be the original DOJ copy prior to being scrubbed. It contains Section 13, "Mandated Proper Tactics and Rules of Engagement," and a few earlier references to Section 13 material. The items listed in Section 13 are critical and necessary for officers. This version was obtained indirectly through an anonymous whistleblower, so it was unable to be validated. The second version is the scrubbed version with the Section 13 page removed. A table of contents is added so the page count matches the original. This second version is the one provided to law enforcement in their

---

[3] *Government grant award search*. (2024). DataRepublican. https://datarepublican.com/award_search/?keywords=icac

training and used to create the redacted versions given out in FOIA requests. The document evolved over time from 2014 and 2018 with small additions each year. Items from Section 13 across the years that officers must know (but removed from their copy) are as follows:

1. Law Enforcement Officers Shall not use and are Prohibited from using Online Dating Applications/Websites for Consenting Adults nor Escorting Applications/Websites for Consenting Adults nor Prostitution Applications/Websites for Consenting Adults.
2. Law Enforcement Officers Shall not use and are Prohibited from using Online Instant Messaging Chatrooms for Consenting Adults.
3. Law Enforcement Officers Shall not use and are Prohibited from using Adult Profiles of the age of 18 Years Old and Older on Online Social Media/Social Networking Applications/ Websites
4. Law Enforcement Officers are Allowed to use and Shall only use Profiles of the Age of 17 Years Old and Younger on Online Social Media/Social Networking Applications/Websites.
5. Law Enforcement Officers, when Setting Up and Online Internet Undercover Sting Operation, are Mandated to ask for Permission in Writing via a Cooperative Agreement to said Social Media/Social Networking Application's/Website's Legal Counsel/Legal Team for the Express Purpose of Conducting said Online Internet Undercover Sting Operation. Law Enforcement Officers Shall not Violate and are Prohibited from Violating the Terms and Conditions of the Online User Service Agreement of any and all Adult Only Oriented Applications/Website because then they would be in Violation of Title 18 U.S. Code § 1030 the Federal Computer Fraud and Abuse Act.[4]
6. If Law Enforcement Officers Violate and Do not Honor the Liability Clause of the Internet Crimes Against Children Task Force Memorandum of Understanding and Violate and Do not Honor the Oversight Clause of the Internet Crimes Against Children Task Force Operation and Investigative Standards then they would be in Violation of Title 18 U.S. Code § 1961-1968 the Racketeer Influenced and Corrupt Organization Act.[5]
7. Law Enforcement Officers are Prohibited from Committing and Shall Not Commit Egregious-Outrageous Conduct, Entrapment by Cajoling, Compelling, Convincing, Enticing, Inducing, Luring, Persuading, Seducing, Tempting a person who Is Not Predisposed to Commit the Crime Nor Premeditated to Commit the Crime and if not complied with would be in Title 18 U.S. Code § 373 the Solicitation to Commit a Crime of Violence Act and in Violation of Title 18 U.S. Code § 2422 the Coercion and Enticement Act and in Violation of the Federal Elements of Entrapment from the United States Department of Justice Archives Manual Criminal Resource Manual Section 645.[6]

---

[4] ICAC Program Operational and Investigative Standards. (2008, 2011, 2012, 2014, 2017, 2018). *Operational and Investigative Standards.* Office of Justice Programs (OJP).
[5] ICAC Program Operational and Investigative Standards. (2011, 2012, 2014, 2017, 2018). *Operational and Investigative Standards.* Office of Justice Programs (OJP).
[6] ICAC Program Operational and Investigative Standards. (2014, 2017, 2018). *Operational and Investigative Standards.* Office of Justice Programs (OJP).

Crowe and Valley Undercover Chat presentation dated June 17, 2019 by Dallas CAC is another class for ICAC officers. Page 2 instructs officers to "follow all local, state and federal laws," then proceeds to teach them how to violate these laws. This class teaches officers to obtain a photo of a real, adult person and use it as their own. Page 3 tells how to use someone else's photo "to represent yourself online" noting that the person pictured must be 18-years or older when signing the form and must be a current member of law enforcement. It discusses how these male officers should establish a profile and keep track of "age/weight/eye color/hair color/bra size/panty hose size".

FBI Det. Michael Russo also gave a class discussing how to conduct undercover sting operations using someone else's identity using model photos. His opening comments state that he is a Task Force Officer with the FBI. His contact information is marusso2@fbi.gov. Agent Russo was the primary federal agent in *U.S. v. Mark Baker* (Montana DOJ Case No. T2 22-07-02). Mark Baker was a FEMA whistleblower. This case started with Det. Toby Baukema of the Montana Division of Criminal Investigation creating and impersonating his female character on Escort Alligator. I was hired by Baker to provide suggestion content about illegal interception to the defense attorney that he could use in a motion to suppress. The defense attorney refused to use my information and the attorney refused to submit Steven Coker's Digital Forensic analysis of Baker's phone showing evidence was planted on his phone after seizure.

Law enforcement publishes their tactics in news reports of the arrest. News reports claim that "the alleged offenders used online platforms to initiate explicit conversations and solicit sex from police officers posing as children."[7] [8] Simply do a Google search for "arrested officer posing as children" and you will find hundreds, if not thousands of cases across the country where officers criminally violate ECPA law, then publicize it.

## IV. ALLEGATIONS

### A. COUNT ONE – Illegal Interception

### 1. Federal Law and the Fourth Amendment

The Electronic Communications and Privacy Act of 1986 (ECPA) expanded Fourth Amendment rights to cover wire, oral, and electronic communications equally. It broadened the definition of illegal interception so it is illegal to impersonate someone else and intercepting private communications intended for them. There is no exception for police, even with written permission. Impersonation not only violates the rights of the one impersonated, it also violates

[7] *Local Men Charged with Soliciting Minors*. (2025). Fairfaxconnection.com. https://www.fairfaxconnection.com/news/2020/apr/23/local-men-charged-soliciting-minors

[8] O'Connell, M. (2020, April 21). *Internet Predator Sting Operation Snares 30 Suspects In Fairfax*. Herndon, va Patch; Patch. https://patch.com/virginia/herndon/internet-predator-sting-operation-snares-30-suspects-fairfax

the rights of the other who believes he is having a private conversation and sharing personal information with one specific person, not an impostor. The federal statute states:

> 18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited
> (1) Except as otherwise specifically provided in this chapter any person who—
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; ...

*Intercept* "means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device," 18 U.S. Code § 2510(4). The detectives use a cell phone to acquire the content of private text messages that the defendant sent to the female pictured.

Federal ECPA law details a specific list of authorized persons who may intercept communications and precise methods they may use. All other interception is illegal. 18 U.S. Code § 2516 contains some verbiage that authorization might be granted for suspected sex trafficking of "children." However, the meaning of the word "children" refers to real children as defined in 1 U.S. Code § 8. The word "children" does not include an adult male (or female) officer impersonating a woman, then pretending to be a child. Detectives do not obtain, nor even request, court authorization before intercepting the defendant's private communications.

Probable cause is required prior to obtaining Court authorization to intercept. Here, the agents began to intercept when a stranger said, "Hi." What probable cause exists when a stranger utters, "Hi," that would justify intercepting and recording the defendant's private conversation?

The defendant had an assumption of privacy. He was alone using his personal cell phone or computer. In *Katz v. United States,* 389 U.S. 347 (1967), police attached a listening device to the outside of a public telephone booth. The Supreme Court ruled this a search and seizure of one's private communications. Here, the defendant used a passcode-protected cell phone to exchange private text messages with another person. See *Riley v. California,* 573 U.S. 373 (2014). Text messages are private electronic communications exchanged between two people using cell phones. The law grants text messages the same right to privacy as land-line phone calls, because "wire, oral, or electronic communications" are all afforded the same protections under 18 U.S. Code § 2511(1)(a). An adult has a First Amendment right to free speech on an adult-only dating site engaged in a private conversation.

If Congress intended to grant law enforcement authority to impersonate someone else in this way, it would have expressly stated it. In Washington State, a drug dealer was arrested; the detective then impersonated the dealer. The detective sent text messages from the dealer's confiscated phone, impersonating the dealer to arrange meetings with buyers Hinton and Roden. They each met the officer. Both were arrested. Washington Supreme Court overturned the

convictions of Hinton and Roden reasoning that text messages are a "private affair" and are protected against warrantless intrusion via impersonation. *See State v. Hinton,* 87663–1 (Wa. 2014) and *State v. Roden*, 87669–0 (Wa. 2014).

U.S. Supreme Court Justice Holmes wrote the majority opinion in *U.S. v. Thayer*, 154 F. 508, (June 17, 1907), clarifying that solicitation crimes via mail only occur "if it takes place in the intended way." "If the letter has miscarried" (delivered to someone else), "the defendant would not have accomplished a solicitation." The detective and Durham were not the addressee or intended receiver. "Nothing less than bringing the offer to the actual consciousness of the person addressed would do" (emphasis added). Animated characters have no consciousness. "An offer is nothing until it is communicated to the party to whom it is made." This decision has stood the test of time. The female pictured never read the messages. A child never read the messages, so "the offense was not complete, but, when it had been read." No solicitation occurred.

In *U.S. v. Szymuszkiewicz*, — F.3d —, 2010 WL 3503506 (7th Cir. September 9, 2010), Szymuszkiewicz was convicted for being a recipient, though not the intended recipient, of emails sent to his boss. Szymuszkiewicz was a system administrator who secretly setup auto-forwarding on his boss's account so copies of emails would also be sent to him. Old-fashioned wiretaps are not the only way to intercept communications. Here, the detective set up the ad so all messages would be routed to his phone or computer instead of the female's, same as *Szymuszkiewicz.*

The use of technology to survey the interior of a private space is considered a search protected by the Fourth Amendment. In 1978, Congress codified 50 U.S. Code § 1821, expanding 'physical search' to include *"examination of the interior of property by technical means."* Here, detectives used technology to mask their true identity so they can 'search' the content of private messages composed on, or received by, the defendant's cell phone. These text messages were the defendant's private papers and stored within it. The defendant could only read or write messages stored within his phone. The detective was examining the contents of the defendant's private messages from the outside using technology of online impersonation.

In scenario (1), detectives placed an ad online. By placing the ad, the detective was endeavoring to intercept private communications sent to the fictitious female. In scenario (2) the detective had a parent sign a "Consent to Assume Online Identity" form, then turn over the child's phone and electronic devices to be used by the officer(s). By having a parent sign the form, the detective was endeavoring to intercept private communications sent to the child. Not only is unauthorized interception a crime, but also any "endeavor to intercept," 18 U.S. Code § 2511(1)(a). This is the first crime committed with almost no exceptions.

**2. Meaning of *Person***

An impostor or impersonator is not a lawful *person* under ECPA, 18 U.S. Code § 2510(6). The exception to the criminal statute states that it is not unlawful to intercept wire or electronic

communications "where such person is a party to the communication or where one of the parties to the communication has given prior consent to the interception," 18 U.S. Code § 2511(2)(c) and (d).[7] A regular *person* and a *person* acting under color of law are bound by the same statutory verbiage that prohibits impersonation. Proper procedures are documented in the Department of Justice, DOJ Office of Justice Programs, National Institute of Justice *Report on Investigations Involving the Internet and Computer Networks.*[9]

In scenario (2) where the officer takes over a child's phone, the child is no longer party to the communications. It is the adult officer who intercepts all text messages sent to the child. All messages sent by the officer using the child's phone to the suspect is evidence manufactured by the officer and planted into the electronic conversation. This may even be documented on the arrest warrant.

In scenario (1) where the officer created an imaginary female (or male) character, the female was not party to the conversation and could not consent to the interception. The detective was an impostor and did not meet the legal definition of *person,* so he was not a lawful person party to the conversation. The defendant was the only lawful *person* party to the conversation. The defendant did not consent to his communications being intercepted by the detective. Therefore, the detective intercepted private electronic communications of the defendant in violation of 18 U.S. Code § 2511(1)(a). The defendant's Fourth Amendment rights were violated. Most state statutes prohibit impersonation and mirror the federal law, like Virginia. When *Virginia v. Pick* was appealed, the Virginia justices cherry-picked the words of the Virginia statute to get the result they wanted in their ruling regarding Officer Payne impersonating his character "Lilly" on Omegle:

> Hence, Payne was a "person party to the communication[s]." Code §19.2-62(B)(2). As such, he was protected by the consent exception and therefore did not criminally violate Code §19.2-62(A) by recording the contents of the Omegle chats.

A *person* has one birth certificate. The detective's imaginary character is brought to life with person pictured and one or more officers acting the part of the female through texting or even phone calls. This totals two or more birth certificates. The legal definition of *person* is not a composite of multiple humans formed to give the illusion of one human. Black's Law Dictionary, 9th ed. gives several definitions relevant to this case:

- **person** - *a human being or the living body of a human being;*
- **impersonate** - *the act of impersonating someone;*
- **impostor** - *one who pretends to be someone else to deceive others;*
- **persona** - *an individual human being.*

[9] DOJ, National Institute of Justice. *Report on Investigations Involving the Internet and Computer Networks* (January, 2007) *at 24-25, 75.*

The character is not a *person* with rights, but a *thing* created and animated by the detective. Law enforcement cannot use *things* to intercept private communications without a warrant. Precise definition is of such importance that, "Even trained lawyers may find it necessary to consult legal dictionaries," *Rose v. Locke*, 423 U.S. 48 (1975). The one and only flesh-and-blood *person* and true legal party to the conversation was the defendant, and he did not consent to any interception.

ECPA uses the term *person* to define who has rights and can be "a party to the communications." Both federal and state statutes refer to *"a person"* singular, *"such person" (not "such people"), and "is a party"* (not *"are parties").* Impersonation violates the meaning of a singular person being a party to a conversation, so impersonation violates this statute. Nowhere does this statute refer to animated characters. Animated characters cannot give legal consent to anything.

The officers' impersonation of a female is not a real child by any standard. The U.S. Supreme Court ruled that statutes can only be applied to images of "real" children. The provision that an image "is, or appears to be, of a minor" was ruled overbroad and may not even indicate exploitation of real children, *Ashcroft v. Free Speech Coalition*, 122 S. Ct. 1389 (2002). This statutory or Common Law crime is restricted to actual minors. There is no indication that the person pictured is actually a minor. 1 U.S. Code § 8 states, "the words 'person', 'human being', 'child', and 'individual', shall include every member of the species homo sapiens who is born alive and at any stage of development." The detective's impersonation of the female is not a real child by any standard. Unbeknownst to Congress, the Sentencing Commission changed the meaning of "minor" victims of sex crimes to include fictitious characters and adults impersonating a child.[10] The criminal code remains unchanged, but now it is intentionally misinterpreted according to the Sentencing Commission guidelines. This should be re-examined since the Supreme Court overturned the Chevron Doctrine, *Loper Bright Enterprise v. Raimondo*, 603 U.S. __ (2024).

In *U.S. v. George*, No. 19-4125 (4th Cir. 2020), the court held that the definition of "person" includes those living and deceased. Nowhere does the definition of "person" include impostors or impersonators. The female pictured was alive. Therefore, the interception of private communications sent to her was unlawful.

**3. Electronic Surveillance without a Warrant**

In 1981, President Reagan signed Executive Order 12333, EO-12333. This is a governing authority cited in the "Attorney General's Guidelines for Domestic FBI Operations" and the

[10] Sentencing Commission Amendment # 664, November 1, 2004

"Domestic Investigations and Operations Guide for the FBI" available on their website.[11] EO-12333 defines "electronic surveillance" as:

> ***Electronic Surveillance** means acquisition of a nonpublic communication by electronic means without the consent of a person who is a party to an electronic communication or, in the case of a nonelectronic communication, without the consent of a person who is **visibly present** at the place of communication, ...* Executive Order 12333, *United States Intelligence Activities* (1981) *at 15, sec. 3.5(c).* (emphasis added)

The meaning of *person* comes from 1 U.S. Code § 8, "every infant member of the species homo sapiens who is born alive and at any state of development." The term *"a person"* is singular, meaning one human.

Though derivative laws, a *person* must be capable of satisfying the *visibly present* criteria in order to be a lawful party to an electronic communication, 18 U.S. Code § 2511(2)(d). The *"visibly present"* criteria thereby prohibit impostors and characters animated by others. This criterion is critical to differentiate between an officer wearing a disguise (which is legal), and an officer unlawfully impersonating someone else. An officer wearing a disguise can be visibly present for an oral conversation to make a drug deal, therefore the disguised officer can be a lawful party to private electronic communications arranging the drug deal, *Sorrells v. United States*, 287 U.S. 435 (1932). Here, the detective does not wear a disguise – he impersonated the female pictured. The person pictured plus the detective(s) equals two or more people, which does not satisfy the definition of *"a person."* So, the detective is conducting electronic surveillance without a warrant, 50 U.S. Code § 1801(f)(3).

EO-12333 influenced the wording of the Electronic Communications and Privacy Act of 1986 (ECPA). The EO-12333 phrase, *"a person who is a party to an electronic communication"* is reflected in federal code, *"where such person is a party to the communication,"* 18 U.S. Code §§ 2511(1)(c) and 2511(1)(d). ECPA afforded electronic communications the same privacy protections as phone calls. If Congress intended to grant law enforcement authority to impersonate someone else in this way, it would have expressly stated it.

Sampling of other cases to examine:

1. *New Mexico v. Mahmoud Telfah*, NMDOJ # 202410-00186 with Det. Joshua Dennison.
2. *U.S. v. Andres Cabezas*, M.D.FL. Case No 6:17-cr-00148-PGB-TBS, with FBI SA Rodney Hyre.
3. *U.S. v Jason Hihn*, E.D.VA. Case No 1:21-mj-00222-JFA (I believe that is the correct case number) with FBI Agent Schur.
4. *Colorado v. Allen Bright, Colorado v. Avery Wood, Colorado v. Frank Behnke, and Colorado v. Michael Houchins*, all with Det. Marc Ramey

[11] *FBI Domestic Investigations and Operations Guide (DIOG)*. (2011). FBI. https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29

5. *U.S. v. Chip Hollingsworth.* E.D.N.C. Case No. 5:29-cr-231-1FL with FBI Agent Tyson J. Hanish, Prosecutor Jake Pugh, and Judge Louise Flanagan.

**4. Sixth Amendment Violated**

The Sixth Amendment guarantees a defendant the right "to be confronted with the witnesses against him." This cannot happen when the "victim" or true witness, i.e. the "child," either does not exist as in scenario (1), or the child being impersonated by an adult officer as in scenario (2). The online "child" is animated by the detective. The defendant's Sixth Amendment rights were violated.

**5. Illegal use of 180-day Stored Communication Criteria**

In *Virginia v. Pick*, the prosecutor, Assistant Attorney General Alexandra Williams, apparently sent an order to Snapchat to preserve Pick's communications. This order was not included in the Discovery but it was referenced in Snapchat's replies. Communications stored 180 days or fewer have the highest level of protection under ECPA.[12] Obtaining these private, electronic communications from Snapchat requires a court authorization to intercept. However, AAG Williams could not get authorization because Pick's crime was not one included on the list of crimes where the Court could grant it. So, AAG Williams waited over 180 days before issuing a written statement certifying that the information is relevant to an investigation. But, 18 U.S. Code § 2703(a) only applies if the communications were never read and were abandoned. Pick read all his messages. Therefore, these communications were illegally intercepted by AAG Williams, then disclosed in a motion filed in court and used to prosecute Pick.

**B. COUNT TWO – Disclosing and Using**

The illegally intercepted conversations are disclosed to the Court and used on the application for the arrest warrant of the defendant and on the applications for the search warrant of the defendant's home. The intercepted conversations are disclosed to the grand jury and used an indictment. The conversations are disclosed to the press and used to publicly disgrace the defendant and to get good publicity for the agency handing the investigation.

Disclosing or using these illegally intercepted violates 18 U.S. Code §§ 2511(1)(c) and 2511(1)(d). It is also considered "fruit of the poisonous tree," *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920) and *Wong Sun v. United States*, 371 U.S. 471 (1963). Using any evidence from illegally intercepted communications in any proceeding or any evidence derived therefrom, is prohibited, 18 U.S. Code § 2515. This statute covers wire and oral communications. Courts have ruled that *wire* communications include, *inter alia*, telephone conversations, *Rassoull v. Maximus, Inc*. 209 F.R.D. 372 (D. Md. 2002); cellular telephones, *U.S. v. Carr*, 805 F. Supp. 1266

[12] DOJ, National Institute of Justice. *Report on Investigations Involving the Internet and Computer Networks* (January, 2007) at 80 ¶4 and 81 ¶2.

(E.D.N.C. 1992); and text messages, *Sharpe v. State,* 350 P.3d 388, 391 (Nev. 2015). Therefore, the defendant's text messages sent from his cell phone are covered by this statute.

Even if the interception occurred beyond the statute of limitations (typically 5 years), these illegally intercepted communications are still being disclosed and used against the defendant. The defendant may still be incarcerated with some sentenced to over 35 years in prison for texting an animated character, not a real child. This is excessive punishment violating his rights under the Eighth Amendment. The defendant's home and property may have been confiscated and sold. The defendant still has a felony on his record and may still be on the sex offender registry. Their professional licenses have been revoked and cannot be reinstated with the felony or because the defendant is on the registry.

Being on the sex offender registry inhibits their ability to go to college, get a job, live near a school daycare center, or obtain subsidized housing. It is used in the civil courts to take away custody of their children or cause their spouse to divorce him. Investment companies refuse to do business with them and cash out all the defendant's investments. The defendants spent tens of thousands on defense attorneys, then they lose their ability to earn income while out on bond awaiting trial, while incarcerated, or on the registry. Many lost their homes, their businesses, and their profession. Their reputation is in shambles. About 5% have committed suicide, based on a small sampling in Washington state.

**C. COUNT THREE – Identity Theft**

ICAC officers use photos of young, attractive adults in their sting operations. Sometimes an officer just grabs a PG-rated photo from a legal website advertising adult porn. Normally, it is a person employed by law enforcement in some fashion and asked to be a model, such as the police secretary or a cadet. The model signs a "Consent to Use Picture" form, such as the one signed by Kellie Whitehouse on September 12, 2024, for the Albuquerque Police Department. No where on this form does it authorize others to impersonate her online. No where on this form does it authorize police to intercept private electronic communications sent to her. Even if she authorized law enforcement to intercept her private conversations, both state and federal law require that she is the one who is party to the communications and she is doing the conversing, not an impostor.

For example, Ms. Vega was a cadet in Richmond, VA around 2007. Ten years later, Det. Troy Payne of the Hanover County Police Department near Richmond used this 2008 photo to create his character "Lilly", *Virginia v. Pick.* Payne's sting operation with "Lilly" nabbed Ryan Pick a hundred miles away in Prince William County, VA, where Officer Vega now worked. The audio recording of the arrest shows that Prince William County police recognized "Lilly" as the woman in their office. Ms. Vega quit the police force just a few weeks later. I presented the photos to her, and she claimed a bit too vehemently that the photo of "Lilly" was not her. Officer Payne



"Lilly", 2008




Officer Yesli Vega, 2018

testified that "Lilly" was a geo-morph, or computer-generated image. Such geo-morph technology did not exist in 2008. Did Officer Payne tell the truth in his testimony, or did he violate 18 U.S. Code § 1621 – perjury?

Identity theft is another way in which law enforcement actions are far from simple investigative techniques, but a serious violation of law. "Whoever ... knowingly ... uses, without lawful authority, a means of identification of another person ... in connection with, any unlawful activity" violates 18 U.S. Code § 1028(a)(7). A photo is a "means of identification" showing unique physical characteristics of a person, *see* 18 U.S. Code §§ 1028(a)(7) and 1028(d)(7)(B), which is why there is a photo on driver's licenses and passports. The detective's MALE physical attributes do not match the female pictured. The detective procured the female's "means of identification" solely to use on the dating site so he could intercept communications of others and induce people to commit a crime. The detective assigned the character traits to the female pictured, not to himself. The defendant's replies, intended for the female pictured, were intercepted by the detective and used to further the conversation.

**D. COUNT FOUR – Entrapment**

I spoke with Josiah who was trafficked online starting at age 11. None of the websites he listed where real children are actually trafficked seem to be used by law enforcement. Sting operations do not occur in a Disney chatroom or a "boy love" website. Instead, the profile created are for an adult female (or male) on an adult-only dating website.

The defendant answered an advertisement for an adult. Then, the detective does a bait-and-switch, claiming to be around 15-years-old. Control and animation of the character is done by the detective who lured, seduced, and enticed the defendant. The defendant then engages in leud conversion, agrees to meet the fake child, and/or sends an image of their private parts. The prosecution does not show that the defendant had any predisposition or premeditation to commit the crime. The detectives' actions appear to be in violation of Title 18 U.S. Code § 373 the Solicitation to Commit a Crime of Violence Act and in Violation of Title 18 U.S. Code § 2422

the Coercion and Enticement Act and in Violation of the Federal Elements of Entrapment from the United States Department of Justice Archives Manual Criminal Resource Manual Section 645.

This form of entrapment is strictly prohibited. The Ninth Circuit overturned the conviction of Poehlman because the agent's conduct constituted entrapment, *U.S. v. Poehlman*, 217 F.3d 692 (9th Cir. 2000). The ruling states, "Prior to his unfortunate encounter with Sharon, he [Poehlman] was on a quest for an adult relationship with a woman who would understand and accept his proclivities, which did not include sex with children."

**E. COUNT FIVE – Illegal use of a Pen Register / Trap and Trace Device**

Typically, officers unmask the suspect's identity without a warrant, even if the suspect later drives to a location to meet the fake child. Dating apps and other private chat applications protect the privacy of their customers by hiding their true identity and geographic location, including their IP address. Officers have devised tactics to obtain this information without the necessary pen register / trap and trace warrant.

The suspect's identity is unmasked by obtaining their underlying IP address, then officers use that IP address to submit a series of administrative subpoenas to obtain the identity of the suspect. One technique is for an officer to transmit the female's photo to the suspect through Dropbox instead of sending it in a text message. Dropbox is used because once the suspect removes the photo from the officer's Dropbox, the IP address of the suspect is available to the officer through Dropbox. The officer is using Dropbox as a pen register / trap and trace device specifically to obtain the suspect's IP address without a warrant. Other times the officer asks the suspect for their phone number, email, or other account name. The suspect provides this information in chat which is illegally intercepted by the officer. Sometimes the ad lists a phone number which is attached to the officer's phone. Anyone texting the female will have their telephone number displayed in caller ID on the officer's phone when the officer had no warrant to get this information. Note, if it was the female's personal phone that received the text, then the caller ID would be considered ordinary and not considered illegally intercepted information. Sometimes one main police phone number is used in the ads. Then the collected phone numbers are distributed to other officers who return the call with their own number, *U.S. v. Baker*, 2022R00405 – CR 22-102-BLG-DLC (MT).

Pen register / trap and trace law protect the privacy of addresses and routing information. 18 U.S. Code §§ 3127(3) and 3127(4). A pen register is any process which records dialing information transmitted by an instrument from which an electronic communication (text message) is transmitted. A trap and trace device is similar, just for a message going the other direction. An email address is an address. An IP address is an address. In addition, an IP address shows one of the points on a route an email takes while enroute from one computer to another.

**F. COUNT SIX – Falsifying Evidence**

All text messages sent by the supposed child are actually manufactured and typed in by the adult officer. Sometimes another officer is brought in to be the voice actor on a recorded phone call. These manufactured text messages and phone calls are then captured both on the officer's devices and the defendant's devices. These texts and replies sent by the defendant are the core evidence presented, violating 18 U.S. Code § 1519 Falsifying evidence and the defendant right to due process guaranteed by the Fifth and Fourteenth Amendment. It also violates 18 U.S. Code § 242 Deprivation of rights under color of law.

**G. COUNT SEVEN – Destruction of Evidence**

In several cases, the text messages exchanged were altered or deleted. In *Virginia v. Einuis*, text messages were deleted, but Det. Boffi claimed it was an accident. Since Einuis could not remember what was in the deleted text messages, it was ruled to be harmless error. In *Virginia v. Christopher Hawthorne*, Stafford County Case No. CR16000383, Det. Darryl Wells released Hawthorne's computer from evidence and returned it to Hawthorne's employer without notifying the defense. Hawthorne had hired a digital forensic expert to examine the computer and his attorney wrote several letters demanding the computer. After the device was released from evidence, Assistant Commonwealth's Attorney Ryan C. Frank wrote a letter claiming the computer was "still being analyzed by the Sheriff's Office."

Prosecution seems to intentionally delay providing Discovery to the defense so it is longer than 180 days. The 180-day point is critical because service providers typically only keep text messages for 180 days due to the provision of 18 U.S. Code § 2701. This provision states that unread messages or emails kept longer than 180 days are abandoned, requiring only a written statement certifying that the information is relevant to an investigation. By providing the Discovery after 180 days, the defendant cannot subpoena their own service provider for a true copy of the text messages because they are deleted. The Prosecution uses the weapon of time to destroy evidence beneficial to the defendant.

In addition, the FBI refuses to investigate any crimes committed by officers until the case had been adjudicated. The appeals process takes years. Those illegally arrested sit in prison for years. By that time, the statute of limitations kicks in and the officers are off the hook, while those falsely arrested rot in prison.

**H. COUNT EIGHT – Extortion**

Even if the attorney submits a motion to suppress arguing evidence was illegally obtained, it is only heard by the judge in the motions hearing days before trial. No county judge will stick their neck out and overturn years of erroneous precedence, let alone arrest their own officers and the county prosecutor for criminal ECPA violations. So, the jury is not informed evidence was

illegally obtained using impersonation. This results in about 95-98% of all defendants signing a plea deal. In a typical plea deal, the defendant waives their right to appeal and waives their right to be pardoned. Defendants are threatened with significantly more jail time if they go to trial, such as Stephen Kilpatrick who went to trail and got 35 years in prison, *Virginia v. Kilpatrick,* Bedford County, VA Case No CR19000024-00-07.

Interviewing Mr. Einuis, he said that Det. Boffi threatened him with additional charges if he posted bond so he would be continually re-arrested and lose his savings. These threats were made in the jail corridor outside of camera view. Det. Boffi managed to override the jail psychologist and declare that Mr. Einuis was suicidal. Mr. Einuis was placed in a special cell, naked, for days with nothing but a rough blanket and no contact with his attorney or access to phone calls. Einuis told his attorney that Det. Boffi should not be able to impersonate someone else and use their phone. His attorney replied that officers do it all the time, so it has to be legal.

**I. COUNT NINE – Fraud**

Online sting operations typically feature undercover officers trolling on dating sites, impersonating someone else, and using their phone (tablets or computers) without a warrant. Many sites have user agreements expressly prohibiting this practice. Federal policy requires that software shall be properly acquired and licensed, but violating the user agreement also violates the licensing agreement. Detectives do not produce any written permission or cooperative agreement signed by application's legal counsel for the express purpose of conducting said online internet undercover sting operation. Violating the user agreement also violates Title 18 U.S. Code § 1030 the Federal Computer Fraud and Abuse Act. For example, Snapchat,[13] Instagram,[14] TikTok,[15] iCloud,[16] and Gmail[17] do not allow anyone else using the user's account and do not allow impostors. Dating apps like Skip the Games or Grindr strictly prohibit impersonation, illegal activities like pimping children, and government sting operations. Grindr's User Agreement is typical and it states:

- *You must be a legal adult. You hereby affirm and warrant that you are currently eighteen (18) years of age or over (twenty-one (21) years in places where eighteen (18) years is not the age of majority) and you are capable of lawfully entering into and performing all the obligations set forth in this agreement.*[18]

---

[13] *Snap Inc. Terms of Service - Snap Inc.* (n.d.). Snap.com. https://snap.com/en-US/terms
[14] Instagram. (2023). *Terms of Use | Instagram Help Center.* Instagram.com. https://help.instagram.com/581066165581870
[15] TikTok. (2019, February). *Terms Of Service | TikTok.* Www.tiktok.com. https://www.tiktok.com/legal/page/us/terms-of-service/en
[16] *Legal - iCloud - Apple.* (n.d.). Apple Legal. https://www.apple.com/legal/internet-services/icloud/
[17] *Google Terms of Service – Privacy & Terms – Google.* (2009). Google.com; Privacy & Terms – Google. https://policies.google.com/terms?hl=en-US
[18] Grindr's User Agreement, July 1, 2018, *at 2 sec. 1.2.*

- *You will NOT impersonate any person or entity, falsely*[19]
- *Government End Users. The Grindr Services are intended for the use by individuals, not government entities.... Otherwise, nothing in this Agreement or otherwise will give a government user rights to the Grindr Services broader than those set forth in this Agreement.*[20]

A *user* is defined in federal criminal code as a person "who uses an electronic communication service; and is duly authorized by the provider to engage such use." 18 U.S. Code § 2510 (13). Since the detective violated the user agreement, he was not duly authorized to use the dating app and is an illegal user under criminal code.

Phones are not considered interception devices, if, and only if, they are used in the ordinary course of business, 18 U.S. Code § 2510(a). Conducting an undercover operation while impersonating someone else online is not in the ordinary course of business. Because the detective had no warrant and did not use the site in the "ordinary course of business," the phone / electronic device became an interception device to obtain communication content, 18 U.S. Code § 2510(5)(a).

When an officer violates the user agreement of a commercially available product like a dating app, this also violates Federal Acquisition Regulations, FAR. The officer did not comply with government regulations including FAR 12.212(a) (1995), FAR 52.227-19, or FAR 52.227-14 (ALT III). When it is not disclosed in discovery provided to the Defense that the officer violated federal regulations, this can be considered a Giglio violation which is an extension of the Brady violation, *Giglio v. United States*, 405 U.S. 150 (1972).

**J. COUNT TEN – RICO**

These illegal sting operations are financially beneficial the officers and the law enforcement department running the operations. These operations and the grants to fund them have had the blessings of those at the highest level of government. In 1998, the newly elected Sheriff Michael Brown founded ICAC in Bedford, VA with DOJ grants from Janet Reno. He had not lived in Virginia for 30 years but was a DOJ contractor in the Caribbean. He registered to vote in Virginia the day after he submitted his name to run for sheriff. He soon reported "780 cases have been perfected". ICAC's first action was to lobby Virginia's General Assembly in 1998 to define new crimes for soliciting a minor online and to increase the severity of possession of child porn from a low-level misdemeanor to a felony. It passed in 1999.[21] In 2000, Republican Sheriff Brown received a federal appointment from the Clinton administration to train ICAC officers across the

[19] Grindr's User Agreement, July 1, 2018, *at 5 sec. 8.3.7.*
[20] Grindr's User Agreement, July 1, 2018, *at 12 sec. 15.8.*
[21] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence.* Chapter 12.

country, after 3 years of local law enforcement.[22] ECPA was passed twelve years earlier in 1986, so there is no excuse for ICAC ignoring ECPA law when developing tactics and procedures.

When manufacturing criminals online, only the suspect's IP address or account name is available and their true identity is not known. The suspect's name and address must be obtained to arrest them. Hank Asher was a former Caribbean drug runner who founded The Last One, TLO. TLO is a huge data mining company to allow officers to unmask the identity of suspects.[23] The Pen Register / Trap and Trace law requires a warrant to unmask the identity of a suspect, 18 U.S. Code § 3121. Officers submit administrative subpoenas with an IP address or account name to service providers, claiming authority under 18 U.S. Code § 2703(c). However, this depends on reversing the wording of the law and intentionally misinterpreting it. Administrative subpoenas are only allowed when the officer provides the identity of the subscriber, then the service provider will return their IP address or account name. National Center for Missing and Exploited Children, NCMEC, added the Cyber Tipline program in 1998. Its primary focus appears to be correlating hash codes to content so emails or file transfers could be wiretapped and flagged automatically for law enforcement. This is done without a warrant.

I have tracked money coming from multiple sources:

1. DOJ Federal ICAC grants totaling about $1,000,000,000 since 1998.[24] [25] [26] However, DataRepublican.com lists $64,271,406 of new funding.[27]
2. DOJ SMART grants, Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking. These grants are spent to maintain the Sex Offender Registry and monitor those on it. By manufacturing criminals, they are illegally placing men on this registry after their release to get SMART grant money. Between 2021 and 2025, "SMART" grants totaled $64,257,428.[28]
3. State ICAC grants. This probably matches the federal grant amount. Cases like *Virginia v. Pick* are touted in ICAC's annual report to the state legislature to justify getting more state grants.
4. State funds to house prisoners in local jails. For example, Virginia pays the local jails about $130 per day per inmate to house them. County judges deny bond to hold the

---

[22] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence.* Chapter 1, 33-34.
[23] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence.* Chapter 14.
[24] DOJ, OJJDP (Office of Juvenile Justice and Delinquency Prevention). *Internet Crimes Against Children Task Force.* https://ojjdp.ojp.gov/programs/internet-crimes-against-children-task-force-program Accessed August 31, 2020.
[25] 34 U.S. Code § 21117
[26] Awards: List of Funded Projects | Office of Juvenile Justice and Delinquency Prevention (ojp.gov)
[27] *Government grant award search.* (2024). DataRepublican. https://datarepublican.com/award_search/?keywords=icac
[28] *Tableau.* (2025). Usdoj.gov. https://charts.ojp.usdoj.gov/t/public/views/OJPAwardsDashboardallFiscalYears/AwardsByStateAndCity?%3Aembed=y&%3AIid=2&%3AisGuestRedirectFromVizportal=y

suspect until they sign a plea deal or have a trial. Then the convicted person is shipped to prison. So, each suspect is held in the county jail about 2 years to rake in $100,000.

5. Local grants
6. Donations[29] [30] [31]

Stafford County Sherriff's Department in Virginia hired a contractor, Det. Daryl Wells, to run these sting operations and pack the jail. Det. Wells used his imaginary person "Heather Boon" in 2001 with *Hix v. Commonwealth,* 042717 (Va. 2005) through 2014 with *Virginia v. Hawthorne.* Interviewing Hawthorne, he said Det. Wells packed the 80-bed wing of the Stafford County Jail with about 120 inmates, so about 40 inmates had to sleep on the floor of the jail cells. It is estimated that Stafford County received:

$130 per day * 365 days per year * 120 men = $5,644,000 paid to the jail per year.

For the 20-year period when Det. Wells worked for Stafford, that amounts to over $100,000,000 sent to Stafford by the Commonwealth of Virginia. Even when you take out the cost of running the jails, this more than covers the $36 million needed to build the new public safety center in 2006[32] which houses the new sheriff's office. Jon-Paul Snyder was one of the men arrested in these illegal sting operations, and since committed suicide. So, this Stafford County building appears to have been paid for with blood money.

Any organization engaged in criminal activity to get money is called racketeering, 18 U.S. Code § 1962. Racketeering activity means *"(A) any act or threat involving ... extortion ... which is chargeable under State law and punishable by imprisonment for more than one year;"* 18 U.S. Code § 1961(1). "Interstate commerce" includes communications and intrastate use of a telephone, 15 U.S. Code § 78c(a)(17). The critical evidence is text messages exchanged using a telephone. ICAC is a nationwide organization with 61 branches and thousands of officers who have worked for ICAC. Does this violate RICO, 18 U.S. Code §§ 1961-1968?

Officers filed papers with the court or filled out electronic forms to obtain grant money without disclosing that the funds would be used to illegally impersonate other people and illegally intercept communications intended for them. These activities may also violate 18 U.S. Code §§

---

[29] *Exploring Cloud Forensics in Child Exploitation Cases.* (2025, February 4). Zero Abuse Project. https://zeroabuseproject.org/for-professionals/icac-training-technology/

[30] *ContentKeeper Content Filtering.* (2025). Greenvillesheriffsfoundation.org. https://greenvillesheriffsfoundation.org/greenville-county-sheriffs-office-i-c-a-c-unit-receives-90000-donation/

[31] *Washington Internet Crimes Against Children (ICAC) Task Force | Seattle Police Foundation.* (2022). Seattle Police Foundation. https://seattlepolicefoundation.org/internet-crimes-against-children/

[32] *Stafford County Awards Northrop Grumman Public Safety Building Contract.* (n.d.). Northrop Grumman Newsroom. https://news.northropgrumman.com/news/releases/stafford-county-awards-northrop-grumman-public-safety-building-contract

287 (false claims), 371 (conspiracy), 1001 (false statements), 1341 (mail fraud) and 1343 (wire fraud).

**K. COUNT ELEVEN – Involuntary Manslaughter**

Numerous defendants have committed suicide because their lives were ruined by these manufactured crimes, illegal arrests and prosecution. It is estimated by member of Concerned Citizens Against Government Entrapment, CAGE, in Washington state that about 5% of all young men arrested there commit suicide. Applying that same percentage to the estimated 180,000 people illegally prosecuted by ICAC, that totals about 9,000 suicides.[33] Causing someone to commit suicide can be considered involuntary manslaughter, 18 U.S. Code § 1112(a). This includes Jon Paul Snyder from Virginia and 8 names from Washington state from NetNanny stings. Jon Paul was still alive when I listed him in one of my reports to Virginia AG Herring's office, yet the AG's office did nothing.

**L. COUNT TWELVE – Electronic Warfare**

Signals received by a cell phone are electronic magnetic (EM) spectrum signals (EMS). Signals transmitted over an internet wire connected to a computer are EMS signals as well. Military and intelligence personnel may transmit a signal or send communications to better surveil the target. This is only allowable if the target treats it as background ambient noise (e.g. shining a flashlight, radar, sonar, or spam email). When a deceptive transmission leads the target to react in a manner detrimental to itself, however, the transmission has crossed the ambient noise threshold and is now considered an act of electronic warfare (EW). *See* Joint Publication 3-13.1 *Electronic Warfare (2012), Appendix 7.* This was explained in detail in my amicus brief filed *pro se* with permission of the Appellate Court of Virgina in Achin's appeal, pp. 23-25 (CAV Record No. 1950-19-4), and in Pick's appeal, pp. 29-31 (CAV record No. 1945-19-2).

In *Virginia v. Achin*, Bauer sent communications to Achin, masked to look like it came from a trusted source, "Alex VA." Bauer transmitted a deceptive message with a picture of someone else (using an EMS signal) to Achin's electronic device (launching an electronic warfare attack). Achin answered this communication in a manner ultimately detrimental to himself. He was arrested. Bauer's electronic warfare attack was successfully carried out.

Using electronic communications in this manner crosses the line of legitimate police investigative work. The first line crossed was from legal police work to criminal electronic surveillance without a warrant. This involves intercepting Achin's communications that he sent. However, officers went beyond listening to actively participated in the conversation while impersonating someone else which caused Achin to respond. When officers impersonate and

[33] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence.* Chapter 34.

use EMS communications signals to evoke a response, it crosses the second line: from criminal electronic surveillance into the realm of electronic warfare against a United States citizen.

**M. COUNT THIRTEEN – Misprision**

Misprision is the crime of not reporting a serious crime, 18 U.S. Code § 4. This reporting can be made "to some judge or other person in civil or military authority under the United States". Those receiving the report are then obligated to do something about it. I have filed dozens of reports, but no one has done anything to investigate or prosecute these crimes. After being notified, officials intentionally refused to investigate. This prevents their colleagues from being arrested and prosecuted, which violates 18 U.S. Code § 3 Accessory after the fact. Here is a summary of the complaints I have filed:

Federal:

1. Letter to Hon. Judge Karen Schreier prior to sentencing Mr. Paulson, U.S. District Court, SD. 2023-08-03. Clayton John Paulson, Case No. 21-50134
2. whistleblower@judiciary-rep.senate.gov - 2018-05-25
3. whistleblower@finance.senate.gov – 2020-05-14
4. whistleblower@judiciary-rep.senate.gov – 2020-05-14
5. info@osg.gov – 2020-05-16
6. Cigie.information@cigie.gov - 2020-05-16
7. GAO FraudNet – 2020-05-11 (COMP-20-000925)
8. Sen. Lindsey Graham – 2020-05-14
9. FBI complaints – 2017-09-26, 2017-10-24, 2017-10-26, 2018-06-08, 2018-09-21, 2018-10-07, 2018-11-26, 2019-02-07 (received a receipt), 2019-07-31, 2019-08-16, 2021-03-20
10. FBI interview with SA Amanda Fung – 2019-10-17
11. Letters to SA Amanda Fung – 2019-11-20, 2019-03-24, 2020-04-09, 2021-11-1
12. Emails to federal Prosecutor Brianna Edgar USDOJ.gov – 2019-04-07

Virginia:

13. I filed an amicus brief *pro se* with the Appellate Court of Virginia for *Virginia v. Achin*, CAV Record No. 1950-19-4.
14. I filed an amicus brief *pro se* with the Appellate Court of Virginia for *Virginia v. Pick*, CAV record No. 1945-19-2.
15. Virginia Delegate Dave Albo, Chair of Judicial Committee 2017-07-10
16. Virginia AG Mark Herring, 2017-07-21, 2017-09-26, 2017-09-26, 2018-08-06, 2018-09-30, 2018-11-22, 2018-11-28, 2019-02-07, 2019-09-08, 2020-09-20,
17. Virginia AG Jason Miyares - phone call in January, 2021, 2022-05-30
18. Virginia OSIG 2022-05-31
19. Loudoun County, Virginia – 2020-07-20
20. Speech to the Fairfax County Supervisors 2020-07-22

21. Stafford County meeting on 2018-04-18 with Maj. Lenhart including an inch-thick binder of documentation regarding *Virginia v. Christopher Hawthorne*, Stafford County No CR16000383. Audio recording is available.
22. Virginia State Police meeting on 2019-02-04. Audio recording is available.
23. Numerous fliers, emails, and speeches to Virginia Delegates and Senators.

Other states:

24. Other state AGs across the country - 2022-06-17
25. Jefferson County Circuit Court of New York requesting permission to submit an amicus curiae analysis of the case, *New York v. St. Pierre*, Jefferson County Case No. D311-11076123. The analysis would explain why I believed "[t]here were about 51 federal crimes, 7 New York felonies, and 6 misdemeanors committed by officers and government officials."

Publications:

26. Book: Manufacturing Criminals, Fourth Amendment Decay in the Electronic Age, December, 2020.
27. Book: Manufacturing Criminals, 2nd Edition – Wiretapping and Planting Evidence, March, 2024.

**N. COUNT THIRTEEN – Denying Access to the Grand Jury**

Since no one was acting on my complaints, I tried to appear before the Fairfax County, VA grand jury to present evidence of this criminal activity. I tried to file a petition to the Grand Jury to present evidence of ECPA crimes committed by Fairfax County governmental employees, 2021-02-25. My petition and briefs gave great detail on the Common Law right of a citizen to present evidence of the grand jury. This dates back to Colonial Virginia and was recently affirmed in 2011 in Winchester City, VA. The Clerk consulted with the Chief Judge and denied my request without taking any action to investigate the crimes I wanted to report. This turned into two civil suits against the Chief Judges. Even the Virginia Supreme Court would not allow me access to the grand jury, *Burkhardt v. Penney Azcarate, Chief Judge*, Virginia Supreme Court Record No. 230875 (2024). The ruling was that I could not sue a judge and there was no statute stating I could appear before a grand jury, even though it was allowed in another Virginia Circuit. None of the judges hearing my plea took any action to investigate the crimes or to stop the ongoing criminal activity by government officials.

The Constitution and Bill of Rights have two provision to prevent our government from degrading into a tyranny. The Second Amendment gives citizens the right to keep and bear arms. The other is the grand jury. The responsibilities of the grand jury vary slightly by state, but in general the grand jury is considered the Fourth Branch of government to be a watchdog over the other three branches. The grand jury is responsible to check all indictments to prevent frivolous arrests and prosecutions. Its other responsibility is (using Virginia as an example):

*(2) To investigate and report on any condition that involves or tends to promote criminal activity, either in the community or by any governmental authority, agency, or official therefrom."* Va. Code § 19.2-191(2).

Around 1940, the power of the grand jury began to be whittled away. Federal court rules now require a citizen to notify a federal prosecutor of their complaint, then the federal prosecutor will advise the grand jury about the citizen's complaint. I have sent a letter to a federal prosecutor advising them of this criminal activity, and heard nothing in return. Judges and federal prosecutors have now positioned themselves to be gatekeepers for the grand jury and prevent citizen access. The grand jury is now just a rubber stamp for the prosecutor.

## V. UNINTENDED CONSEQUENCES

If Courts continue to rule that these tactics are legal without a warrant, then anyone can grab someone else's picture off the internet, post the picture on a dating website, pimp them, and animate them by exchanging texts as if they were the person picture. The person shown in the image may be real, partially real, an animated character, or even a judge's family member. Anyone can then combine multiple images, voice, and texting to animate life-like images that speak and text. The animated character's likeness and voice could be mimicked to intercept communications. These characters would now be lawful parties to any communication. The animated character could intercept private communications intended for the person pictured, a legal impossibility under current law.

Technology exists to manufacture the illusion of a human online – consider computer games. Computers combine visual images, voice, and dialogue to project a life-like person talking and moving in whatever manner is typed into the keyboard. No matter the technology involved, animated characters are not "human beings capable of having rights." They cannot legally be a "person" who is party to the conversation. Illusions have no birth certificates.

What about Robo callers? A computer manipulates a Robo caller voice using either a computer-generated voice or by playing a person's recorded voice. Although Robo callers "participate" in conversations, federal ECPA law prohibits Robo callers from recording unless a warning is first given: "This call may be monitored or recorded." Since computers have no birth certificates, they cannot be a 'person party to conversations.' The law protects privacy of text messages just like it protects phone calls, 18 U.S. Code § 2511.

Vigilante groups are already duplicating these police tactics including the television series "To Catch a Predator" and Ghost CC Unit (Creep Catcher).[34] [35] Ghost flew from California to Virginia to hunt down Norman Achin after his initial arrest, *Virginia v. Achin*. Ghost CC Unit posted a video, I believe it was on Bit Chute,[36] showing Achin hiking alone in broad daylight on an open park trail holding a water bottle, unaware that Ghost was approaching from behind with a camera. The added narration claimed that Achin was there to rape a boy. Ghost gave the video and supposed texts to police who then re-arrested Achin for violating probation. Apparently, Ghost CC Unit has an LLC in California and "Donate" buttons posted with his videos. Bit Chute has since blocked their channel due to harassment. I complained to Instagram and their account was shut down.

## VI. CONCLUSION

Statutes only allow disclosing content of intercepted communications in court or a grand jury proceeding if they were obtained by a means authorized by U.S. Code. Interception by impostors or by impersonators is a crime under federal and state ECPA law. In all these cases, prosecutors and others disclose illegally intercepted communications to a grand jury and use them to indict the defendant. Conversation content was also disclosed to the press and used to discredit the defendant. Since using and disclosing illegally intercepted communications are also federal crimes under 18 U.S. Code § 2511(1)(c,d), this qualifies as misconduct. If a judge determines there was misconduct before the grand jury, a judge has authority to dismiss the indictment, *United States v. Williams*, 504 U.S. 36, 112 S. Ct. 1735 (1992).

I pray that you will take appropriate action regarding the violations of ECPA laws identified and hold those accountable who have criminally violated these laws. In 2013, ICAC stated that they arrested over 89,400 individuals.[37] However, this number is now estimated to be about 180,000,[38] and the majority are for these manufactured crimes. For everyone who has had illegally intercepted evidence used against them, their indictments should be dismissed, the convictions overturned, and signed plea deals rejected. Those prosecuted have had their lives ruined. They have lost their homes, property, income, profession, and reputation. They also lost

[34] Freeman, D. (2019, November 16). *San Diego "Creep Catching Unit" Takes Up Fight Against Online Predators.* NBC 7 San Diego; NBC San Diego. https://www.nbcsandiego.com/news/local/san-diego-creep-catcher-unit-takes-up-fight-against-online-predators/2161596/

[35] *15 reactions · 3 comments | Have You Heard of the Creep Catching Unit? | 🤔 Ghost is the anonymous founder of CC UNIT, a San Diego-based social media movement that exposes internet perverts preying on children. 🎥 🎙 Tune in to... | By Mike Morse Law Firm | Facebook.* (2022). Facebook.com. https://www.facebook.com/watch/?v=434031147872799

[36] Bitchute. (2025). *Bitchute.* Bitchute. https://www.bitchute.com/channel/wNybYk5qmqjB/?fbclid=IwAR2kzzvlG7NRiu9xTJPoxjeZW5-YEhgz0FToZEQflQEm08hKcP-1TvEInQE

[37] *Home.* (2013). Icactaskforce.org. https://www.icactaskforce.org/

[38] Burkhardt, B. (2024). *Manufacturing Criminal, 2nd Edition - Wiretapping and Planting Evidence.* Chapter 34.

custody of their children and missed watching them grow up. Most marriages ended with divorce. Friends and family members disown them.

After release from prison, the men are enslaved by the sex offender registry. The registry was originally for violent sexual offenses. Now sending a text message to an imaginary person is a violent sexual offense. There is no equivalent registry for murderers, thieves, drug dealers, or terrorists. Professional licenses are revoked. Offenders are forced to take re-education classes on how not to re-offend, which they have to pay for. The men are publicly humiliated by apps that automatically send alerts to their neighbors notifying them that Mr. XYZ at a particular address is a sex offender. If the men are privileged to have internet access so they can apply for a job or fill out a timecard, they are required to have monitoring software installed on their phones and computers so every keystroke is reported to the police. As Moses said to Pharoah in Exodus 5:1:

Let my people go.

DATED: June 23, 2025
*Respectfully submitted,*

Bonnie Burkhardt
8402 Gambrill Lane
Springfield, VA 22153
Phone: (703)505-2793 Email: Bonnie.burkhardt@blueridge-sw.com